UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES WILLIAMS, JR.,

                                        Plaintiff,

v.                                                          5:24-cv-0721
                                                            (BKS/TWD)

ERIC LEACH, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

CHARLES WILLIAMS, JR.
*Plaintiff, pro se*
4092
Cayuga County Jail
7445 County House Road
Auburn, NY 13021

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.      INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Charles Williams, Jr. ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983.  Dkt. No. 1.

Plaintiff, who is currently confined at the Cayuga County Jail, has not paid the filing fee for this

action and seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. Nos. 2, 3.

## II.     IFP APPLICATION

        "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[1]

## III.   BACKGROUND

Plaintiff alleges, on or around August 22, 2022, he was followed by Officer Leach.  Dkt. No. 1 at 4.[2]  As he entered his driveway, located at "21 Derby Ave., cops flashed their lights." *Id*.  Plaintiff began to exit the vehicle, "Leach screamed, 'freeze' stiffening Plaintiff at gunpoint while he remained a quarter of the way out."  *Id*.  An individual named Curtis Johnson then exited the house and Officer "Young yelled for Plaintiff to 'stay put' . . . ."  *Id*.

Seconds later, the officers "yank Curtis off of the porch where they all tumbled and banged into the open door of the car causing the door to crush Plaintiff's shin bone against the

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

car." *Id*.  Then, "Leach & Young initiated a physical altercation." *Id*.  As the officers "slammed and wrestled him unto the pavement the car door squeezed causing Plaintiff to wince & scream in excruciating pain." *Id*.  The officers "did nothing to help in this emergency." *Id*.

Thereafter, "Plaintiff's car was illegally searched by them." *Id*.  Plaintiff received treatment for his injuries at the Auburn Memorial Hospital, where he was "diagnosed with a hairline fracture on left shin." *Id*.

Plaintiff identified Auburn Police Officers Eric Leach, Andrew Young, and Sergeant Micheal Merkley as defendants. *Id*. at 2-3.  The complaint asserts claims for "excessive force," "negligence," and "illegal search and seizure." *Id*. at 5.  Plaintiff seeks $100,000 in relief. *Id*.

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triesman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, which "establishes a cause

of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537,

573 (S.D.N.Y.) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42

U.S.C. § 1983)).  "Section 1983 itself creates no substantive rights; it provides only a procedure

for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519

(2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under § 1983, a plaintiff must allege the challenged conduct: (1)

was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a

right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v.

Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  To establish liability under the statute, a

plaintiff must plead that each government official defendant violated the Constitution through

that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

### A.  Sergeant Micheal Merkley

"It is well-settled that where the complaint names a defendant in the caption but contains

no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to

dismiss the complaint in regard to that defendant should be granted." *Dove v. Fordham Univ.*,

56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotations and citations omitted), *aff'd sub

nom.*, *Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000).  Plaintiff listed Sergeant Micheal Merkley

as a defendant in the caption of his complaint, Dkt. No. 1 at 3, but has not asserted any factual

allegations against him, *see* Dkt. No. 1 at 4-5.  Accordingly, the undersigned recommends

dismissal of the complaint as to Micheal Merkley without prejudice.  *See, e.g.*, *Drawhorne v.*

*Aloise*, No. 6:23-CV-1278 (TJM/TWD), 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023)

(recommending dismissal of plaintiff's claims, without prejudice, as to a defendant listed in the

complaint's caption where plaintiff failed to assert allegations against him), *report and*

*recommendation adopted*, 2024 WL 532572 (N.D.N.Y. Feb. 8, 2024); *Cato v. Reardon*, No.

9:22-CV-1173 (AMN/CFH), 2024 WL 1307115, at *7 (N.D.N.Y. Mar. 27, 2024) (dismissing

claims as to an individual "named as a defendant in the caption and list of parties . . . [but] not

referenced anywhere in the body of the pleading.").

### B.  Excessive Force

Plaintiff first asserts an "8th Amendment" claim for "excessive force."  Dkt. No. 1 at 5.

He avers Officers "Leach & Young ripped Curtis from porch, while his hands were up, causing

them to topple crashing against car."  *Id.*

"There are three standards for excessive force depending on when the alleged violation

occurred."  *Porath v. Bird*, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 (N.D.N.Y.

June 3, 2013).  "Where . . . the excessive force claim arises in the context of an arrest or

investigatory stop of a free citizen, it is most properly characterized as one invoking the

protections of the Fourth Amendment . . . ."  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see*

*also*, *e.g.*, *Shamir v. City of New York*, 804 F.3d 553, 556 (2d Cir. 2015) (explaining, "the use of

excessive force renders a seizure of the person unreasonable and for that reason violates the

Fourth Amendment.").  "[I]f the alleged excessive force occurs post-arraignment, but before

conviction, then Fourteenth Amendment standards apply."  *Artis v. Valls*, No. 9:10-CV-0427

(GTS/TWD), 2012 WL 4380921, at *1 n.1 (N.D.N.Y. Sept. 25, 2012); *see also*, *Rodriguez v.*

*City of New York*, 594 F. Supp. 3d 534, 545 (E.D.N.Y. 2022) ("The Fourteenth Amendment

applies . . . to excessive force claims that do not involve 'an arrest, investigatory stop, or other

seizure of a free citizen.'") (citing *Graham*, 490 U.S. at 395) (additional quotations and citation

omitted); *Graham*, 490 U.S. at 395 n.10 (explaining, "[a] 'seizure' triggering the Fourth

Amendment's protections occurs only when government actors have, 'by means of physical

force or show of authority, . . . in some way restrained the liberty of a citizen . . . .'") (citing

*Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)) (additional citation omitted).  "After conviction, the

Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where

the deliberate use of force is challenged as excessive and unjustified.'"  *Graham*, 490 U.S. at

395, n.10 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see also Porath*, 2013 WL

2418253, at *16 ("Allegations of excessive force occurring after conviction are subject to an

Eighth Amendment analysis.") (citing *Ingraham v. Wright*, 430 U.S. 651, 671, n.40 (1977) ("the

State does not acquire the power to punish with which the Eighth Amendment is concerned until

after it has secured a formal adjudication of guilt in accordance with due process of law.")).

 Here, the alleged constitutional violation occurred in Plaintiff's driveway, following

police instructions to "freeze" and "stay put[,]" and prior to a search of Plaintiff's vehicle.  *See*

Dkt. No. 1 at 4.[3]  Because it does not appear Plaintiff was arraigned on or convicted of criminal

charges prior to the alleged incident, his excessive force claim is properly assessed under the

Fourth Amendment.  *See Graham*, 490 U.S. at 394.  When analyzing such a claim, the relevant

---

[3] The undersigned notes, in his complaint, which was drafted utilizing a form complaint for civil rights violations, Plaintiff indicated he was a "[p]retrial detainee" at the time the alleged wrongdoing occurred.  *See* Dkt. No. 1 at 2.  However, given that the alleged wrongdoing apparently occurred in the driveway of Plaintiff's residence, *id*. at 4, and that Plaintiff listed his address at the time of filing as the "Cayuga County Jail," *id*. at 2, it appears Plaintiff was not a pretrial detainee at the time the incident giving rise to his claims occurred, and instead indicated his confinement status at the time he commenced the instant action.

"question is whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978)) (additional citation omitted).

Liberally construed, *see*, *e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Plaintiff's complaint alleges Auburn Police Officers Leach and Young instructed Plaintiff not to move as he stood beside his vehicle with the door ajar, then "slammed and wrestled" a third party, Curtis Johnson, onto the ground, during the course of which, Leach and Young contacted the door of Plaintiff's vehicle with their own and/or Johnson's bodies, "causing the door to crush Plaintiff's shin bone" resulting in a hairline fracture of said bone. *See* Dkt. No. 1 at 4. Accordingly, the undersigned recommends the Court find Plaintiff's Fourth Amendment excessive force claims against Defendants Eric Leach and Andrew Young survive *sua sponte* review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C. Negligence

Plaintiff next purports to assert a claim for "negligence." Dkt. No. 1 at 5. He avers, "every officer on the scene watched Plaintiff wince, cry, limp and beg for medical attention [officers] Leach & Young were negligent to demand Plaintiff to stay still." *Id*.

"It is well settled, however, that negligence is not cognizable as a federal claim under Section 1983." *Gambino v. LaClair*, No. 9:20-CV-0162 (DNH/DJS), 2020 WL 13801079, at *3 (N.D.N.Y. Mar. 24, 2020) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)) (additional citation omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.") (internal quotations omitted, emphasis in original) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S.

8

833, 849 (1998)); *Heredia v. Doe*, 473 F. Supp. 2d 462, 463 (S.D.N.Y. 2007) ("the pleadings fail

to state facts which constitute anything more than a claim for negligence, for which there is no

cause of action under 42 U.S.C. § 1983.") (citations omitted); *Johnson v. Annucci*, No. 9:21-CV-

0335 (TJM/CFH), 2021 WL 12156681, at *5 (N.D.N.Y. May 20, 2021) (claims grounded in

negligence are not actionable under Section 1983) (citations omitted).  Therefore, the

undersigned recommends dismissal of Plaintiff's negligence claim.  *See, e.g.*, *Guzman v.

McCarthy*, No. 9:21-CV-1192 (MAD/ATB), 2022 WL 630873, at *2 n.2 (N.D.N.Y. Mar. 4,

2022).

### D.  Illegal Search and Seizure

Plaintiff's final claim alleges an "illegal search and seizure."  Dkt. No. 1 at 5.  In support

of his claim, Plaintiff argues he "possessed nothing illegal, nor did anything to warrant a search."

*Id*.  However, the complaint does not specify which defendant or defendants conducted the

allegedly unlawful search.  *See id*. at 4 (Plaintiff's car was illegally searched by *them*.")

(emphasis added), 5.

"Pleadings that do not differentiate which defendant was involved in the unlawful

conduct are insufficient to state a claim."  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598

(E.D.N.Y. 2017) (citations omitted).  Because Plaintiff has not specified which defendant(s)

were involved in the alleged search of his vehicle, the undersigned recommends dismissal of

Plaintiff's Fourth Amendment search and seizure claim without prejudice.  *See, e.g.*, *LaPietra v.

City of Albany Police Dep't*, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 5891888, at *9

(N.D.N.Y. Oct. 5, 2020) (explaining, "[t]he use of the terms 'they,' or 'the police' or 'officer' as

a name for alleged defendants is not adequate to state a claim against a 'person' as required in §

1983 actions.") (citation omitted), *report and recommendation adopted*, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **ACCEPTED** for filing to the extent it asserts claims of Excessive Force, in violation of the Fourth Amendment, against Defendants Leach and Young; and it is further

**RECOMMENDED** that except as to the foregoing, the remaining claims asserted in the complaint be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: July 8, 2024
　　　　Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

2010 WL 5185047

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57– 59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237– 38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8188396
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DRAWHORNE, Plaintiff,

v.

M. ALOISE et al., Defendants.

6:23-cv-01278-TJM-TWD
|
Signed November 27, 2023

**Attorneys and Law Firms**

KEVIN DRAWHORNE, 23-R-0208, Marcy Correctional
Facility, P.O. Box 3600, Marcy, NY 13403.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent to the Court for review a complaint
submitted by *pro se* plaintiff Kevin Drawhorne ("Plaintiff")
alleging M. Aloise, Melinda Katz, Commissioner Davis, and
The People of the State of New York violated his civil rights.
(Dkt. No. 1.) Plaintiff, who is currently in the custody of
New York State Department of Corrections and Community
Supervision ("DOCCS") at Marcy Correctional Facility in
Marcy, New York, has not paid the filing fee for this action
and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt.
No. 2.)

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." *Cash v. Bernstein*,
No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct.
26, 2010). "Although an indigent, incarcerated individual
need not prepay the filing fee at the time of filing, he must
subsequently pay the fee, to the extent he is able to do so,
through periodic withdrawals from his inmate accounts." *Id.*
(citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*,
607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates
economic need. (Dkt. No. 2.) Because Plaintiff has met the
statutory requirements of 28 U.S.C. § 1915(a) and has filed
the inmate authorization form required in this District, he is
granted permission to proceed IFP. (Dkt. Nos. 2, 3.)

**III. BACKGROUND**

Plaintiff initiated this action against Melinda Katz, M. Aloise,
Commissioner Davis, and The People of the State of New
York on October 13, 2023. (Dkt. No. 1.) The Court takes
judicial notice Melinda Katz is the District Attorney of
Queens County [1] and M. Aloise is a judge in the New York
Supreme Court 11th Judicial District in Queens County, New
York. [2]

[1]    DA Melinda Katz, https://queensda.org/team/da-
       katz/ (last visited Nov. 27, 2023).

[2]    Michael    Aloise,    BALLOTPEDIA,    https://
       ballotpedia.org/Michael_Aloise (last visited Nov.
       27, 2023).

Plaintiff has filed a threadbare complaint devoid of details.
Plaintiff claims on January 5, 2023, Judge Aloise "violated"
his rights "throughout the court proceedings." (Dkt. No. 1
at 4.) He further alleges he was deprived "from [h]aving
good counsel and being full[y] able to cross-examine [his]
defendant(s)." *Id.* Moreover, he "was never able to see [his]
discovery nor attend [his] grand Jury." *Id.* Plaintiff claims
he was "fully coerced" into taking a plea and never given a
chance to create "a good defense." *Id.* According to Plaintiff,
his attorney was "aware of all violations and still never
objected to it." *Id.* Finally, DA Katz "acted out of color
by stating wrongful facts of the case." *Id.* On February 23,
2023, Plaintiff's motions for a hardship hearing and to defer
surcharges were denied. *Id.*

Plaintiff's first claim states on April 4, 2022, DA Katz violated
his Fourteenth, Eighth, and Second Amendment rights by
"not allowing" Plaintiff to testify at the Grand Jury, speak
freely in court, and "not able to make a defense." *Id.* at 5.

 **\*2**  Plaintiff's second claim states Judge Aloise would not
allow Plaintiff to obtain new counsel. *Id.* He then states he was
coerced into making a plea, but it is unclear if he is alleging
Judge Aloise, DA Katz, or both coerced him into doing so. *Id.*

Plaintiff's third claim states The People of the State of New
York violated Plaintiff's rights by "not allowing [him] to be

[ ] able to build a defense in his case" that he could "fight." *Id.* Finally, Plaintiff requests $15 million for violations of his constitutional rights, including "due process," "unlawfully imprisonment," "duress," mental anguish, and pain and suffering. *Id.*

## IV. DISCUSSION

### A. Legal Standard

The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b) (1)-(2); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a) (2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it

rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*3** Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B. The People of the State of New York

To the extent Plaintiff seeks money damages against The People of the State of New York, which the Court construes as claims against the Queens County District Attorney's Office, those claims are barred by the Eleventh Amendment. *See Best v. Brown*, No. 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New*

*York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021). Therefore, the Court recommends Plaintiff's Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

### C. Commissioner Davis

"The standard set forth in *Twombly* and affirmed in *Iqbal* requires more than mere conclusory statements; rather, it demands sufficient factual allegations against a defendant to reasonably lead to the discovery of illegal conduct." *Johnson v. Gonzalez*, No. 9:14-CV-0745 LEK/CFH, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13, 2015) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56). "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (citation omitted).

The Court notes Plaintiff lists Commissioner Davis as a defendant in the caption of his complaint but fails to assert any allegations against him or her. *Id.* at 1, 3; *see Johnson*, 2015 WL 1179384, at *6; *Jaffer v. Chemical Bank*, No. 93-CV-8459, 1994 WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted"); *Serrano v. New York State Dep't of Envtl. Conservation*, No. 12-CV-1592, 2013 WL 6816787, at *15 (N.D.N.Y. Dec. 20, 2013) (dismissing the plaintiff's claims against two defendants who were listed as parties in the complaint and in the caption, but not elsewhere in the complaint).

**\*4** Therefore, the undersigned recommends dismissing the claims against Commissioner Davis without prejudice.

### D. DA Katz

To the extent Plaintiff seeks to sue DA Katz, she is likely protected by prosecutorial immunity.[3] Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

[3] While the Court recognizes the issue of venue as it relates to claims against DA Katz and Judge Aloise arising out of Plaintiff's criminal proceedings in Queens, New York, a transfer of those claims would be futile. *See Robinson v. New York State Corr.*, No. 9:19-CV-1437 (DNH/TWD), 2020 WL 1703669, at *3 (N.D.N.Y. Apr. 8, 2020).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted). Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making of false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Imbler*, 424 U.S. at 431 n.34; *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Moreover, " '[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez*

*v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich*, 2022 WL 992885, at \*5 n.4 ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry*, 2021 WL 3037709, at \*6 (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment).

**\*5** Plaintiff's threadbare allegations in the complaint do not clarify the context of his claims. For instance, Plaintiff complains DA Katz violated his Fourteenth, Eighth, and Second Amendment rights by not allowing him to testify at the Grand Jury, speak freely in court, or make a defense. (Dkt. No. 1 at 3.) He also appears to allege DA Katz coerced him into taking "a Bid." *Id.* Nevertheless, Plaintiff appears to complain DA Katz violated his rights while performing her official duties as a prosecutor. *Simon*, 727 F.3d at 171. Because Plaintiff's allegations against DA Katz relate to non-investigative actions she has taken in her official capacity as a prosecutor, she is entitled to prosecutorial immunity. *Simon*, 727 F.3d at 171; *see, e.g., Matthews v. Cty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at \*3 (N.D.N.Y. June 8, 2018) (dismissing claims against prosecutor on initial review because of prosecutorial immunity). Thus, Plaintiff's Section 1983 claims against DA Katz fail as a matter of law.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against DA Katz be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

**E. Judge Aloise**
To the extent Plaintiff seeks to sue Judge Aloise, judges are immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."). This immunity applies to state court judges who are sued in federal court pursuant to Section 1983. *Pizzolato v. Baer*, 551 F. Supp.

355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The only two circumstances in which judicial immunity does not apply is when he or she acts "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12. Again, while not entirely clear, to the extent Plaintiff complains of any wrongdoing related to a criminal proceeding, Judge Aloise would be entitled to absolute judicial immunity.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Judge Aloise be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

**V. CONCLUSION**
For the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's IFP application [4] (Dkt. No. 2) is **GRANTED**; and it is further

[4] Plaintiff should note that although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff's claims against Commissioner Davis be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's claims against The People of the State of New York, DA Katz, and Judge Aloise be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*6** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

5     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Slip Copy, 2023 WL 8188396

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 532572
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DRAWHORNE, Plaintiff,

v.

M. ALOISE et al., Defendants.

6:23-cv-1278
|
Signed February 8, 2024

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

 **\*1**  The Clerk sent Plaintiff Kevin Drawhorne's *pro se*
Complaint brought pursuant to 42 U.S.C. § 1983 (Dkt. No.
1) to the Hon. Thérèse W. Dancks, United States Magistrate
Judge, for initial review. *See* November 27, 2023 Order and
Report-Recommendation (Dkt. No. 5). Plaintiff also moved
to proceed *in forma pauperis*. (Dkt. No. 2). Judge Dancks
granted Plaintiff's *in forma pauperis* application and then
analyzed the claims in the Complaint. (Dkt. No. 5).

Plaintiff names as defendants M. Aloise, Melinda Katz,
Commissioner Davis, and The People of the State of New
York. (Dkt. No. 1). Judge Dancks took judicial notice that
Melinda Katz is the District Attorney of Queens County, and
M. Aloise is a judge in the New York Supreme Court 11th
Judicial District in Queens County, New York. (Dkt. No. 5,
at 2). Judge Dancks also construed the claims against
The People of the State of New York as claims against the Queens
County District Attorney's Office, (Dkt. No. 5, at 5), and noted
that Plaintiff "lists Commissioner Davis as a defendant in the
caption of his complaint but fails to assert any allegations
against him or her." (Dkt. No. 5, at 6).

In examining the Complaint, Judge Dancks explained:

> Plaintiff has filed a threadbare complaint devoid of
> details. Plaintiff claims on January 5, 2023, Judge
> Aloise "violated" his rights "throughout the court
> proceedings." (Dkt. No. 1 at 4.) He further alleges he was
> deprived "from [h]aving good counsel and being full[y]
> able to cross-examine [his] defendant(s)." *Id.* Moreover, he
> "was never able to see [his] discovery nor attend [his] grand

> Jury." *Id.* Plaintiff claims he was "fully coerced" into taking
> a plea and never given a chance to create "a good defense."
> *Id.* According to Plaintiff, his attorney was "aware of all
> violations and still never objected to it." *Id.* Finally, DA
> Katz "acted out of color by stating wrongful facts of the
> case." *Id.* On February 23, 2023, Plaintiff's motions for a
> hardship hearing and to defer surcharges were denied. *Id.*

> Plaintiff's first claim states on April 4, 2022, DA Katz
> violated his Fourteenth, Eighth, and Second Amendment
> rights by "not allowing" Plaintiff to testify at the Grand
> Jury, speak freely in court, and "not able to make a
> defense." *Id.* at 5.

> Plaintiff's second claim states Judge Aloise would not
> allow Plaintiff to obtain new counsel. *Id.* He then states he
> was coerced into making a plea, but it is unclear if he is
> alleging Judge Aloise, DA Katz, or both coerced him into
> doing so. *Id.*

> Plaintiff's third claim states The People of the State of
> New York violated Plaintiff's rights by "not allowing [him]
> to be [ ] able to build a defense in his case" that he
> could "fight." *Id.* Finally, Plaintiff requests $15 million
> for violations of his constitutional rights, including "due
> process," "unlawfully imprisonment," "duress," mental
> anguish, and pain and suffering. *Id.*

(Dkt. No. 5, at 2-3).

After a thorough analysis, Judge Dancks recommended that
Plaintiff's claims against Commissioner Davis be dismissed
without prejudice, and Plaintiff's claims against The People
of the State of New York, DA Katz, and Judge Aloise be
dismissed with prejudice. *See generally id.* Plaintiff filed no
objections to Judge Dancks's recommendations, and the time
to do so has expired.

**II. DISCUSSION**

 **\*2**  After examining the record, the Court has determined that
Judge Dancks's recommendations are not subject to attack for
plain error or manifest injustice. Thus, the Court will accept
and adopt the recommendations in the Order and Report-
Recommendation for the reasons stated therein.

**III. CONCLUSION**

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED;

2. Plaintiff's claims against Commissioner Davis are **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff's claims against The People of the State of New York, DA Katz, and Judge Aloise are **DISMISSED WITH PREJUDICE**;

4. If Plaintiff intends to file an amended complaint asserting claims against Commissioner Davis, he must do so within thirty (30) days of the date of this order;

5. If Plaintiff does so, the amended complaint should be presented to Judge Dancks for initial review;

6. If Plaintiff fails to file an amended complaint within this period of time, the Clerk is respectfully instructed to close the file in this action without further order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 532572

---

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1307115
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jason ET CATO, also known as Jason Cato, Plaintiff,
v.
Patrick REARDON, et al., Defendants.

9:22-CV-1173 (AMN/CFH)
|
Signed March 27, 2024

**Attorneys and Law Firms**

JASON ET CATO, Plaintiff, pro se, 21-B-0271, Bare Hill
Correctional Facility, Caller Box 20, Malone, NY 12953.

**DECISION and ORDER**

ANNE M. NARDACCI, United States District Judge

**I. INTRODUCTION AND PROCEDURAL HISTORY**

 **\*1**  In October 2022, pro se plaintiff Jason ET Cato
("plaintiff") commenced this action pursuant to 42 U.S.C.
§ 1983 ("Section 1983") and sought leave to proceed in
forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No.
2 ("IFP Application"). By Decision and Order filed on
January 25, 2023 (the "January Order"), the Court found
that, as of the date that plaintiff commenced this action,
plaintiff had acquired at least "three strikes" because he
filed three previous civil actions while incarcerated that were
dismissed based on frivolousness or failure to state a claim
upon which relief may be granted. Dkt. No. 6 at 3-4. After
determining that plaintiff had accumulated "three strikes"
before filing his complaint, the Court considered plaintiff's
allegations solely for purposes of evaluating whether they
were sufficient to qualify him for the "imminent danger"
exception of 28 U.S.C. § 1915(g). The Court concluded that
plaintiff's allegations did not plausibly suggest that he faced
"imminent danger" of "serious physical injury" when he
signed the complaint. Dkt. No. 6 at 6. In light of plaintiff's
pro se status, plaintiff's IFP Application was held in abeyance
and he was directed to either (i) pay the Court's filing fee of
four hundred dollars ($402.00) in full, or (ii) file an amended
complaint demonstrating that he faced an "imminent danger
of serious physical injury" from the named defendant(s) when
he commenced this action. *Id.* at 6-7. Plaintiff was directed to
comply with the January Order within thirty days. *Id.*

On March 8, 2023, the Court issued an Order dismissing the
action, without prejudice, due to plaintiff's failure to comply
with the January Order. Dkt. No. 7 (the "March Order"). On
the same day, Judgment was issued. Dkt. No. 8. On March 27,
2023, plaintiff filed a Notice of Appeal (Dkt. No. 9) and an
amended complaint (Dkt. No. 10).

On September 8, 2023, the case was remanded from the
Second Circuit for consideration of the amended complaint,
"as a timely motion to alter or amend a judgment under
Federal Rule of Civil Procedure 59(e)." Dkt. No. 12.

In October 2023, plaintiff filed a second amended complaint.
Dkt. No. 14. In a Decision and Order filed on December
12, 2023 (the "December Order"), the Court vacated the
Judgment, accepted the second amended complaint for filing,
and considered the allegations in the pleading for the purposes
of evaluating whether plaintiff qualified for the "imminent
danger" exception. *See generally* Dkt. No. 15. Upon review of
the pleading, the Court concluded that plaintiff was not faced
with "imminent danger" of "serious physical injury" when
he signed the original complaint. The Court denied plaintiff's
IFP application pursuant to 28 U.S.C. § 1915(g) and advised
plaintiff that the action would be dismissed unless, within
thirty (30) days of the date of the December Order, plaintiff
paid the Court's filing fee of four hundred and two dollars
($402.00) in full. *Id.*

On December 12, 2023, plaintiff filed a motion seeking
permission to amend his complaint, with a proposed amended
complaint. Dkt. No. 16. On January 10, 2024, plaintiff filed a
"motion review for retaliation." Dkt. No. 18. The same day,
plaintiff remitted the filing fee, in full.

**II. MOTION TO AMEND**

 **\*2**  At the time plaintiff filed his motion to amend, service
had not been attempted on any of the defendants. Thus,
plaintiff is not required to obtain the Court's leave before
amending his complaint. As a result, the Court will consider
plaintiff's proposed amended complaint (Dkt. No. 16-1) as
the third amended complaint, filed as of right in accordance
with Rule 15(a)(1) of the Federal Rules of Civil Procedure.
Accordingly, plaintiff's motion is denied as unnecessary.

**III. MOTION FOR REVIEW**

On January 10, 2024, plaintiff filed a submission entitled
"Motion for Review" with a caption that identifies two new

defendants and additional factual allegations. *See generally* Dkt. No. 18. Plaintiff's motion is denied. However, affording plaintiff the special solicitude due to a pro se litigant, the Court will construe this submission as a supplement to the third amended complaint. The Clerk of the Court shall attach this submission to the operative pleading.

## III. REVIEW OF THIRD AMENDED COMPLAINT

### A. Legal Standard

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." [1] 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

[1]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual

allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

**\*3** The Court will construe the allegations in the third amended complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

### B. Summary of Third Amended Complaint

In the third amended complaint, plaintiff identifies the following individuals as new defendants: DOCCS, Correction Officer Mr. Blackman ("Blackman"), and Sergeant Cucumber ("Cucumber"). [2] *See* Third Am. Compl. at 1. The third amended complaint does not contain any allegations or causes of action against the following previously named defendants: Schneider, Murphy, Mitchell, Bell, Coomber, Dibari, Trombley, Davis, Thisse, Smith, Keller, and Butler. [3] *See generally* Third Am. Compl. Plaintiff asserts claims related to wrongdoing that occurred, if at all, during his incarceration at Marcy Correctional Facility ("Marcy C.F."). *See id.*

[2]   The Clerk of the Court is directed to add these individuals as defendants to the Docket Report for this action.

[3]   The Clerk of the Court is directed to terminate these defendants from the Docket Report.

On February 11, 2022, plaintiff's legal mail was withheld. Third Am. Compl. at 12. Plaintiff received his mail on March 3, 2022, "one day after the Oneida County Supreme Court issued [a] writ of habeas corpus" and a court ordered deadline for plaintiff to "answer." *Id.*

Defendant Officer Snedecker ("Snedecker") directed plaintiff to remove his "box braids." Third Am. Compl. at 9. Plaintiff informed Snedecker that it was a religious hairstyle. *Id.*

Snedecker responded with expletives and racial slurs and directed plaintiff to "get against the wall." *Id.* As plaintiff stood on the wall, Snedecker "kick[ed] his feet to spread wider and push[ed] his head to stay straight forward." *Id.* Snedecker frisked plaintiff and groped his penis and scrotum. *Id.* Plaintiff filed a grievance related to the incident and contacted the Office of Special Investigations ("OSI"). Third Am. Compl. at 9-10. In June 2022, an investigator interviewed plaintiff. *Id.* at 10.

On October 17, 2022, plaintiff received a false misbehavior report. Dkt. No. 18 at 2. As a result, plaintiff was placed in segregated confinement for 156 days. *Id.* at 5.

On December 11, 2022, plaintiff was "sexually assaulted" by defendant Correction Officer Bradbarry ("Bradbarry") in the mess hall corridor. Third Am. Compl. at 8-9, 27. Bradbarry ordered plaintiff to "get on the wall." *Id.* While frisking plaintiff, Bradbarry "went into plaintiff's backside of his pants and swiped his hands between plaintiff['s] buttocks and penetrated plaintiff's rectum with one finger[.]" *Id.* at 9. Defendant Blackman was present during the incident, held pepper spray in plaintiff's face, and threatened to "spray" him "like a skunk" if he moved from the wall. *Id.* After the incident, plaintiff received a misbehavior report falsely charging plaintiff with refusing to work. Third Am. Compl. at 9.

Between September 2021 and March 2023, DOCCS did not provide Rastafarian services. Third Am. Compl. at 10.

On March 1, 2023, plaintiff received legal mail, that had been opened, dated December 1, 2022 from the United States District Court for the Western District of New York. Third Am. Compl. at 12-13.

**\*4** Plaintiff's merit release date was December 29, 2023. Dkt. No. 18 at 1. However, plaintiff remains confined in DOCCS' custody. *Id.*

Construing the third amended complaint liberally, plaintiff asserts the following: (1) Eighth Amendment claims against Bradbarry, Blackman, and Snedecker; (2) First Amendment free exercise claim and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) claims against defendant Imam Hadian ("Hadian") and Snedecker; (3) claims related to violations of DOCCS' Directives; (4) First Amendment access-to-court claims; (4) Fourteenth Amendment claims related to his

merit release date; (5) First Amendment retaliation claims; and (6) supervisory claims against DOCCS and defendant Superintendent Patrick Reardon ("Reardon"). *See generally* Third Am. Compl. and Dkt. No. 18. Plaintiff seeks monetary damages. *See* Third Am. Compl. at 31, 33.

### C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676).

### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).

**\*5** The Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, plaintiff's claims for monetary damages against DOCCS and defendants in his or her official capacity are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b). *See Rother v. Dep't of Corr. and Cmty. Supervision*, 970 F.Supp.2d 78, 89-90 (N.D.N.Y. 2013) (holding that DOCCS is a New York State agency that has immunity under the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state.").

### 2. Claims Against Cucumber, Martuscello, D'Amore, and Barbosa

Plaintiff names Cucumber, Martuscello, D'Amore, and Barbosa as defendants in the caption and list of parties. *See* Third Am. Compl. at 1, 3-4; Dkt. No. 18. However, the complaint lacks factual allegations suggesting that Cucumber, Martuscello, D'Amore, and Barbosa were personally involved in conduct that violated plaintiff's constitutional rights. Accordingly, plaintiff fails to state a cognizable claim against these individuals. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### 3. Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."

*Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015). "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.*

**\*6** Allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at \*3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Eighth Amendment claims against Bradbarry, Blackman, and Snedecker require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Free Exercise Claims

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; and (2) the challenged practice of the prison officials infringes upon the religious belief. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[4] A religious belief is "sincerely held" when the

plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996).

> [4] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*7** Plaintiff's claim that Snedecker harassed him for wearing box braids, without more, does not suggest that he interfered with or substantially burdened plaintiff's ability to practice his religion to state a plausible First Amendment claim. *See Castillo v. Hart*, No. 20-CV-6148, 2020 WL 5095941, at \*3 (S.D.N.Y. Aug. 28, 2020); *Williams v. Colby*, No. 22-CV-4022, 2022 WL 2819579, at \*4 (S.D.N.Y. July 18, 2022) (holding that harassment or verbal abuse, without an additional burden or interference, are insufficient to state a claim under the Free Exercise Clause).

Plaintiff's claims regarding the availability of Rastafarian services are also subject to dismissal. The pleading lacks any facts suggesting that any named defendant was personally involved in the alleged deprivation of Rastafarian services or that any defendant was aware of plaintiff's request for Rastafarian services. In fact, while Hadian is named as a defendant in the caption and list of parties, he is not referenced anywhere in the body of the pleading. *See Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at \*3 (S.D.N.Y. Apr.

30, 2020) (dismissing First Amendment claims related to the lack of Rastafarian services due to lack of facts suggesting the defendants' involvement); *see Cipriani*, 2007 WL 607341, \*1 (citation omitted).

Thus, plaintiff's free exercise claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. RLUIPA Claims

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a) (2012). Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise. *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at \*2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted). There is no cognizable private right of action under RLUIPA against state officers sued in their individual capacities. *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013). Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities. *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at \*6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 563 U.S. 277 (2011).

Initially, the Court notes that the third amended complaint does not include any request for injunctive relief. Moreover, plaintiff was transferred from Marcy C.F. to Bare Hill Correctional Facility. *See* Dkt. No. 13. Thus, even assuming plaintiff asserted claims for injunctive relief against the Marcy C.F. defendants, those claims are moot. *See Brandon v. Schroyer*, No. 9:13-CV-0939 (TJM/DEP), 2016 WL 1638242, at \*9 (N.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, 2016 WL 1639904 (N.D.N.Y. Apr. 25, 2016) (citing *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011)) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at \*3 (S.D.N.Y. Oct. 20, 2014) ("As all of the Moving Defendants are employed at

Green Haven, and Blalock is presently incarcerated at Eastern Correctional Facility, any claims for injunctive relief against the Moving Defendants are moot.").

**\*8** Accordingly, plaintiff's RLUIPA claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Claims Related to Violations of DOCCS' Directives

A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations. *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); *see also Sanders v. Gifford*, No. 11-CV-0326, 2014 WL 5662775, at \*4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to follow a DOCCS directive does not give rise to a § 1983 claim).

Accordingly, the Court dismisses these claims with prejudice since the defects are substantive, rendering amendment futile. *See Cuoco*, 222 F.3d at 112.

### 7. Access to Court Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right of access to the courts is also implicated when a prisoner experiences interference with his mail. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right ...' and cannot ground a Section 1983 claim without a showing of 'actual injury.' "

*Collins v. Goord*, 438 F.Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *See Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

*9 The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16.

"Finally, ... the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] ... to challenge the conditions of [his] confinement." *Id.* at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

At this juncture, plaintiff's access-to-court claims are dismissed for failure to state a claim. Plaintiff has not plead facts suggesting that any named defendant personally withheld, or tampered with, his legal mail. Moreover, plaintiff

has not sufficiently described his legal claim(s) to allow the Court to conclude that he suffered an actual injury. Accordingly, these claims are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1). *See, e.g., Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"); *Joseph v. State, Dep't of Corrs.*, No. 92-CV-1566, 1994 WL 688303, at *1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail").

### 8. Fourteenth Amendment Claims

In the proposed pleading, plaintiff attempts to assert Fourteenth Amendment claims and contends that the October 2022 misbehavior report impacted his merit release. *See* Dkt. 18 at 2.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. "An inmate's federally-protected liberty interest in parole release is limited to not being denied parole for arbitrary or impermissible reasons." *Villalobos v. New York Div. of Parole*, No. 09 CIV 8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) *appeal dismissed and remanded sub nom. Villalobos v. New York State Div. of Parole*, 475 F. App'x 400 (2d Cir. 2012). "The arbitrary or capricious reasons must be based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." *Mabry v. Cuomo*, No. 11 CIV. 4456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (citation omitted). Similarly, with respect to merit allowances, "[a]lthough inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

an inmate or class of inmates is eligible to earn good time credit." *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (internal citation omitted); *Lighthall v. Vadlamudi*, No. 9:04-CV-721 (NAM/RFT), 2006 WL 721568, at *15 (N.D.N.Y. March 17, 2006) (holding that the state has not created a protected liberty interest in "merit time" or any program that impacts good time credit). "[Section] 1983 is not the proper vehicle ... to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." *Fifield v. Eaton*, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009).

**\*10**  Accordingly, plaintiff's Fourteenth Amendment claims are dismissed for failure to state a claim. *See Hill v. Goord*, 63 F.Supp.2d 254, 260-61 (E.D.N.Y. 1999) ("Courts have held that *Heck* applies to § 1983 damage actions challenging the fact or duration of parole release on the rationale that the plaintiff is in effect attacking his confinement and state court remedies have not been exhausted.") (citations omitted); *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (holding that inmate's claims do not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus"). [5]

[5]    Plaintiff's Fourteenth Amendment claims are also subject to dismissal for failure to plead that any named defendant was personally involved in decisions related to plaintiff's continued confinement.

### 9. First Amendment Retaliation Claims

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). As to the first element of a retaliation claim, the filing of a grievance constitutes protected speech. *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001).

The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (emphasis in original). The objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line ... defin[ing] the outer limits" of the "temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489,491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13.

**\*11**  Plaintiff's retaliation claims are dismissed for failure to state a claim. Plaintiff alleges that "defendants retaliated against [him] by placing [a] false misbehavior report against him due to the plaintiff filing this action[.]" Dkt. No. 18 at 1-2. Plaintiff also alleges that "defendants continuously retaliated against [him] for exhausting his rights to file grievances, lawsuits, and claims[.]" *Id.* at 4, 5. However, the third amended complaint lacks facts suggesting that any named defendant was personally involved in the alleged retaliatory conduct. Plaintiff refers to a misbehavior report issued in October 2022, but the identity of the person or persons who issued the report is unknown. Further, even assuming plaintiff engaged in protected conduct when he filed grievances and this lawsuit, plaintiff has not identified any individual who retaliated against him nor has he explained how those individuals were aware of the protected speech, or a connection between that individual and the protected conduct.

Simply put, plaintiff's retaliation claims are overly vague and non-specific and thus, are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Claims Against Reardon

Plaintiff claims that Reardon failed to properly train, supervise, monitor, or investigate their officers and agents, including defendants. *See* Third Am. Compl. at 17. Plaintiff alleges that Reardon "tolerated" the actions of his officers and staff and received grievance and letters and was "well aware of the defendants' misconduct." *Id.* at 17, 24, 30. "Even assuming the [defendant] was aware of the grievance or complaints, his 'mere knowledge' is insufficient to adequately plead a Section 1983 violation." *Brunache v. Annucci*, No. 22-CV-196, 2023 WL 146850, at *15 (W.D.N.Y. Jan. 9, 2023). In light of *Tangreti*, plaintiff's attempt to plead personal involvement based upon the receipt of grievances or letters, lacks merit because it does not plausibly suggest "[t]he factors necessary to establish" a constitutional claim. *See Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *see also Verdi v. Farah*, No. 9:22-CV-0825 (BKS/CFH), 2022 WL 4236401, at *7 (N.D.N.Y. Sept. 14, 2022) (holding that, even assuming the defendant "received and read [the] plaintiff's letters, and that *Tangreti* did not entirely eliminate supervisory liability under a failure-to-remedy theory, [the] defendant['s] alleged refusal to override the grievance process does not plausibly suggest" that he violated the plaintiff's constitutional rights).

Accordingly, plaintiff's claims against Reardon are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted. *See Balentine v. Annuci*, No. 9:21-CV-1383 (LEK/CFH), 2022 WL 2046302, at *10 (N.D.N.Y. June 7, 2022) (dismissing claims against Reardon based upon the receipt of letters and grievances), *reconsideration denied sub nom. Balentine v. Doe*, No. 2022 WL 17818553 (N.D.N.Y. Dec. 20, 2022).

### IV. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to amend his complaint (Dkt. No. 16) is **DENIED** as unnecessary; and it is further

**ORDERED** that plaintiff's motion to review (Dkt. No. 18) is **DENIED** as unnecessary; and it is further

**ORDERED** that the Clerk of the Court shall attach a copy of the submission at Dkt. No. 18 to the submission at Dkt. No. 16-1; and it is further

**ORDERED** that the Clerk of the Court is directed to re-docket plaintiff's proposed amended complaint (Dkt. No. 16-1) as a third amended complaint filed as of right in accordance with Rule 15(a)(1) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk of the Court shall add DOCCS, Blackman, and Cucumber to the Docket Report as defendants; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b): (1) claims for monetary damages against DOCCS and defendants in their official capacities; and (2) claims related to violations of DOCCS' Directives; and it is further

**\*12 ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims against Cucumber, Martuscello, D'Amore, and Barbosa; (2) First Amendment free exercise claims; (3) RLUIPA claims; (4) First Amendment access-to-court claims; (5) Fourteenth Amendment due process claims; (6) First Amendment retaliation claims; and (7) claims against Reardon; [6] and it is further

[6]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that the Eight Amendment claims against Bradbarry, Blackman, and Snedecker survive the Court's sua sponte review under 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED** that Reardon, Schneider, Murphy, Mitchell, Bell, Coomber, Martuscello, D'Amore, Dibari, Barbosa, Trombley,

Davis, Thisse, Smith, Hadian, Keller, Butler, Cucumber, and DOCCS are **DISMISSED** as defendants herein; and it is further

**ORDERED** that upon receipt of the documents for service from plaintiff, the Clerk shall issue summonses and forward them, along with copies of the third amended complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and third amended complaint to the Office of the Attorney General, together with a copy of this Decision and Order by electronic mail only; and it is further

**ORDERED** that defendants or their counsel, shall file a response to the third amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff pursuant to the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 1307115

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2418253
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David K. PORATH, Plaintiff,
v.
BIRD, Investigator, NYS Police, Defendant.

Civil Action No. 9:11–cv–963 (GLS/CFH).
|
June 3, 2013.

**Attorneys and Law Firms**

David K. Porath, Ossining, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Kevin P. Hickey, Esq., Assistant Attorney General, of Counsel, Albany, NY, for the Defendant.

## *ORDER*

GARY L. SHARPE, Chief Judge.

 **\*1** The above-captioned matter comes to this court following a Report–Recommendation by Magistrate Judge Christian F. Hummel, duly filed May 7, 2013. Following ten days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, [1] and the court having reviewed the Magistrate Judge's Report–Recommendation for clear error, it is hereby

1    On May 31, 2013, the court received a letter from the plaintiff stating, "At this time, the Plaintiff has no objections at all to the "Report Recommendation and Order," filed on May 7 th 2013." *See Dkt. No.* 66.

ORDERED that the Report–Recommendation of Magistrate Judge Christian F. Hummel filed May 7, 2013 is ACCEPTED in its entirety for the reasons state therein; and it is further

ORDERED that Bird's motion for summary judgment (Dkt. No. 46) be DENIED; and it is further

ORDERED, that the Clerk of the Court is to mail copies of the Order to the parties in accordance with the court's local rules.

IT IS SO ORDERED.

DAVID K. PORATH, Plaintiff,

v.

BIRD, Investigator, NYS Police, Defendant. [1]

1    By stipulations of discontinuance dated April 10, 2012 and November 7, 2012, defendants Sergeant Michael J. Lewis and Deputy N. Prusky were dismissed from this action. Dkt. Nos. 36, 55.

## REPORT–RECOMMENDATION AND ORDER [2]

2    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff pro se David K. Porath ("Porath"), an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action against Bird, a New York State ("NYS") Police Investigator, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983. Compl. (Dkt. No. 1). Porath contends that Bird deprived him of his constitutional rights under the Fourth Amendment. *Id.* Presently pending is Bird's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Dkt. No. 46. Porath opposes this motion. Dkt. No. 56. For the reasons which follow, it is recommended that Bird's motion be denied.

### I. Background

The facts are related herein in the light most favorable to Porath as the non-moving party. *See* subsection ll(A) *infra.* The events in question occurred prior to Porath's conviction and incarceration.

### A. Burglary

According to Bird, on November 14, 2010, non-party Sergeant Phelps ("Phelps") advised Bird that he had stopped two burglary suspects in a vehicle on Midline Road in Perth, New York. [3] Bird Decl. (Dkt. No. 46–4) ¶ 4. Shortly thereafter, non-party Trooper David Vigliotti ("Vigliotti") informed Bird that one of the suspects, Porath, fled the scene during questioning. *Id.* ¶ 5. Vigliotti explained that the other suspect, Laurie Rusnica ("Rusnica"), admitted to burglarizing residential homes with Porath and was taken into custody. *Id.;* Dkt. No. 46–7. Vigliotti further informed Bird that a search detail was looking for Porath. Bird Decl. ¶ 6.

[3]     Suspects Laurie Rusnica and David K. Porath were followed by law enforcement authorities pursuant to a court order. Dkt. No. 46–6.

Porath claims he hid in the woods for four to five hours. [4] Porath Dep. (Dkt. No. 46–3) at 32:9–10. [5] When Porath called his friend, non-party Sandra Bechard, to pick him up, Phelps [6] answered Bechard's phone. [7] *Id.* at 32:17–22. Porath agreed to surrender to Phelps and Bechard for committing burglary in the second degree. *Id.* at 32:21–22, 37:13–19; Compl. ¶ 7. When Bird arrived at the scene, he heard the phone call from Porath to Phelps, which was broadcasted over a loudspeaker. Bird Decl. ¶ 13. Bird realized that Porath's claimed location was inconsistent with the surrounding environment. *Id.* Based on the inconsistencies, Bird believed Porath intentionally misdirected the search detail to approach the east side line of Midline Road when Porath was actually located on the west side. *Id.* Bird further believed that Porath lied in order to access Bechard's vehicle parked on the west side of Midline Road. *Id.; see* Dkt. No. 46–9.

[4]     Bird submitted an incident report indicating that the November 14, 2010 incident began at 9:25 a.m. and Porath was taken into custody at 1:25 p.m. Dkt. No. 46–5.

[5]     The page numbers following "Porath Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

[6]     Porath spelled Phelps's name as "Phillips." Compl. ¶ 8. However, the incident report for the arrest at issue uses the former spelling. Dkt. No. 46–5. The Court uses the former spelling for this Report–Recommendation.

[7]     Police officers accosted Bechard when Bechard parked on Midline Road. Dkt. No. 46–9.

### B. Use of Force Incident

**\*2** Porath claims he came out of the woods and was walking towards Phelps and Bechard when Bird ran up to him, pulled out a gun, and ordered him to get on the ground. Porath Dep. at 33:3–8; Compl ¶ 8. Porath complied and laid on the ground facing down. Porath Dep. at 33:8–9; Compl. ¶¶ 8–9. Porath alleged that non-party Prusky jumped on his back and Bird proceeded to cuff his left wrist then grabbed his right arm and jerked it back and up. Porath Dep. at 33:13–16; Compl. ¶ 11. Porath yelled out in pain, "my arm, my arm," to which Bird replied "I don't give a F[ ]," yanked Porath's arm back, twisted the arm counterclockwise, then brought it back. Porath Dep. at 33:17–21. Porath yelled, "[y]our [sic] hurting my shoulder." Compl. ¶ 12. Bird continued to twist Porath's right arm. *Id.* At this point, Porath "felt something rip and separate all at the same time." *Id.* Porath said, "[y]ou did something to my arm." Porath Dep. at 33:24–25. Bird ignored Porath's pleas. *Id.* at 33:24–34:1. Porath claims he did not resist arrest and his right arm was limp when he was being cuffed. Porath Resp. (Dkt. No. 56) at 5; Porath Dep. at 42:19–43:9.

After suspecting Porath was not at the claimed location, Bird separated from the search detail and spotted Porath crouching under a tree. Bird Decl. ¶ 14. Bird attested that he ordered Porath to come out and speak with him and Porath complied. *Id.* Porath asked Bird to not handcuff him, to which Bird attested he would not agree to because Porath already fled from the police for several hours. *Id.* Bird removed handcuffs from his pocket and stepped toward Porath. *Id.* Porath started to run pass Bird. *Id.* Bird caught up with Porath, tackled and straddled Porath, and attempted to handcuff Porath. [8] *Id.*

[8]     Porath does not claim that the tackling or straddling constituted excessive force used against him. *See* Compl. ¶¶ 11–12; Porath Resp. at 8–9.

According to Bird, he placed the first handcuff on Porath with minimal effort and resistance. Bird Decl. ¶ 16. As for the second handcuff, Porath was not immediately or completely cooperative. *Id.* However, Bird would not categorize Porath's actions as "resisting arrest." *Id.* Bird later learned that the difficulty in cuffing Porath's right wrist was compounded by the fact that the cuff was bent, presumably from tackling Porath. *Id.* ¶ 17.

At approximately 1:25 p.m., Bird took Porath in custody, who later pled guilty to attempted burglary in the second degree. Porath Dep. at 12:5–12; *see also* Bird Decl. ¶ 10; Dkt. No. 46–8. Bird attested that other than cuffing Porath's wrists as he was trained, he did not rotate, pull, or yank Porath's arm. Bird Decl. ¶ 20. Bird explained that because Porath twice exhibited a propensity to flee when the opportunity arose and provided false information to the search detail in an effort to avoid capture, he felt it was necessary to gain custody and control over Porath. *Id* . ¶ 24.

### C. Shoulder Injuries

Porath has a history of shoulder injuries prior to the use of force incident. In 2007, Porath injured the acromioclavicular ("AC") [9] joint in his right shoulder from playing softball. Porath Dep. at 51:3–17. As a result, Porath had to undergo surgery. *Id.* at 51:16–22.

[9]   Acromioclavicular "pertain[s] to the acromion and clavicle, especially to the articulation between the acromion and the clavicle." Dorland's Illustrated Med. Dictionary 20 (28th ed.1994) [hereinafter "Dorland's" ]. The acromion is "the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder[.]" *Id.* The clavicle is "the bone articulating with the sternum and scapula[.]" *Id.* at 339.

 **\*3**  From 2008 through 2010, Porath was incarcerated for committing another crime and had work restrictions during the course of his incarceration, including not being given work assignments. Porath Dep. at 54:3–16. After his discharge from prison, Porath did not see any healthcare professionals or undergo physical therapy for his shoulder as he "was given a clean bill of health" from Green Haven Correctional Facility's medical staff. [10] *Id.* at 55:1–8, 55:24–5. Porath testified that prior to his arrest, his right shoulder was "excellent." *Id.* at 52:23–53:1. During Porath's current incarceration for burglary, he is part of the prison's paint crew. Porath Dep. at 22:6–7. However, Porath's abilities are limited as he was told by doctors in prison that he could not use ladders and can only work with his left hand. *Id.* at 22:8–16.

[10]   A medical summary from Green Haven Correctional Facility dated June 9, 2010 indicates that Porath has "chronic" shoulder pain and references the Mumford procedure conducted in 2008. Dkt. No. 58–2.

After his arrest, Porath was taken to the Fonda barracks for three to four hours and complained to a state trooper about his shoulder pains. Porath Dep. at 47:8–15. When Porath was transferred to the Fulton County Jail ("Fulton"), Porath informed the officers there of his shoulder pains. Compl. ¶ 14. Non-party Dr. Glenn saw Porath at Fulton and scheduled a Magnetic Resonance Imaging ("MRI") for Porath, which took place in December 2010 at the Nathan Laturer Hospital. *Id.* ¶¶ 16–17; Porath Dep. at 98:18–22. The MRI showed a torn rotator cuff, a torn labrum, an impingement, a "SLAP lesion," [11] and tearing of muscles. Compl. ¶ 18; Porath Dep. at 57:19–21; *see also* Dkt. No. 1 at 16. Porath was sent to see a specialist, non-party Dr. Ayres, who conducted surgery on Porath. Compl. ¶ 19.

[11]   SLAP stands for "Superior Labrum Tear from Anterior to Posterior." Labrum is "a general term for an edge, brim, or lip." Dorland's at 892. A type of labrum, glenoidale, refers to "a ring of fibrocartilage attached to the rim of the glenoid cavity of the scapula, increasing the depth of the cavity[.]" *Id.*

Dr. Ayres's progress report dated February 9, 2011 states that Porath "tried to flee, was grabbed and with an extension, abduction, external rotation force to his right shoulder." Dkt. No. 1 at 14. Porath was in serious pain. *Id.* Dr. Ayres reported that Porath

has a history of trouble with his shoulder ... had a "Mumford" procedure in 2008, had 18 weeks of physical therapy ... still had a fair amount of pain.... Bringing his arm across his chest hurts....

[Porath] has a well-healed transverse scar across the remnant of his right AC joint, which is still tender.... Patient can elevate with pain, ... internally rotate to about L3, externally rotate about 20 degrees, all with good strength. He has good deep tendon reflexes.

...

[Porath] does have an MRI ... which does show a change in a more posterior portion of his rotator cuff, ... with what was described as a partial tear, which may be more of a

complete tear with actual possible impact changes in the greater tuberceity.

...

[Porath] does have changes in his rotator cuff with a fair amount of pain, specifically where his MRI is showing change.... He does have adequately decompressed AC joint ... makes sense to consider arthroscopy [12] or a possible open acromioplasty [13] and repair of rotator cuff as indicated.... [Porath] does appear to have pathology, and I do not think physical therapy will help.

[12]    Arthroscopy is an "examination of the interior of a joint with an arthroscope." *Id.* at 142.

[13]    Acromioplasty refers to the "surgical removal of the anterior hook of the acromion to relieve mechanical compression of the rotator cuff during movement of the glenohumeral joint[.]" *Id.* at 20.

**\*4** *Id.* at 14–15.

On April 26, 2011, Porath was scheduled for surgery, but Porath was informed that due to extensive damage, surgery would not be possible. Compl. ¶ 20. In an operative report dated April 26, 2011, Dr. Ayres wrote

> with a fairly extensive complex SLAP lesion, no further work was done, and it was decided that, because of the difficulty in repairing a SLAP lesion with splits, this would be a simply diagnostic procedure. The patient will be referred to Dr. Lassiter of the Sports Medicine and Shoulder Institute for consideration of further surgery....

Dkt. No. 1 at 16. On July 21, 2011, Porath saw non-party specialist, Dr. Holder, who stated that he could not "make [Porath's] arm normal again" but "will try to make it workable." Compl. ¶ 21. Porath claims he underwent a major surgery on October 20, 2011. Dkt. No. 59 at 4. Porath contends that Dr. Holder may conduct another surgery for his shoulder. Porath Dep. at 97:11–16. Neither Dr. Ayres nor Dr. Holder related Porath's current shoulder problems with his softball injury. Porath Dep. at 59:1–14, 61:3–21.

## II. Discussion

Porath contends that Bird violated his Fourth Amendment right against the use of excessive force during an arrest when Bird yanked and twisted Porath's arm back to handcuff him and continued to do so after being informed by Porath of his shoulder pains, which resulted in injuries requiring surgery. Bird argues that: (1) his use of force was objectively reasonable; (2) Porath failed to show the nature of his injuries and a causal connection between such injuries and his actions; and (3) he is entitled to qualify immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

**\*5** When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude,"... that a pro se

litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants,"... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### B. Fourth Amendment

#### 1. Excessive Force

The Fourth Amendment prohibits a law enforcement officer from using excessive force during the course of effecting an arrest. *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). However, in making an arrest, a law enforcement officer "necessarily carries ... the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22–27 (1968)). In determining whether an officer used excessive force in executing an arrest, the Court examines whether the force used is objectively unreasonable "in light of the facts and circumstances confronting [the officer], without regard to the officer['s] underlying intent or motivation." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (quoting *Graham,* 490 U.S. at 397). This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396 (internal quotation marks and citations omitted).

To measure reasonableness, the Court "consider[s] the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Jones,* 465 F.3d at 61 (quoting *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999)). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham,* 490 U.S. at 396) (internal quotation marks omitted).

**\*6** As an initial matter, Porath's surrender, which is uncontested, provides the probable cause for the arrest which, in turn, acknowledged that Bird was authorized to use some degree of force to effect the arrest. *Jennejahn v. Village of Avon,* 575 F.Supp.2d 473, 478 (W.D.N.Y.2008) (citation omitted) (noting that plaintiff's concession to probable cause for his arrest also recognizes defendant's ability to use some force in making the arrest).

Turning to the factors articulated in *Jones v. Parmley,* the crime committed and its severity are undisputed; thus, militating in favor of defendants. Bird had reason to believe that Porath was burglarizing residential dwellings with Rusnica and Porath later pled guilty to attempted burglary in the second degree. In New York, burglary in the second degree is a Class C violent felony offense. N.Y. PENAL LAW §§ 70.02(1)(b), 140.25(2) (McKinney 2012). Accordingly, Porath admitted to engaging in violent criminal behavior prior to his arrest. Further, it is also undisputed that Porath fled from the authorities, intentionally attempted to mislead them, and remained a fugitive for several hours. This further amplified the severity of the criminal conduct in which Porath was engaged. *Tracy,* 623 F.3d at 97 (considering the seriousness of plaintiff's criminal conduct, specifically the officer's reasonable and ultimately correct belief that plaintiff was a fugitive seeking to evade capture, as support for defendant's reasonable use of force).

However, material issues of fact exist with respect to whether Porath posed a dangerous threat to Bird, other officers, or the public at large. A review of record evidence shows that Porath was neither armed at the time of his arrest nor attempted to assault an officer. Bird does not assert the contrary. *Cf. Garcia v. Grisanti,* 998 F.Supp. 270, 273 (W.D.N.Y.1998) (concluding that use of force would be reasonable when plaintiff actively resisted arrest by grabbing a shotgun and attempted to strike defendant with a steam iron). Further, the record indicates that the assistance of other officers was available and there were no environmental factors interfering with Bird's ability to execute the arrest. *Cf Tracy,* 623

F.3d at 97 (reasoning that because defendant was alone, at night, in bad weather, while effecting an arrest, such factors contributed to a real and imminent risk to the defendant). According to Porath, Bird pointed a gun at him while ordering him to get on the ground, to which he complied. [14] If Porath attempted to evade capture for a second time by running from Bird, as Bird asserts, then Porath may have created circumstances posing a dangerous threat to Bird and others. *Jones,* 465 F.3d at 61. This competing evidence rests on the credibility of Porath on the one hand and Bird on the other. Such a credibility determination is reserved for a jury to decide. *Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) (citations omitted). Thus, Bird has failed to show an absence of disputed material fact with respect to this factor concerning Porath's dangerousness. *Celotex Corp.,* 477 U.S. at 323.

[14]     The governing law dictates that the evidence must be viewed in the light most favorable to the non-moving party.

**\*7** As for the final factor, record evidence also reveals disputed material facts. It is undisputed that Porath evaded arrest at least once for several hours. However, as discussed above, Porath and Bird provide contradictory allegations as to whether Porath attempted to run from Bird after being ordered to drop on the ground. *Cf. Tracy,* 623 F.3d at 94, 97 (noting that plaintiff fled from officers and thus reasoning that from the time plaintiff fled until defendant apprehended him, plaintiff's conduct posed a serious and imminent risk to defendant's safety). Further, Porath and Bird proffered disputed assertions as to whether Porath resisted being handcuffed. Porath maintains that his right arm was limp when Bird took it, pulled it back and up, and twisted it before and after cuffing his right wrist. Bird contends that while Porath did not resist arrest, Porath was not immediately or completely cooperative in having his right wrist handcuffed. [15] Furthermore, Bird maintains that he only cuffed Porath as he was trained and did not rotate, pull, or yank Porath's arm. These conflicting accounts of "the degree of force used, the necessity for force, [and] whether any force was excessive," cannot be resolved through this motion for summary judgment. *Betancourt v. Slavin,* 676 F.Supp.2d 71, 78 (D.Conn.2009); *see also, Crowell v. Kirkpatrick,* 400 F. App'x 592, 594–95 (2d Cir.2010) (finding defendant used reasonable force even though plaintiffs were arrested for minor crimes and did not threaten safety of others because plaintiffs actively resisted their arrest at the time defendants tased them). [16] Given the factual disputes with respect to whether Porath resisted arrest, as well as the factor concerning

the dangerousness posed by Porath, it cannot be determined at this juncture whether Bird used objectively reasonable force at the time of Porath's arrest.

[15]     Bird also indicated that the bent handcuffs contributed to the difficulty in cuffing Porath, although the reason for this assertion is not expressly given.

[16]     All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

Accordingly, Bird's motion on this ground should be denied.

## 2. Injuries and Causation

Bird contends that Porath has failed to (1) establish the nature of his injury and (2) casually connect his injuries to Bird's actions.

Courts in this Circuit have dismissed excessive force claims brought under the Fourth Amendment where a plaintiff only suffers a *de minimis* injury. *Lemmo v. McKoy,* No. 08–CV–4264 (RJD), 2011 WL 843974, at \*5 (E.D.N.Y. Mar. 8, 2011) (citation omitted). *De minimis* injuries "include short-term pain, swelling, and bruising, ... brief numbness from tight handcuffing, ... claims of minor discomfort from tight handcuffing, ... and two superficial scratches with a cut inside the mouth." *Id.* (citations omitted). Nevertheless, even if the injuries suffered were neither permanent nor severe, a plaintiff may still recover under the Fourth Amendment if the force used was unreasonable and excessive. *Robison,* 821 F.2d at 924 (citations omitted).

In this case, despite Porath's inartful articulation of his shoulder injuries, [17] record evidence shows that after Porath's arrest, Porath experienced shoulder pains to such an extent that surgery was contemplated and conducted. Porath testified that prior to his 2010 arrest, he had recovered from his 2007 shoulder injury and no longer required physical therapy. However, after his arrest, Porath's abilities in working with the prison paint crew were limited. Further, Porath's MRI showed that Porath has a torn rotator cuff, a torn labrum, an impingement, a "SLAP four lesion," and tearing of muscles. Moreover, Dr. Ayres noted that Porath experienced shoulder pains after his arrest and continued to experience such pain. Given the multiple muscle tears, pain, and decreased abilities,

such record evidence demonstrates that Porath suffers from injuries beyond what courts have considered to be *de minimis*. *Lemmo*, 2011 WL 843974, at \*5. In addition, assuming Porath's injuries are neither permanent nor severe, Porath may still recover damages if Bird is found to have used excessive force against Porath. Therefore, Bird has failed to show an absence of factual disputes with respect to the nature of Porath's injuries. *Celotex Corp.*, 477 U.S. at 323.

17   For example, in his complaint, Porath alleged that Bird "caused [him] to sustain several permanent injuries to his R. shoulder which injuries include (? ? ? ?). *See* chart # 1305719 attached." Compl. at 5.

 **\*8**  As for causation, Bird's contention that Porath failed to establish a causal connection between the alleged injuries and the use of force during the arrest also presents factual issues. As a preliminary matter, "in an excessive force case, a plaintiff may recover damages for the aggravation of a preexisting injury caused by the use of excessive force." *Galunas v. Reynolds*, No. 11–CV–14 (MAD/RFT), 2013 WL 316618, at \*5 (N.D.N.Y. Jan. 28, 2013) (citations omitted). Porath testified that he underwent surgery from sustaining a softball injury and participated in physical therapy sessions; however, Porath did not require physical therapy in 2010 prior to his arrest. In fact, Porath testified that he had recovered and "was given a clean bill of health." Even though record evidence indicates that Porath has a preexisting shoulder injury, Porath contends that neither Dr. Ayres nor Dr. Holder informed him that his current injuries constitute aggravation of his prior injuries. Bird does not provide any support to contradict Porath's contentions that his shoulder injuries were proximately caused by the alleged constitutional violation. Moreover, even if Porath's injuries were an exacerbation of his previously identified shoulder ailments, Porath is not precluded from recovery. Regardless of whether the trauma resulted in a new injury, or the aggravation of an old one, it is irrelevant for present purposes because both are sufficient to establish a constitutional claim. Further, although Bird correctly points out that Porath contradicted himself with regard to "the method and manner in which he was injured," such inconsistent statements concerning credibility are more appropriately reserved for a jury determination.[18] *Robison*, 821 F.2d at 924; *Galunas*, 2013 WL 316618, at \*5. Therefore, Bird has failed to satisfy his burden in showing an absence of disputed material facts concerning Porath's shoulder injuries and their causation. *Celotex Corp.*, 477 U.S. at 323.

18   Bird compares inconsistent statements in Porath's deposition where Porath asserts that Bird twisted his arm and then subsequently claims Bird never twisted his arm. Dkt. No. 46–11 at 12.

Accordingly, Bird's motion on this ground should be denied.

## C. Qualified Immunity

Bird claims that even if Porath's constitutional claim is substantiated, he is nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Aiken v. Nixon*, 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd*, 80 F. App'x 146 (2d Cir.2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)).

 **\*9**  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken*, 236 F.Supp.2d at 230. It is well-settled that on November 14, 2010, the Fourth Amendment prohibited law enforcement officers from using excessive force during the course of executing an arrest. *Graham*, 490 U.S. at 394–96. Thus, because a reasonably jury could conceivably accept Porath's claim that Bird's use of force was objectively unreasonable, Bird is not entitled to qualified immunity in this case for the alleged Fourth Amendment violation.

Accordingly, Bird's motion on this ground should be denied.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Bird's motion for summary judgment (Dkt. No. 46) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

400 Fed.Appx. 592

This case was not selected for publication in the Federal Reporter.

United States Court of Appeals, Second Circuit.

Jonathan CROWELL and Samantha Kilmurray, Plaintiffs–Appellants,

v.

Robert KIRKPATRICK, Michael Gorman, Chuck Aleck, Peter Dimarino, Defendants–Appellees.

Jeremy Evans, Defendant.

No. 09–4100–cv. | Nov. 15, 2010.

**Synopsis**

**Background:** Arrestees brought § 1983 action against police officers, alleging that officers used excessive force during their arrest in violation of Fourth Amendment. The United States District Court for the District of Vermont, Conroy, United States Magistrate Judge, 667 F.Supp.2d 391, granted summary judgment for officers. Arrestees appealed.

**Holdings:** The Court of Appeals held that:

[1] officers' use of stun guns on arrestees was objectively reasonable, and thus did not constitute excessive force, and

[2] officers were entitled to qualified immunity.

Affirmed.

**\*593** UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED.

**Attorneys and Law Firms**

David C. Sleigh, Sleigh & Williams, St. Johnsbury, VT, for Plaintiffs–Appellants.

Nancy G. Sheahan, McNeil, Leddy & Sheahan, P.C., Burlington, VT (Kevin J. Coyle, on the brief), for Defendants–Appellees.

PRESENT: DEBRA ANN LIVINGSTON, DENNY CHIN, Circuit Judges, DAVID G. LARIMER, District Judge. [*]

[*]    The Honorable David G. Larimer, of the United States District Court for the Western District of New York, sitting by designation.

**Opinion**

**SUMMARY ORDER**

Plaintiffs–Appellants Jonathan Crowell and Samantha Kilmurray appeal from a September 14, 2009, order of the District Court of Vermont (Conroy, *Mag. J.*) [1] granting summary judgment to Defendants–Appellees, members of the Brattleboro Police Department (BPD), on the Plaintiffs' action brought under 42 U.S.C. § 1983. *See Crowell v. Kirkpatrick,* 667 F.Supp.2d 391 (2009). Plaintiffs, alleging that Defendants' use of force in effecting their arrest was excessive, challenge the District Court's conclusion both that the use of force was not unreasonable under the Fourth Amendment and that, even if it **\*594** were unreasonable, Defendants were entitled to qualified immunity. We assume the parties' familiarity with the facts and procedural history of the case and the issues on appeal.

[1]    The parties consented to the exercise of jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c).

**\*10** This Court "review[s] a grant of summary judgment *de novo,* construing the record in the light most favorable to the non-moving party." *Gilles v. Repicky,* 511 F.3d 239, 243

(2d Cir.2007). "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Assessing whether the use of force to make an arrest is "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The reasonableness inquiry, an objective one, is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ." *Id.* "[T]he fact finder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004). The balancing must be done with sensitivity to the factual circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

Qualified immunity is evaluated on the basis of a two-part test. First, we must inquire whether "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, assuming we find that the facts alleged do establish a violation of a constitutional right, we must then "ask whether the right was clearly established." *Id.* The *Saucier* Court emphasized that this second inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Id.* Further, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir.2004). Moreover, "[e]ven if the right at issue was clearly established in certain respects, ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir.2007). With respect to the appropriate sequence for this inquiry, the Supreme Court has clarified that "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,*

555 U.S. 223, ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

**\*11** The District Court found both that Defendants' use of force in this case was reasonable and that, assuming *arguendo* it was not, Plaintiffs' rights in this situation were not clearly established. We find that the use of force in these particular circumstances was objectively reasonable and affirm.

In this case, Plaintiffs were arrested for relatively minor crimes of trespass and resisting arrest and were not threatening the safety of any other person with their **\*595** behavior. However, they were actively resisting their arrest at the time they were tased by the officers in this case, having chained themselves to a several hundred pound barrel drum and having refused to free themselves, even though they admitted they were able to release themselves from the barrel at any time throughout the encounter. Plaintiff Kilmurray admits that prior to the officers' use of their tasers, she had asked an acquaintance at the scene to call other members of their group to return to the property. Moreover, both Plaintiffs admitted that the officers at the scene considered and attempted several alternate means of removing them from the property before resorting to use of their tasers, that the officers expressly warned them that they would be tased and that it would be painful, and that the officers gave them another opportunity to release themselves from the barrel after this warning. Finally, both Plaintiffs were given opportunities again to release themselves from the barrel prior to the subsequent uses of the tasers.

**[1]** While we do not suggest that the use of a taser to effect an arrest is always, or even often, objectively reasonable, under the circumstances here, even construing the facts in the light most favorable to Plaintiffs, we conclude that it was. Because they had chained themselves to the drum, Plaintiffs could not have been arrested and removed from the scene by more conventional means, and the apparently imminent arrival of some number of their compatriots added a degree of urgency to the need to remove Plaintiffs quickly, before the presence of other protestors made that more difficult to accomplish. The officers attempted to use other means to effectuate the arrest, none of which proved feasible, and used the taser only as a last resort, after warning Plaintiffs and giving them a last opportunity to unchain themselves from the barrel and leave the premises peacefully. Finally, Defendants set the taser on "drive stun" mode, which typically causes temporary, if significant, pain and no permanent injury. *See Brooks v. City of Seattle,* 599 F.3d 1018, 1027 (9th Cir.2010) ("The use of the Taser in drive-stun mode is painful, certainly,

but also temporary and localized, without incapacitating muscle contractions or significant lasting injury."), *rehearing en banc granted,* 623 F.3d 911 (9th Cir.2010). Given the totality of those circumstances, it is difficult to see how a rational factfinder could conclude that the officers' actions were anything other than reasonable.

**\*12** **[2]** In any event, since the facts alleged, even taken in the light most favorable to the Plaintiffs, do not amount to a constitutional violation, the officers are entitled to qualified immunity. It certainly was not clearly established that the use of force here violated Plaintiffs' constitutional rights under the case law of the Supreme Court or this Circuit. In support of their contention that the officers' actions violated their clearly established constitutional rights, Plaintiffs cite to the Second Circuit's decision in *Amnesty America,* a case involving allegations of the use of excessive force by police officers against abortion clinic protestors who were allegedly "purely passive" in resisting arrest. 361 F.3d at 123. The Court did find the allegations of excessive force in that case sufficient to defeat a motion for summary judgment. *See id.* at 124. However, the plaintiffs there had alleged that the police used "far more force than was necessary, and inflicted severe pain on the demonstrators" in effecting their arrest, *id.* at 118, including claims that they had thrown a protestor face-down on the ground, "ramm[ed] [a protestor's] head into a wall at high speed," and committed several other acts of violence, *id.* at 123. The allegations of violence in that case were both decidedly more serious than the use of a taser here and significantly less clearly directed at **\*596** the goal of effecting the arrest of the protestors. Another recent Second Circuit case involving claims of the use of excessive force against protestors, *Jones v. Parmley,* 465 F.3d 46 (2d Cir.2006), similarly involved allegations of force that was both significantly greater in degree and less tethered to the goal of effecting an arrest. *See id.* at 52–53. We have found no Second Circuit case clearly establishing that conduct of the type and gravity alleged in this case would violate the Plaintiffs' constitutional rights under the Fourth Amendment.

For these reasons, we hold that the use of force in this case was objectively reasonable, and that, as a result, Defendants did not violate Plaintiffs' Fourth Amendment rights. Moreover, we hold that Defendants are in any event entitled to qualified immunity here. We have considered Plaintiffs' other arguments on appeal and find that they are without merit or moot. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

**Parallel Citations**

2010 WL 4595545 (C.A.2 (N.Y.))

2011 WL 843974

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Robert LEMMO, Plaintiff,

v.

Police Officer Kelvin McKOY, Police Officer Bruce Tulloch, and New York City Police Department, Defendants.

No. 08–CV4264 (RJD). | March 8, 2011.

**Attorneys and Law Firms**

Robert Lemmo, Flushing, NY, pro se.

Shlomit Aroubas, New York, NY, for Defendants.

**Opinion**

**MEMORANDUM & ORDER**

DEARIE, Chief Judge.

**\*13 \*1** Pro se plaintiff Robert Lemmo brings this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated when certain officers subjected him to excessive force following his arrest for disorderly conduct on January 1, 2006. Liberally construed, the complaint raises two distinct section 1983 claims, one for false arrest and the other for excessive force. Before the Court is defendants' motion for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

**FACTUAL BACKGROUND** [1]

1       The Court writes here for the parties only, whose familiarity with the facts is assumed.

On New Year's Eve 2005, plaintiff and several of his friends went out to celebrate. Plaintiff admits that he had several drinks and was intoxicated. At some point after leaving the celebration, plaintiff was walking on the "L trestle" of the subway near Roosevelt Avenue and 99th Street in Queens when he was stopped by police. According to plaintiff's deposition, he was asked by the police to provide identification and not to smoke on the trestle and, when he refused, an officer slapped the cigarette out of his mouth and arrested him. Plaintiff was immediately handcuffed, and according to even his own account, there was no physical altercation at the time of arrest.

The police version differs somewhat. In his affidavit, arresting officer Bruce Tulloch states that at a checkpoint set up by members of the Queens North Task Force, at approximately 1:45 a.m., he observed plaintiff "using abusive language toward officers and other persons in the area" and that plaintiff "repeatedly disobeyed lawful orders to leave the checkpoint." Tulloch prepared the arrest paperwork and, in his report, stated that he observed plaintiff "cursing profusely at people causing them to leave to avoid [plaintiff]" and also observed plaintiff "obstruct pedestrian traffic." Plaintiff was charged with two counts of disorderly conduct.

Once at the precinct (the 110th), plaintiff was placed in a holding cell and eventually brought back out to be fingerprinted. Apparently he was not handcuffed at this point. Officer Tulloch, in his affidavit, states that he attempted to do the fingerprinting, but plaintiff "became irate and combative and refused to cooperate" and that "with the assistance of other officers," plaintiff was placed back in handcuffs and returned to a holding cell. Plaintiff's account of the same incident in his deposition differs in certain particulars but is not irreconcilable with Officer Tulloch's account. According to plaintiff, when he was brought out to be fingerprinted, he began to get upset because he had believed he would merely receive a ticket but instead realized he was "going through the system." Plaintiff admits that he resisted the effort to fingerprint him, that the "discussion became a little louder," that he asked to see a captain, and that the encounter "turned into a shouting match." He further claims that he was thrown on the floor and put in a headlock in order to be re-handcuffed.

**\*14  \*2** Only now does the story reach the point where plaintiff claims he was the victim of excessive force: according to plaintiff's deposition, once he was re-handcuffed, he was escorted by two officers back to a cell (referred to throughout his deposition as "a second cell") and while en route, one of the officers twisted his thumbs. Plaintiff claims that the shouting match had just ended and that, being handcuffed, he was not resisting the effort to escort him to the second cell. But plaintiff also admits that, immediately upon being placed in the second cell, he shouted at the officers, essentially taunting them by telling them not to open the cell again because he was angry and ready to assault them. According to plaintiff, instead of ignoring him, the officers opened and entered the cell, went behind him, grabbed his thumbs and "both cranked at [them] at the same time." Plaintiff further claims that he asked for medical attention and was spit on.

A topic of inquiry at plaintiff's deposition was whether he could identify which particular officers allegedly twisted his thumbs. Plaintiff stated that it was the same officers who arrested him on the street, and that he was sure that Officer Tulloch was one of them. As to the other defendant named in this action, Officer Kevin McKoy, plaintiff admitted that he "could never pinpoint Mc[K]oy." He was sure that "there was another white guy assisting Tulloch" but "whether his name is Mc[K]oy or not [he] couldn't" say.

Pressed further, plaintiff insisted that he remembered Tulloch: "I could point him out because it is four years ... Him I could remember." As for McKoy, plaintiff explained that his "name is involved because under my assumptions the one that was assisting Tulloch was Mc[K]oy." Plaintiff further testified that, "The one that was doing the prints and what do you call it, twisted the right thumb, because I know Tulloch grabbed the left ... that I know for a fact is the one that Tulloch twisted. He opened the cell, came behind me, grabbed it, and they both cranked it at the same time."

On the question of identity, Officer Tulloch, as noted, stated in his affidavit that it was he who attempted to fingerprint plaintiff, but his affidavit does not address the ensuing events other than by averring that "[a]t no point on January 1, 2006 did [Tulloch] use excessive force against plaintiff" or "witness excessive force being used."

Officer Kevin McKoy, by contrast, avers that that he was not present at the 110th precinct on January 1, 2006 and did not come into contact with plaintiff on that date. According to his affidavit and supporting documentation, McKoy was working in the Expedited Affidavit Program at the Queens Court Section, located on Queens Boulevard, and was on the

receiving end of the arrest paperwork prepared and faxed by Officer Tulloch.

Returning to the events on the night in question, plaintiff's and defendants' account of what occurred after the incident in the second cell are generally consistent. Emergency Medical Services were called to transport plaintiff to Elmhurst Hospital Center as an "emotionally disturbed person" or "EDP," to be assessed before arraignment. All the relevant Elmhurst paperwork is part of the record: on the admission form, the "reason for referral" section states that plaintiff was, according to the NYPD, "acting bizarre" and was to be evaluated as a possible "EDP." The initial evaluation report states, *inter alia,* that plaintiff "reported he was beaten up by NYPD" but also that upon initial approach by medical personnel, plaintiff was "uncooperative," "incoherent," and "irritable, with an angry affect." This same report also states, "unable to determine safety of patient at this time."

**\*15 \*3** Additional notes document that plaintiff complained of pain in the thumb of his left hand, and that it was tender. Not all of the medical records contain times, but it appears that plaintiff spent several hours at Elmhurst and was eventually "psychiatrically cleared to go to arraignment." It was recommended that he receive additional psychiatric care but not in an inpatient setting. Several additional pages in the packet of Elmhurst records contain "assessment" sections. One states that plaintiff "only complains of wrist and thumb pain;" another, noting that plaintiff was "presently calm, quiet and cooperative," reports "both thumbs swollen" and "[l]eft wrist swollen." A separate report also states that plaintiff was "now calm." "Minor scratches on both wrists" were also noted. In the "violence assessment" section of another report, plaintiff is reported as having "denie[d]" having a history of violence but also having "state[d] [that] he had fight with NYPD last night." When asked what makes him angry or upset, plaintiff replied "low life cops." Plaintiff also told medical evaluators that he had been drinking.

Following his discharge from Elmhurst, plaintiff was arraigned, after 11:00 p.m., and remanded into the custody of Department of Corrections. According to the record of DOC's medical screening, plaintiff's physical condition was "ok." According to defendants, plaintiff did not receive or request medical treatment while in DOC custody (at Riker's Island). In his deposition, however, plaintiff claims that he asked for treatment but was told there was nothing that could be done.

On January 6, 2006, plaintiff pled guilty to disorderly conduct and was sentenced to time served.

Plaintiff admits that he did not seek additional treatment and was not diagnosed with thumb damage. But he states nevertheless that the swelling in his thumb lasted for a week and a half after his arrest, that the pain in his thumbs lasted several weeks, and that during that time he could not button or zipper clothes, or hold a coffee cup or brush his teeth. He further claims that his thumb joints have never been the same; at the time of his deposition he was working in lumber, and stated that if he went to grab for something his thumb still did not flex in the right way.

### DISCUSSION

The parties' familiarity with the well-established summary judgment standards is assumed. *See generally* Fed.R.Civ.P. 56(c) (2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir.2009) (record to be construed in the light most favorable to the nonmoving party, all reasonable inferences must be drawn in his favor, and all ambiguities resolved his way).

### A. False Arrest

Plaintiff's § 1983 false arrest claim must be dismissed as a matter of law because he pled guilty to the charges stemming from the arrest he challenges and the conviction has not been invalidated. *See Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or called into question by issuance of writ of habeas corpus; unless conviction so invalidated, claim for damages not cognizable); *Cameron v. Fogarty,* 806 F.2d 380, 386–89 (2d Cir.1986) (false arrest plaintiff "can under no circumstances recover if he was convicted of the offense for which he was arrested"), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Simmons v. Kelly,* 2009 WL 857410, \*5 (S.D.N.Y. Mar. 31, 2009) ("a guilty plea that is not overturned on appeal provides conclusive evidence of probable cause and, accordingly, bars a section 1983 claim for false arrest or imprisonment stemming from the conviction at issue"). Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's false arrest claim.

### B. Excessive Force

**\*16  \*4** There are three standards for excessive force depending on when the alleged violation occurred. If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"); *Sloan v. Kraus,* 06 CV 5372, 2010 WL 3489397, \*10 (S.D.N.Y. Sept. 3, 2010). If the alleged violation occurs after arraignment but before conviction, then the Fourteenth Amendment applies. *Nimkoff v. Dollhausen,* 08 CV 2856, 2010 WL 4678711 (E.D.N.Y.2010). Allegations of excessive force occurring after conviction are subject to an Eighth Amendment analysis. *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Second Circuit has held that the Fourteenth and Eighth Amendment tests are essentially the same and apply to claims brought by pre-trial detainees and sentenced convicts. *United States v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999).

Defendants argue that plaintiffs excessive force claim is governed by the Fourteenth Amendment because the alleged misconduct occurred at the police precinct, but it is undisputed that plaintiff had not yet been arraigned, so his claim is governed by the Fourth Amendment. *Sloan,* 2010 WL 3489397 at \*10 ("Here, because plaintiff alleges excessive force by a police officer prior to his arraignment, a Fourth Amendment excessive force analysis applies," citing *Graham); Santiago v. City of New York,* 2000 WL 1532950, \*4 (S.D.N.Y. Oct. 17, 2000) (section 1983 plaintiff "was under arrest and in custody ... but had not been arraigned or convicted of any crime ... [as] neither a pre-trial detainee nor a prisoner, but an arrestee in custody," plaintiff "is protected from excessive force by the Fourth Amendment's prohibition on unreasonable seizures of the person," citing *Graham* ).

The Fourth Amendment standard is said to be one of "objective unreasonableness," *Graham,* 490 U.S. at 396; *Nimely v. City of New York,* 414 F.3d 381, 390 (2d Cir.2005). Because the application of such a generalized standard to the facts of particular cases can be challenging, it is useful to draw liberally upon then Chief Justice Rehnquist's description of the test in *Graham:*

> Determining whether the force used to effect a particular seizure

is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake ... Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it....Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

**\*17  \*5** *Id.,* 490 U.S. at 396 (internal quotations and citations omitted).

*Graham* further teaches that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The Court labels this a "standard of reasonableness at the moment," *id.,* and explains that just as "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises," the "same standard" applies "[w]ith respect to a claim of excessive force." *Id.* (internal citations omitted). Quoting earlier precedent, *Graham* reiterates that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," and that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.,* 490 U.S. at 396–97 (internal quotation marks omitted).

Finally, in addition to requiring that account be taken of the realities of police work, *Graham* underscores that the test is objective, not subjective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Stated bluntly, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

The Second Circuit applies the *Graham* test when assessing whether force is excessive under the Fourth Amendment for section 1983 purposes. *See Nimely v. City of New York,* 414 F.3d 381, 390 (2d Cir.2005). Borrowing from the "objective" component of the Eighth Amendment test for excessiveness and the Supreme Court's observation that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," the Second Circuit and district courts in the Circuit recognize the concept of "de minimis" injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed. *See e.g., Smith v. City of New York,* 2010 WL 3397683, *10 (2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity") (collecting cases). Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, *Richardson v. New York City Health and Hospitals Corp.,* 05 Civ. 6278, 2009 WL 804096, at *10 (S.D.N.Y.Mar.25, 2009), brief numbness from tight handcuffing, *Hamlett v. Town of Greenburgh,* 2007 WL 119291 (S.D.N.Y. Jan. 17, 2007), claims of minor discomfort from tight handcuffing, *Vogeler v. Colbath,* 04 CV 6071, 2005 WL 2482549 (S.D.N.Y.Oct.6, 2005), and two superficial scratches with a cut inside the mouth. *Warren v. Westchester County Jail,* 106 F.Supp.2d 559 (S.D.N.Y.2000) (an Eighth Amendment case).

**\*18   \*6** On the other hand, courts have allowed plaintiffs to recover, even though the injury caused was not permanent or severe, where the force used was excessive. *See, e.g., Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987). In *Robison,* the Circuit held that the plaintiff's testimony that an officer " 'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back,' and that "she suffered bruises lasting a 'couple weeks,' was "sufficient to prevent the summary dismissal of a § 1983 claim for excessive force." 821 F.2d at

923–24. The Court further explained that, "[w]hile Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim" because "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Id.* at 924. Although *Robison* pre-dates *Graham,* the Second Circuit continues to cite the decision as an instructive example. *See Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir.2004) ("we have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising," citing both *Graham* and *Robison* ). Indeed, in *Maxwell,* the district court had granted summary judgment for the defendants because "plaintiff's claim that she allegedly scraped her head when being shoved into the car is not sufficient for any reasonable jury to find excessive force claim in this case-minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer cannot be held unremittingly liable for every such incident." *Maxwell,* 380 F.3d at 109 (quoting lower court decision). The Second Circuit reversed, finding the claimed conduct and injury sufficiently jury-worthy. *Id.* at 109–10.

Following *Robison* and *Maxwell* is the decision of Judge Bianco in *Davenport v. County of Suffolk,* 99 CV 3088, 2007 WL 608125 (E.D.N.Y.Feb.23, 2007). While "recogniz[ing] that there may be certain circumstances where the alleged unconstitutional act and injury are so de minimis that it cannot rise to a constitutional violation as a matter of law," Judge Bianco nevertheless allowed the plaintiff to amend her complaint to add a claim for excessive force alleging that an officer banged his head against the top of the police car during the arrest. *Davenport,* 2007 WL 608125, *9–10. Judge Bianco explained that, "[a]lthough the focus of Davenport's proposed amendment pertains [only] to the alleged banging of his head on the police car during the arrest and he proffers no medical evidence of injury in connection with his motion to amend, the Court cannot find that such a claim is necessarily futile." *Id.* at *10. Integral to the reasoning in *Davenport* (and the reasoning of the numerous cases it collects) is the apparent gratuitousness of the police conduct at issue; as Judge Bianco explains, "In the instant case, Davenport may be able to demonstrate that the officer intentionally hit his head on the car during the arrest, causing an injury to his head, and he could argue that this alleged gratuitous use of force by an officer constituted an objectively unreasonable use of force." *Id.* In short, although the *Graham* test does

2013 WL 2418253

not consider the subjective intent of the officer(s) per se, *Davenport* and the line of authorities on which it relies recognize that intentional, gratuitous uses of force that are not required to subdue an individual likely fail the *Graham* objective unreasonableness test. *See, e.g., Pierre–Antoine v. City of New York,* No. 04–CV–6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (use of force against an already subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); *Graham v. Springer,* No. 03–CV–6190 (CJS), 2005 WL 775901, at *6 (W.D.N.Y.Apr.5, 2005) (summary judgment denied because plaintiff was kicked while on the ground in handcuffs).

**\*19  \*7** Judge Bianco thus concluded that, "[a]lthough Davenport has not alleged or proffered injuries as significant as those in *Maxwell* and referred to his injury as a bump on the head in oral argument, the Court cannot conclude as a matter of law that any claim of this type ... would necessarily be futile such that the Court should deny leave to amend. A jury may consider the lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against Davenport's testimony, but that does not mean that there are no circumstances under which Davenport can prevail." *Davenport,* 2007 WL 608125, \*11

Based on the reasoning and result in *Robison, Maxwell,* and *Davenport,* I likewise deny summary judgment on plaintiff's excessive force claim. To be sure, his injuries are not severe. But they are not, on this record, imagined. Nor are they materially less severe than those that have been held sufficient to survive summary judgment in *Maxwell* and *Robison.* What particularly gives me pause in this case is the fact that, if plaintiff's testimony were credited, the cranking of his thumbs by police officers was entirely gratuitous: granted, plaintiff had been uncooperative when Officer Tulloch attempted to fingerprint him, and by his own admission, hostilities had escalated. But plaintiff does not target as excessive the force that was used to subdue him at that point. What he complains of is what occurred when he was already re-handcuffed and re-secured in a holding cell. Granted, too, plaintiff appears to have taunted the officers by shouting that they should not let him out again because he was angry and might harm him, but the officers could have, and should have, simply ignored him. Despite plaintiffs verbal taunts, there is no indication that he posed a serious threat, handcuffed and inside his cell, to the officers outside. The cited authorities make it clear that it should be for a jury, rather than this Court, to decide whether it was objectively unreasonable under the circumstances (including the relative non-severity of the charges plaintiff

faced) for the police officers to re-open the cell and "crank" plaintiff's thumbs while they were handcuffed behind his back. *See Graham,* 490 U.S. at 396 (factor to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Additionally, the record contains only a general denial by the officers with respect to this episode rather than an actual conflicting account. The jury can and should decide what actually occurred and what, if any, compensation is due plaintiff. *See Murray v. Williams,* No. 05–CV–9438 (NRB), 2007 WL 430419, at \*7 (S.D.N.Y.Feb.7, 2007) (laceration to lower lip, a bloody nose, pain and suffering, and mental anguish held not to be de minimis); *Amato v. City of Saratoga Springs,* 170 F.3d 311, 317 (2d Cir.1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury"). Indeed, to this Court, it seems entirely appropriate that a jury, citizens of this city, should decide whether an officer or officers, sworn to protect and serve the community, failed to deliver on their professional vow.

## C. Qualified Immunity and the Proper Defendant(s)

### 1. Officer McKoy

**\*20  \*8** Plaintiff's papers offer nothing to refute Officer McKoy's averment that he was not present at the 110th precinct on the night of plaintiff's arrest and that he did not come into contact with plaintiff at that time. Accordingly, defendant McKoy is entitled to summary judgment on all claims against him. *Barratt v. Joie,* 2002 WL 335014, \*6 (S.D.N.Y.Mar.4, 2002) ("Because § 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal quotation and citation omitted).

### 2. Officer Tulloch

Defendant Tulloch asserts qualified immunity as a defense to plaintiff's claims. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, ––––, 129 S.Ct. 808, 815 (2009) (internal citation omitted). The

" 'driving force' behind creation of the [ ] doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* (internal citations omitted).

In Fourth Amendment excessive force cases, however, the qualified immunity and excessive force analyses "converge on one question: [w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful." *Cowan v. Breen,* 352 F.3d 756, 764 n. 7 (2d Cir.2003). *See also Scott v. Hen rich,* 39 F.3d 912, 914 (9th Cir.1994) ("In Fourth Amendment unreasonable force cases ... the qualified immunity inquiry is the same as the inquiry made on the merits").

Having determined that plaintiff's excessive force claim presents triable issues of fact, I necessarily and likewise conclude that defendant Tulloch is not entitled to summary judgment on his defense of qualified immunity.

## CONCLUSION

The motion for summary judgment is granted to the extent of (i) dismissing plaintiff's false arrest claim; (ii) dismissing all claims against Officer McKoy; and (iii) dismissing all claims against the NYPD. The motion for summary judgment is in all other respects denied. The case shall proceed to trial solely on the excessive force branch of plaintiff's § 1983 claim. The parties shall appear for a status conference on April 8 at 11:45 a.m. in Courtroom 10A.

SO ORDERED.

2013 WL 316618

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew GALUNAS, Plaintiff,

v.

Detective Robert REYNOLDS, Ulster County Police

Department; and Brian Robertson, Detective, Ulster County Police Department, Defendants.

No. 8:11–cv–14 (MAD/RFT). | Jan. 28, 2013.

Attorneys **and** Law Firms

Matthew Galunas, Dannemora, NY, pro se.

Shantz & Belkin, Derek L. Hayden, Esq., of Counsel, Latham, NY, for Defendant Reynolds.

Cook, Netter, Cloonan, Kurtz & Murphy, P.C., Erik M. Kurtz, Esq., of Counsel, Kingston, NY, for Defendant Robertson.

Opinion

MEMORANDUM–DECISION AND ORDER

MAE A. DAGOSTINO, District Judge.

## I. INTRODUCTION

**\*21  \*1** On January 6, 2011, Plaintiff commenced this civil rights action alleging that Defendants violated his constitutional rights. *See* Dkt. No. 1. Currently before the Court are Defendants' motions for summary judgment. *See* Dkt. Nos. 26, 28.

## II. BACKGROUND

In his complaint, Plaintiff alleges that, "[o]n February 26, 2008, [upon] exiting my home at 25 Park Drive, Woodstock, N.Y. 12491, various personnel from a multi-agency Task Force, composed of Ulster and Kingston County police officers, absent a warrant, effectuated my arrest based upon allegations of Criminal Sale of Controlled Substance(s)." *See* Dkt. No. 1 at 4. [1]  Plaintiff claims that, upon exiting his home, he complied with the officers commands to drop to the ground and to place his arms behind his back. Plaintiff alleges that, despite his compliance, Defendant Robertson, without an arrest warrant, placed him in handcuffs, "ramm[ed] his knee in [his] rib cage while [Defendant] Re[y]nolds smashed

[him] with his tazer gun." *See* Dkt. No. 35–4 at ¶ 4. After this alleged altercation, Plaintiff claims that, because of the pain he was suffering, he was unable to stand up. *See id.* at ¶ 5. When Plaintiff failed to stand, he claims that he was "dragged" across his yard and then "yanked ... up while handcuffed behind [his] back" by Defendant Reynolds, who then continued to assault him. *See id.* Plaintiff alleges that several officers observed this alleged assault and only eventually intervened for fear of who may be watching. *See* Dkt. No. 35 at ¶ 3.

[1]     To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

As a result of this alleged assault, Plaintiff asserts that he now suffers from "diffused discs L4–L5 L5–S1." *See id.* Moreover, although Plaintiff admits that he suffered from "minor bulging discs" prior to February 26, 2008, he claims that Defendants' use of excessive force caused his previous condition to worsen, leaving him with permanent disabilities. *See id.* Plaintiff further alleges that, after the incident, he "was unable to walk without being helped" and that the attack left the entire right side of his face bruised, including a laceration. *See id.* at ¶ 7. Plaintiff claims that, despite his compliance, he was "hit in the side of the head two times with the 'TazorGun' and one time with Det. Reynolds 'Service Revolver.' " " *See id.* Although Defendants do not dispute that some force was used while arresting Plaintiff, they contend that it was a reasonable amount of force in light of the fact that Plaintiff was not complying with their commands and because Plaintiff had evaded arrest the day before by fleeing from them. Defendants further contend that once Plaintiff was subdued and placed in handcuffs, they did not strike him or employ any additional force.

Shortly after his arrest, Plaintiff was evaluated by medical personnel at the Ulster County Jail. *See* Dkt. No. 28–5 at Exhibit "G." Plaintiff complained of lower back pain but the medical notes indicate that, upon exiting the vehicle, he was able to put equal weight on both legs, was ambulatory, and was not limping. *See id.* at 10. Moreover, the medical notes indicate that there were no bruises, swelling or redness present on Plaintiff's back, but that he had a "contusion" to the area above his right eye. *See id.* Moreover, the notes indicate that Plaintiff was alert and that he denied losing consciousness at any point. *See id.* Although Plaintiff claims that he had a "gaping wound" above his right eye, the notes indicate that it

was merely a "superficial scratch" with only slight swelling and bruising. *See id.*

**\*22 \*2** On February 28, 2008, Plaintiff was sent to Benedictine Hospital, where it was observed that he was ambulatory but still complaining of back pain. *See* Dkt. No. 28–5 at Exhibit "H." Plaintiff informed the medical staff that he "has a history of nonspecific low back pain" and that he did not lose consciousness during or after the event. *See id.* at 16. Upon review of the CAT scan, it was determined that Plaintiff "had disk herniation L4–L5 and L5–S1" and the "clinical impression" was that his lower back pain was "secondary to disk disease." *See id.* at 17; *see also id.* at 18–19 (providing the specific findings of the radiology consultation).

On January 6, 2011, Plaintiff commenced this civil rights action alleging that Defendants violated his Eighth Amendment rights. *See* Dkt. No. 1 at 6. Currently before the Court are Defendants' motions for summary judgment. *See* Dkt. Nos. 26, 28.

## III. DISCUSSION

### A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett,* 477 U .S. 317, 324 (1986) (quoting FedR.Civ.P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers,* 43 F.3d at 36 (citing *Anderson v. liberty lobby, Inc., All* U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the

movant's assertions. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (quoting *Haines v. Kerner,* 303 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). This does not mean, however, that *a pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond,* No. 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N .Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (quoting *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## B. Relief under 42 U.S.C. § 1983

**\*23 \*3** Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

## C. Personal involvement

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted). "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation and citations omitted). " '[W]hen monetary damages are sought under § 1983, the [ ] doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.' " *Id.* (quotation omitted). There is a sufficient showing of personal involvement of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

## D. Excessive force [2]

[2] Although Plaintiff claims that Defendants violated his Eighth Amendment rights, because the complained of conduct occurred while Defendants were effecting Plaintiff's arrest, it is clear that his claim is properly brought under the Fourth Amendment. *See Bonilla v. Jaronczyk,* 354 Fed. Appx. 579, 581 (2d Cir.2009) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865,

104 L.Ed.2d 443 (1989)). As such, in light of Plaintiff's *pro se* status, the Court will treat Plaintiff's excessive force claim as arising under the Fourth Amendment and deny Defendant Reynolds' suggestion that the Court should dismiss Plaintiff's complaint because of this mistake. *See* Dkt. No. 28–7 at 3.

**\*24 \*4** Claims that a law enforcement officer used excessive force in the course of making an arrest are "analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor,* 490 U.S. 386, 388 (1989); *Scott v. Harris,* 550 U.S. 372, 381 (holding that "a claim of 'excessive force in the course of making [a] ... "seizure" of [the] person ... [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard' " (quotation omitted)); *Terranova v. New York,* 676 F.3d 305, 308 (2d Cir.2012) (quotations and other citation omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010). "[T]he right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396. Proper application of the Fourth Amendment's "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396; *see also Terranova,* 676 F.3d at 308; *Tracy,* 623 F.3d at 96.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U .S. at 396; *see also Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy,* 623 F.3d at 96. However, allegations that an "officer twisted [the plaintiff's] arm, 'yanked' her, and threw her up against a car, causing only bruising" have been held to be sufficient to survive summary judgment. *Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir.2004)

(citing *Robison v. Via,* 821 F.2d 913, 924–25 (2d Cir.1987)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97; *see also Tracy,* 623 F.3d at 96; *Jones,* 465 F.3d at 61 (citation omitted). "As in other Fourth Amendment contexts, ... the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397; *see also Jones,* 465 F.3d at 61. "Giventhe fact-specific nature of the [objective reasonableness] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004) (citation omitted).

**\*25 \*5** In the present matter, although questions of fact preclude the Court from granting Defendant Reynolds' motion for summary judgment on this ground, the undisputed evidence shows that Defendant Robertson was not present during the alleged attack and, therefore, that he was not personally involved. Specifically, Defendant Robertson contends that while several members of the task force traveled to Plaintiff's home, he proceeded to the Town of Hurley Justice Court to obtain a warrant for Plaintiff's arrest. *See* Dkt. No. 26–5 at ¶ 7. After Defendant Robertson obtained the arrest warrant, he radioed to the officers at the scene to advise them that the arrest warrant had been issued. *See id.* at ¶¶ 8–9. Due to heavy snowfall on February 26, 2008, it took Defendant Robertson approximately ten (10) minutes to travel to Plaintiff's residence. *See id.* at ¶ 10. By the time Defendant Robertson arrived at the scene, Plaintiff had already been placed in handcuffs and was being escorted across the front lawn by Defendant Reynolds. *See id.* at ¶ 11. According to Defendant Robertson's affidavit, the only contact he had with Plaintiff was to hold "on to one of [his] arms to keep him standing upright and position him next to the vehicle as officers at the scene awaited a patrol vehicle to pick [him] up and transport him for processing." *See id.* at ¶ 11.

Defendant Robertson's account of the events at issue is corroborated by Defendant Reynolds and Eric Paulding, a detective for the City of Kingston Police Department, who is not a party to this action. *See* Dkt. No. 28–6 at ¶ 11; Dkt. No.

26–6 at ¶¶ 5–6. Specifically, Detective Paulding states that he was on the scene during the arrest and provided "cover" to Defendant Reynolds during the arrest process. *See* Dkt. No. 26–6 at ¶ 4. Detective Paulding further states that Defendant Robertson was not at the scene while Plaintiff was being arrested. *See id.* at ¶ 5. Defendant Reynolds also confirms that Defendant Robertson was not present during the arrest because he was en route from having obtained the arrest warrant. *See* Dkt. No. 28–6 at ¶ 11.

Although Plaintiff contends that Defendant Robertson was there and participated in the alleged use of force, the uncontroverted evidence establishes that he was not. Although Defendant Robertson does admit that he assisted in escorting Plaintiff across the yard by holding his arm, no reasonable trier of fact could find that such contact amounted to an unreasonable use of force. Finally, a review of Plaintiff's affidavit in opposition to Defendant Robertson's motion for summary judgment makes clear that the only specific factual allegations concerning excessive force involve Defendant Reynolds, not Defendant Robertson. *See* Dkt. No. 35–7.[3]

[3]    As is discussed in more detail below with regard to Defendant Reynolds' motion for summary judgment, although the Court should not usually engage in credibility determinations when deciding a motion for summary judgment, since Plaintiff's evidence against Defendant Robertson is comprised of almost exclusively his own allegations, which are controverted by other evidence in the record, including the testimony of a non-party, the Court may appropriately judge the credibility of Plaintiff's account in determining whether a jury could reasonably find for Plaintiff. *See Jeffreys v. City of New York,* 426 F.3d 549, 555 (2d Cir.2005).

Based on the foregoing, the Court grants Defendant Robertson's motion for summary judgment.

As to Defendant Reynolds, however, issues of fact exist which preclude the Court from granting his motion. Although Defendant Reynolds is correct that Plaintiff had a preexisting back condition, in an excessive force case, a plaintiff may recover damages for the aggravation of a preexisting injury caused by the use of excessive force. *See Ramos v. Samaniego,* No. 07–CV320, 2008 WL 3539252, *6 n. 8 (W.D.Tex. July 24, 2008) (citing *Dunn v. Denk,* 79 F.3d 401, 403 (5th Cir.1996)). Although Defendant Reynolds is correct that Plaintiff has contradicted himself on several occasions

regarding the severity of his injuries, Plaintiff's inconsistent statements are more appropriately addressed by a jury since they concern Plaintiff's credibility.

**\*26 \*6** Defendant Reynolds argues that the Court should grant his motion because "no reasonable person would undertake the suspension of disbelief necessary to give credit to the plaintiffs allegations[ .]" *See* Dkt. No. 28–7 at 6 (citing *Jeffreys v. City of New York,* 426 F.3d 549, 555 (2d Cir.2005)). Specifically, Defendant Reynolds argues that the Court should apply the exception set forth in *Jeffreys,* which allows the Court to make a credibility determination that would normally be made by the jury because of contradictions that Plaintiff has made and the lack of corroborating evidence. *See id.* at 6–7.

Although Plaintiff has contradicted himself on several occasions regarding the severity of the attack and his injuries, Plaintiff's versions of the events underlying this action are far less contradictory than those at issue in *Jeffreys* and in the cases cited by Defendant Reynolds. In *Jeffreys,* the plaintiff alleged in his complaint that police officers beat him and threw him out a window. *See Jeffreys,* 426 F.3d at 551. Before filing the complaint, he confessed on at least three occasions that he had jumped out of the window rather than having been thrown. *See id.* at 552. Further, the plaintiff first alleged that police officers threw him out of the window approximately nine months after the incident. *See id.* The plaintiff could not identify any of the individuals whom he alleged participated in the attack or describe their ethnicities, physical features, facial hair, weight, or clothing on the night in question. *See id.*

Affirming the district court's decision granting the defendants' motion for summary judgment, the Second Circuit held that "[w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Id.* at 554 (internal quotation marks and citation omitted).

In the present matter, the Court is not persuaded that the exception set forth in *Jeffreys* should be applied as to Defendant Reynolds. Unlike the situation in *Jeffreys,* Plaintiff has consistently maintained that Defendant Reynolds used excessive force while effecting his arrest. Moreover,

Defendant Reynolds admits that force was used while placing Plaintiff in handcuffs because he was uncooperative; Defendant Reynolds simply maintains that the force used was not excessive and was reasonable in light of the circumstances. Further, it is uncontested that Plaintiff suffered a laceration during the arrest; the severity of which is dependent entirely on whose testimony you credit. Moreover, Plaintiff contends that even after he was placed in handcuffs, he was subjected to further assault, including being "yanked" up while his hands were handcuffed behind his back, which caused him to feel as though his "arms were going to be ripped out of the sockets[.]" Also, while Detective Paulding do contend that Plaintiff was noncompliant during the arrest, he does not state his opinion as to whether the force Defendant Reynolds' used was reasonable and necessary. *See* Dkt. No. 26–6.

**\*27  \*7** Finally, Plaintiff was seen by medical personnel immediately upon arrival at the prison and was taken to Benedictine Hospital two days after his arrest. Although the medical records do make clear that Plaintiff has suffered from chronic back issues since at least 2004, it is unclear whether the L4–L5 and L5–S1 disk herniations he was diagnosed with immediately following his arrest are the result of force used during the arrest, if the condition was exacerbated by any force that was used, or if the condition was entirely preexisting and not impacted in any way by the force that was employed. *See* Dkt. No. 28–5 at Exhibit "H." Whether Defendant Reynolds used reasonable force in subduing Plaintiff and the extent of Plaintiff's injuries, if any, all require credibility determinations that must be resolved by the jury. *See Dallio v. Santamore,* No. 9:06–CV–1154, 2010 WL 125774, \*9 (N.D.N.Y. Jan. 7, 2010) (holding that because the court should not weigh the evidence or make credibility determinations, summary judgment would be denied where the plaintiff alleged that he was repeatedly kicked and punched after he was subdued and restrained by the defendants, notwithstanding the relatively minor injuries that the plaintiff suffered and the substantial contrary evidence proffered by the defendants); *Cicio v. Lamora,* No. 9:08–CV–431, 2010 WL 1063875, \*7–8 (N.D.N.Y. Feb. 24, 2010) (denying summary judgment on the plaintiffs claim that the defendant hit him several times after he was subdued and helpless, despite "seemingly overwhelming" contradictory evidence, including the fact that the plaintiff suffered only a minor bruise).

Based on the foregoing, the Court finds that questions of fact exist which preclude the Court from granting Defendant Reynolds' motion for summary judgment.

### E. Qualified immunity

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of preexisting law the unlawfulness must be apparent.* "

*Mollica v. Volker,* 229 F.3d 366, 370–71 (2d Cir.2000) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officers ... was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if ... it was objectively reasonable for them to believe their acts did not violate those rights.' " *Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir.2007) (quotation and other citation omitted).

**\*28  \*8** "Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York,* 612, F.3d 149, 165 (2d Cir.2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness.... That is,' [e]ven if the right at issue was clearly established in certain respects ... an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.' *"Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner,* 494 F.3d at 367 (citing *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir.2004)) (other citations omitted). "The ultimate question of whether it was objectively

reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.,* whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case." " *'Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman,* 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Step hens on v. Doe,* 332 F.3d 68, 81 (2d Cir.2003) (quotation omitted); *see also Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995) (quotation omitted).

In the present matter, Defendant Reynolds contends that, on February 25, 2008, Plaintiff evaded arrest by fleeing from police, "driving in the wrong lane at 100 mph, forcing at least one motorist off the road and narrowly missing several police vehicles." *See* Dkt. No. 28–2 at ¶ 1. When Defendant Reynolds attempted to arrest Plaintiff on the following day, he claims that Plaintiff "ignored at least five shouted orders to put his hands up and to get down on the ground." *See id.* at ¶ 4. At this point, Defendant Reynolds contends that he pushed Plaintiff to the ground from behind. *See id.* at ¶ 5. Defendant Reynolds claims that Plaintiff only sustained a "small scrape near his right eye during his arrest[,]" and that there was no bruising, swelling or redness on Plaintiff's back. *See id.* at ¶¶ 6, 17. Further, Defendant Reynolds claims that he "never put [his] knee into [Plaintiff's] back or jumped onto his back during his arrest or while he was in custody." *See* Dkt. No. 28–6 at ¶ 12. Finally, Defendant Reynolds asserts that did not strike Plaintiff with either a Tazer gun or revolver during the incident in question. *See id.* at ¶ 14.

**\*29 \*9** Plaintiff, on the other hand, has repeatedly asserted that he obeyed all commands while Defendant Reynolds was attempting to place him under arrest. *See* Dkt. No. 35–3 at ¶ 9. Despite his compliance, Plaintiff claims that Defendant Reynolds "brutally attacked" him until fellow officers ordered him to stop. *See id.* Further, Plaintiff claims that Defendant Reynolds then dragged him across the yard, told him that "he oughta put a bullet in [his] ... head and do everybody a

favor," and then struck him in the head with a weapon. *See id.* Plaintiff claims that he was never charged with resisting arrest as proof that he complied with Defendant Reynolds' orders. *See id.* at ¶ 12. Although Plaintiff's version of events may have slightly varied throughout the course of this litigation, unlike the situation in *Jeffreys,* he has consistently alleged that he was subjected to these incidents without provocation, including leading up to and during his criminal trial.

In light of the drastically different account of what occurred on February 26, 2008, the Court finds that questions of fact exist which preclude granting Defendant Reynolds' motion at this time. For the Court to find that Defendant Reynolds is entitled to qualified immunity, it would have to engage in improper credibility determinations, which it is unwilling to do. Taking Plaintiffs version of events as true, only a *de minimis* amount of force would have been required to effect his arrest, yet Defendant Reynolds is alleged to have applied considerably more force in both effecting the arrest and after Plaintiff was placed in handcuffs. These questions of fact are material to the reasonableness of the force used and the question of qualified immunity and, therefore, must be decided by a jury. *See Breen v. Garrison,* 169 F.3d 152. 153 (2d Cir.1999) (reversing grant of qualified immunity on excessive force claim where facts were disputed as to allegations that the defendant officer jumped on the plaintiff's back, yanked his head and neck, pushed his face into a table, intentionally tightened his handcuffs, and hit him); *Calamia v. City of New York,* 879 F.2d 1025, 1035 (2d Cir.1989) (holding that qualified immunity on excessive force claim was a question for the jury, where the defendant officer shoved the plaintiff to floor, the handcuffs were unduly tight, and the plaintiff was left in an uncomfortable position for several hours); *Robison v. Via,* 821 F.2d 913, 923–24 (2d Cir.1987) (holding that summary judgment was inappropriate where the parties disputed material facts regarding the plaintiff's allegations that she was pushed against a car, yanked out, thrown against the fender, and had her arm twisted behind her back). [4]

[4]     In his reply to Plaintiff's opposition to the motion for summary judgment, Defendant Reynolds argues that the Court should deem as admitted all statements in his statement of material facts because of Plaintiff's failure to comply with the requirements of Local Rule 7.1(a)(3). *See* Dkt. No. 39 at 3. Although Defendant Reynolds is correct that Plaintiff failed to strictly comply with Local Rule 7.1's requirements and that the Court may deem as admitted all of the statements in Defendant

Reynolds' statement of material facts that have not been specifically controverted, the Court declines to do so. In his response to Defendant Reynolds' motion for summary judgment, Plaintiff makes specific reference to documents in evidence, including the medical records and his deposition transcript. While the Court is not required to ignore violations of Local Rule 7.1 simply because Plaintiff is proceeding *pro se,* the Court will not turn a blind eye to evidence in the record that creates material issues of fact.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Reynolds' motion for summary judgment is **DENIED;** and the Court further

 **\*30  \*10 ORDERS** that Defendant Robertson's motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2418253

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4380921
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Clarence L. ARTIS, Jr., Plaintiff,

v.

Adam M. VALLS, Broome Cnty. Jail; C.O. Patricia
Kleinsmith; C.O. Conners; Lt. Hill; Jeffrey Katen, a/
k/a Biggs; William Brown, a/k/a John Doe; Mark W.
Smolinsky; Sheriff Harder; Joseph Jellick, Broome Cnty.
Jail; and Lt. John Doe, Broome Cnty. Jail, Defendants.

No. 9:10–CV–0427 (GTS/TWD).
|
Sept. 25, 2012.

**Attorneys and Law Firms**

Clarence L. Artis, Jr., Ossining, NY, pro se.

Hon. Robert G. Behnke, Broome County Attorney, Aaron
J. Marcus, Esq., Robert B. Behnke, Esq., Assistant County
Attorneys, of Counsel, Binghamton, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* prisoner civil
rights action filed by Clarence L. Artis, Jr. ("Plaintiff") against
the ten above-captioned county correctional employees
("Defendants"), are the following: (1) Defendants' motion
for summary judgment seeking dismissal of all of
Plaintiff's claims; (2) United States Magistrate Judge Therese
W. Dancks' Report–Recommendation recommending that
Defendants' motion be granted in part and denied in part,
such that all of Plaintiff's claims are dismissed, except
for his excessive-force claims against Defendants Valls
and Jellick regarding the incident of March 15, 2010; (3)
Plaintiff's objection to the Report–Recommendation; and (4)
Defendants' objection the Report–Recommendation. (Dkt.
Nos.46, 49, 54, 55, 56.) For the reasons set forth below,
the Report–Recommendation is accepted and adopted in its
entirety; Defendant's motion is granted in part and denied in
part; and all of Plaintiff's claims are dismissed, except for his
excessive-force claims against Defendants Valls and Jellick
pertaining to the incident of March 15, 2010.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**

Plaintiff filed his Complaint in this action on April 12,
2010. (Dkt. No. 1.) Construed with the utmost of liberality,
Plaintiff's Complaint alleges that he was subjected to
excessive force and falsely charged with assault at the Broome
County Correctional Facility ("BCCF") in four separate
incidents occurring during the period of June 2008 to March
2010. (*See generally id.*)

More specifically, Plaintiff asserts the following five claims:
(1) a claim that, on June 6, 2008, six correctional officers,
including Defendants Hill and Katen, subjected him to
excessive force in violation of the Eighth or Fourteenth
Amendments;[1] (2) a claim that, on April 29, 2009,
Defendants Kleinsmith and Jellick falsely accused Plaintiff
of inciting an assault on another inmate at BCCF, and
Defendants Harder and Smolinsky falsely accused him of
assaulting a known gang member and "supported and co-
signed" the indictment against Plaintiff, subjecting him to
malicious prosecution, false arrest, and/or a false misbehavior
report, in violation of the Fourth Amendment and either
the Fifth or Fourteenth Amendments (and possibly the First
Amendment); (3) a claim that, as a result of the false
accusations by Defendants Kleinsmith and Jellick arising
from the incident of April 29, 2009, Defendant Brown
wrongly found Plaintiff guilty of assault and sanctioned
him to 45 days in the SHU, in violation of either the Fifth or
Fourteenth Amendment; (4) a claim that, on July 24, 2009,
after Defendants failed to protect Plaintiff from an attack by
inmate Jacob Rogers, Defendants wrongfully found Plaintiff
guilty of fighting in violation of the Eighth Amendment and
either the Fifth or Fourteenth Amendments; and (5) a claim
that, on March 15, 2010, Plaintiff was subjected to excessive
force by Defendants Valls and Jellick in violation of the
Eighth or Fourteenth Amendments. (*Id.*)

1
 A Court analyzing a claim of excessive force
under 42 U.S.C. § 1983 ("Section 1983") must
first determine the "specific constitutional right
allegedly infringed by the challenged application
of force." *Graham v. O'Connor,* 490 U.S. 386,
393–94 (1989), *accord, Wright v. Goord,* 554 F.3d
255, 268 (2d Cir.2009). There are three standards
that might apply, "depending on when the alleged
[excessive force] occurred." *Lemmo v. McKoy,*

08–CV–4264, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011). First, if the alleged force was used before arraignment, then Fourth Amendment standards apply. *Graham,* 490 U.S. at 394, *accord, Lemmo,* 2011 WL 843974, at *4; *see also Tribie v. Parwanta,* 10–CV–6016, 2012 WL 246619, at *7 (E.D.N.Y. Jan. 26, 2012); *Sloan v. Kraus,* 06–CV–5372, 2010 WL 3489397, at *10 (S.D.N.Y. Sept. 3, 2010). Second, if the alleged excessive force occurs post-arraignment, but before conviction, then Fourteenth Amendment standards apply. Third, if the alleged excessive force occurs after conviction, then Eighth Amendment standards apply. *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977); *see also Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009); *Lemmo,* 2011 WL 843974, at *4. Here, it is not clear from the record whether Plaintiff's allegations of excessive force occurred before arraignment, after arraignment but before conviction, or after conviction. (*See generally* Docket Sheet.) However, because Plaintiff does not dispute Defendants' argument that "portion[s] of the plaintiff's claims arose while he was a pretrial detainee" (Dkt. No. 46, Attach. 39 at 10), and Magistrate Judge Dancks' assumption that they arise after he was convicted (Dkt. No. 54, at n. 12), the Court construes Plaintiff's excessive force claims as arising under either the Fourteenth or Eighth Amendments. The Second Circuit has held that the legal standard for an excessive-force claim is the same under either the Fourteenth or Eighth Amendments. *U.S. v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999).

**\*2** In addition, Plaintiff's Complaint alleges that his visitation rights were restricted on two, separate, unidentified occasions in violation of the First Amendment, and that Defendants defamed Plaintiff by wrongfully accused him of being a rapist. (*Id.*)

For a more detailed recitation of Plaintiff's claims and supporting factual allegations, the Court refers the reader to the Complaint in its entirety, as well as Magistrate Judge Dancks' Report–Recommendation, which accurately summarize those allegations. (*Id.; see also* Dkt. No. 146 at Part I [Background].)

**B. Defendants' Motion for Summary Judgment**

On April 1, 2011, Defendants filed a motion for summary judgment. (Dkt. No. 46.) Generally, in support of their motion, Defendants assert the following eight arguments.[2] (*See generally* Dkt. No. 46.) First, based on the four corners of the Complaint, Plaintiff's claims against Defendants Harder and Smolinksy should be dismissed due to their lack of personal involvement in the constitutional violations alleged. Second, based on the record evidence, Plaintiff's claims do not rise to the level of constitutional violations. Third, based on the record evidence, Defendants are protected from liability as a matter of law by the doctrine of qualified immunity. Fourth, based on the record evidence, Plaintiff has failed to exhaust administrative remedies. Fifth, based on the record evidence, Plaintiff's claims against Defendants Jellick and Kleinsmith should be dismissed from the action because those Defendants had probable cause to prosecute Plaintiff. Sixth, based on the four corners of his Complaint, and in the alternative based on the record evidence, Plaintiff has failed to state or establish a claim for defamation. Seventh, based on the four corners of his Complaint, Plaintiff has failed to state any claims against Defendants Connors and Brown. Eighth, based on the four corners of his Complaint, Plaintiff is not entitled to punitive damages against the Broome County or the individual Defendants in their official capacities. (*Id.*)

[2]      Although Defendants identify their motion as one for summary judgment, some of Defendants' arguments reflect a motion to dismiss for failure to state a claim. For this reason, the Court has specified whether Defendants' arguments rely on record evidence or merely the four corners of Plaintiff's Complaint.

**C. Magistrate Judge Dancks' Report–Recommendation**

On July 31, 2012, Magistrate Judge Dancks issued a Report–Recommendation recommending that Defendants' motion for summary judgment be granted in part and denied in part. (Dkt. No. 54.) More specifically, regarding the incident of June 6, 2008, Magistrate Judge Dancks concluded that Plaintiff failed to exhaust his administrative remedies. (*Id.* at 11–14.) Regarding the incident of April 29, 2009, Magistrate Judge Dancks concluded that, although Plaintiff properly exhausted his administrative remedies, Defendants were entitled to summary judgment on all five of Plaintiff's claims arising out of the incident of April 29, 2009:(1) his claim of malicious prosecution against Defendant Kleinsmith (*id.* at 16–19); (2) his claim of false arrest against Defendant Kleinsmith (*id.*); (3) his claim of malicious prosecution against Defendants

Harder and Smolinsky (*id.* at 19–21); (4) his claim of false arrest against Defendants Harder and Smolinsky (*id.*); and (5) his claim that Defendant Jellick issued him a false misbehavior report (*id.* at 21–23). Regarding the incident of July 24, 2009, Magistrate Judge Dancks concluded that Plaintiff failed to exhaust his administrative remedies. (*Id.* at 23–24.) Regarding the incident of March 15, 2010, Magistrate Judge Dancks concluded that (1) Plaintiff's failure to exhaust his administrative remedies was justified by special circumstances (*id.* at 24–26), and (2) the record evidence demonstrates that there is a genuine dispute of material fact as to whether Defendants Valls and Jellick applied force maliciously and sadistically against Plaintiff to cause him harm (*id.* at 26–29.) Regarding Plaintiff's claim that Defendants violated his First Amendment by restricting his visitation rights, Magistrate Judge Dancks concluded that Plaintiff failed to exhaust his administrative remedies. (*Id.* at 29.) Regarding Plaintiff's claim against Defendants for defamation, Magistrate Judge Dancks concluded that Plaintiff's Complaint failed to state a claim because it contained only a cursory allegation of defamation. (*Id.* at 29–30.) Finally, Magistrate Judge Dancks recommended that Plaintiff's claims against Defendants Conners and Brown be dismissed from this action because Plaintiff's Complaint failed to allege facts plausibly suggesting that either of those two Defendants were personally involved in any of the constitutional violations alleged. (*Id.* at 30–31.)

### D. Plaintiff's Objection to the Report–Recommendation

**\*3** On August 8, 2012, Plaintiff filed an objection to the Report–Recommendation. (Dkt. No. 55.) Liberally construed, Plaintiff's objection asserts the following two arguments: (1) Magistrate Judge Dancks erred by recommending the dismissal of his claims against Defendant Brown for lack of personal involvement, because Brown presided over the hearing in which he wrongfully determined Plaintiff was guilty of the assault charges arising from the incident of April 29, 2009 (*id.* at 1–2); and (2) Magistrate Judge Dancks erred by recommending that Plaintiff's claims arising from the incident of April 29, 2009, should be dismissed for failure to exhaust his administrative remedies, because he wrote "numerous letters [and] grievances of all sort[s]," which "just disappear[ed] as if nothing ever happened." (*id.* at 3.)

### E. Defendants' Objection to the Report–Recommendation

On August 17, 2012, Defendants filed an objection to the Report–Recommendation. (Dkt. No. 56.) Generally, in support of their objection, Defendants argue that Magistrate Judge Dancks erred in concluding that Plaintiff's failure to exhaust his administrative remedies regarding the incident of March 15, 2010, was justified by special circumstances. (*Id.* at 2–5.) Defendants also argue that the Court should apply the rule arising from *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir.2005), which, according Defendants, instructs that, where the record evidence " '[is] so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." (*Id.* at 5–7 [quoting *Jeffreys*, 426 F.3d at 555].) More specifically, regarding the incident of March 15, 2010, Defendants argue that no reasonable factfinder could conclude that Defendants Valls and Jellick used force in an effort to maliciously and sadistically cause Plaintiff harm, because the incident reports arising from that incident establish that "the transport officers" used " 'empty hands only' physical force against the plaintiff in order to control [him] ...." (*Id.* at 6.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review Governing a Report–Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [3] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [4]

3    See also *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was

error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

4    *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

**\*4** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[5] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[6] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the

face of the record in order to accept the recommendation." *Id.*[7]

5    *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

6    *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

7    *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

## B. Standard of Review Governing a Motion for Summary Judgment

Magistrate Judge Dancks correctly recited the legal standard governing a motion for summary judgment. (Dkt. No. 54, at Part II.A .) As a result, that standard is incorporated by reference in this Decision and Order, which is intended primarily for the review of the parties.

**C. Standard of Review Governing a Motion to Dismiss**

Magistrate Judge Dancks correctly recited the legal standard governing a motion to dismiss dismissal pursuant to 28 U.S.C. § 1915(g). (Dkt. No. 54, at Part II.B.) As a result, that standard is incorporated by reference in this Decision and Order, which is intended primarily for the review of the parties.

**III. ANALYSIS**

As explained above in Parts I.D. and I.E. of this Decision and Order, the parties specifically challenge only the following four portions of Magistrate Judge Dancks' Report–Recommendation: (1) her finding that Plaintiff's claims against Defendant Brown should be dismissed for lack of personal involvement; (2) her finding that Plaintiff's claims regarding the incident of July 24, 2009 should be dismissed for failure to exhaust to administrative remedies; (3) her finding that Plaintiff did exhaust his administrative remedies regarding the incident of March 15, 2010; and (4) her finding that admissible record evidence exists from which a rational factfinder could conclude that Defendants Valls and Jellick used force in an effort to maliciously and sadistically cause Plaintiff harm.

After carefully reviewing the relevant filings in this action, the Court can find no error whatsoever in these four portions of Report–Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 54.) With regard to the remaining portions of the Report–Recommendation, not specifically challenged by the parties, Court can find no clear error in those portions. (Id.) As a result, Magistrate Judge Dancks' Report–Recommendation recommending dismissal of all of Plaintiff's claims, except his excessive-force claims against Defendants Valls and Jellick pertaining to the incident of March 15, 2010, is accepted and adopted in its entirety for the reasons stated therein. (Id.)

**\*5** The Court would add only the following four brief points. First, the Court finds that those portions of Magistrate Judge Dancks' Report–Recommendation that Defendants did not specifically challenge would survive even a de novo review.

Second, in addition to agreeing with the Report–Recommendation's conclusion that all of Plaintiff's five claims arising from the incident of April 29, 2010, should be dismissed due to the absence of admissible record evidence creating a genuine dispute of material fact regarding those claims (Dkt. No. 54 at 16–23), the Court finds that those claims are properly dismissed on the alternative ground that Plaintiff failed to exhaust his administrative remedies with regard to them.

The administrative remedy procedure that Plaintiff used in writing Defendant Smolinsky (referred in the Report–Recommendation as the "Disciplinary Appeals Process") is available for prisoners who "are not satisfied with the actions of the disciplinary officer ....." (Dkt. No. 46, Attach.7.) In other words, following a disciplinary hearing, a prisoner is permitted to appeal to the facility administrator (through the Disciplinary Appeals Process) if he is not satisfied with the outcome of that hearing. (Id.) This particular appeal mechanism is distinct from the prisoner grievance procedure, which is available to prisoners who "feel [they] have a legitimate grievance against the facility." (Dkt. No. 46, Attach. 21 at 1.)

Here, Plaintiff's claims arising out of the incident of April 29, 2010, are that Defendant Kleinsmith is liable for malicious prosecution and false arrest, Defendants Harder and Smolinsky are liable for malicious prosecution and false arrest, and Defendant Jellick is liable for issuing an alleged false misbehavior report. (See generally Dkt. No. 1 at 6–7; see also Dkt. No. 54, at 4–7, 16–23.) Based on the current record, no rational factfinder could conclude that Plaintiff exhausted his administrative remedies through the Disciplinary Appeals Process for the following two reasons: (1) Plaintiff failed to show that he reasonably believed that the disciplinary hearing (and appeal therefrom) was his only available avenue through which he could lodge these grievances; and (2) he has failed to show that he articulated and pursued these grievances in the disciplinary hearing (and appeal) in a manner that afforded corrections officials the time and opportunity to thoroughly investigate those grievances. With regard to this last finding, it is important to note that a disciplinary appeal focuses on the actions of the disciplinary officer, not the actions of the individuals against whom a grievant has claims of false arrest and malicious prosecution. Rather, to be properly exhausted, the claims in question should have been, but were not, asserted and appealed through the prisoner grievance procedure.

Third, regarding the Report–Recommendation's finding that Plaintiff's failure to exhaust his administrative remedies regarding the incident on March 15, 2010, the Court would only add that the record evidence creates a genuine dispute of material fact as to whether Defendants would have accepted a grievance from Plaintiff had he sent one after

he was transferred to Elmira Correctional Facility. If the record evidence clearly established that Defendants would have accepted and processed Plaintiff's grievance (rather than, for example, reject it as moot because he was no longer an inmate at BCCF), this would reveal that the administrative remedies at BCCF remained available to Plaintiff even after he was transferred to Elmira Correctional Facility. [8] However, although Defendants *argue* that Plaintiff should have sent a grievance to Defendants Smolinsky or Harder "probably ... [by] sending the grievance by mail" from Elmira Correctional Facility, there is nothing in the record that clearly *demonstrates* that, had Plaintiff done what Defendants suggest, the grievance would have been accepted and processed. (Dkt. No. 46, Attach. 39 at 16–19; Dkt. No. 56 at 3–4.) This factual dispute persuades the Court that, based on the current record, a genuine dispute of material fact exists as to whether "special circumstances" exist justifying Plaintiff's failure to exhaust his administrative remedies through BCCF. [9]

[8]   This is true, in part, because the record evidence also demonstrates that Plaintiff was aware of the administrative procedures available to him at BCCF. In addition, the fact that Elmira Correctional Facility "said [to Plaintiff that] they had nothing to do with Broome County" does not suggest that *BCCF* would not have accepted and processed a grievance from Plaintiff for an incident arising while Plaintiff was a prisoner at BCCF.

[9]   As a result, this issue appears more appropriate for resolution at a pre-trial exhaustion hearing, to be conducted by the undersigned out of the presence of the jury, pursuant to *Messa v. Goord,* 652 F.3d 305, 308–10 (2d Cir.2011).

**\*6**   Fourth, regarding Defendants' argument that, based on the record evidence, a reasonable juror would not conclude Defendants used excessive force against Plaintiff (Dkt. No. 56 at 5–7), the Court agrees with the Report–Recommendation's finding that Plaintiff's verified Complaint (which has the force and effect of an affidavit) creates a genuine dispute of material fact as to whether Defendants applied force maliciously and sadistically to cause harm on March 15, 2010. (Dkt. No. 54 at 27–28.) Although the Court acknowledges that the evidence suggesting that Defendants Valls and Jellick violated Plaintiff's constitutional right to be free from cruel and unusual punishment on these facts is slight, the Court is reminded that, because the facts demonstrating a genuine

dispute of fact are based, in part, on the credibility of Plaintiff, such a dispute is more appropriately decided by a factfinder at trial. Defendants have not persuaded the Court that the prerequisites have been met for the Court to reject Plaintiff's sworn assertions as incredible, based on *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir.2005). [10]

[10]   "It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment." *Cruz v. Church,* 05–CV–1067, 2008 WL 4891165, at \*4 & n. 6 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.) [emphasis in original; collecting cases]. However, "there is a narrow exception to this well-established rule." *Cruz,* 2008 WL 4891165, at \*4 [citation omitted]. In *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir.2005), the Second Circuit explained that this narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant. *Cruz,* 2008 WL 4891165, at \*4 & n. 7 [collecting cases]. "Again, it must be remembered that the circumstances giving rise to this exception are rare." *Id.* & n. 7 [collecting cases].

For all of these reasons, all of Plaintiff's claims are dismissed, except for his excessive force claim against Defendants Jellick and Valls regarding the incident of March 15, 2010.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 54) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 46) is ***GRANTED*** in part and ***DENIED*** in part, such that all of Plaintiff's claims are ***DISMISSED***—**EXCEPT FOR** his excessive force claim against Defendants Jellick and Valls regarding the incident of March 15, 2010; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action, at which time the Court will schedule a jury trial for Plaintiff's excessive force claims against Defendants Jellick and Valls. Counsel are directed to appear at the final pretrial conference with settlement authority from the parties.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4380921

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 63 of 96

Gambino v. Laclair, Not Reported in Fed. Supp. (2020)

2020 WL 13801079

2020 WL 13801079
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony GAMBINO, Plaintiff,

v.

Superintendent Darwin LACLAIR, Franklin
Correctional Facility, Correction Officer Carey, Franklin
Correctional Facility, and New York State Department
of Corrections and Community Supervision, Defendants.

9:20-CV-0162 (DNH/DJS)
|
Signed March 24, 2020

**Attorneys and Law Firms**

ANTHONY GAMBINO, Plaintiff, pro se, 19-A-3031,
Franklin Correctional Facility, P.O. Box 10, Malone, NY
12953.

**DECISION AND ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

**\*1** On or about January 6, 2020, pro se plaintiff Anthony
Gambino ("Gambino" or "plaintiff") commenced this action
pursuant to 42 U.S.C § 1983 ("Section 1983"), Title II of the
Americans With Disabilities Act, 42 U.S.C § 12101, et seq.
("ADA"), and Section 504 of the Rehabilitation Act of 1973,
29 U.S.C. § 794, et seq. ("Section 504") in the Eastern District
of New York ("EDNY") by filing a complaint, Dkt. No. 1
("Compl."), accompanied by an application to proceed in the
action in forma pauperis ("IFP"), Dkt. No. 2.

On January 14, 2020, the EDNY Court denied Gambino's IFP
application without an explanation in a text entry. *See* Text
Entry Dated Jan. 14, 2020.

On or abut February 10, 2020, the EDNY received the full
filing fee from Gambino. [1] Dkt. No. 8. Thereafter, the EDNY
Court transferred the action to this District. Dkt. No. 10. The
Clerk has now forwarded plaintiff's complaint to the Court for
review.

[1]    Notwithstanding plaintiff's payment of the filing
fee and the EDNY's denial of plaintiff's IFP
application, on February 20, 2020, this Court
granted plaintiff leave to file a new IFP application.
Dkt. No. 12.

**II. DISCUSSION**

**A. Standard of Review**

Pursuant to 28 U.S.C. § 1915A ("Section 1915A"), a court
must review any "complaint in a civil action in which a
prisoner seeks redress from a governmental entity or officer
or employee of a governmental entity" and must "identify
cognizable claims or dismiss the complaint, or any portion
of the complaint, if the complaint ... is frivolous, malicious,
or fails to state a claim upon which relief may be granted;
or ... seeks monetary relief from a defendant who is immune
from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin,
171 F.3d 115, 116 (2d Cir. 1999)* (per curiam) (holding that
Section 1915A applies "to all civil complaints brought by
prisoners against governmental officials or entities regardless
of whether the prisoner has paid the filing fee").

In reviewing a pro se litigant's complaint, the court has a
duty to liberally construe the pleadings, *see Nance v. Kelly,
912 F.2d 605, 606 (2d Cir. 1990)* (per curiam), and should
exercise "extreme caution ... in ordering sua sponte dismissal
of a pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an
opportunity to respond." *Anderson v. Coughlin, 700 F.2d 37,
41 (2d Cir. 1983).* Therefore, a court should not dismiss a
complaint if the plaintiff has stated "enough facts to state a
claim to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).*

"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (citing
*Twombly, 550 U.S. at 556*). Although the Court should
construe the factual allegations in the light most favorable
to the plaintiff, "the tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable
to legal conclusions." *Iqbal, 556 U.S. at 678.* "Threadbare
recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." *Id.* "[W]here
the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged–but it has not 'show[n]'–'that the pleader is entitled

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 64 of 96

Gambino v. LaClair, Not Reported in Fed. Supp. (2020)

2020 WL 13801079

to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

**\*2** At all times relevant to the claims in this action, Gambino was confined in Franklin Correctional Facility ("Franklin C.F."), a prison operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. The following facts are as alleged in the complaint.

In January of 2019, Gambino was struck by a vehicle and suffered an MCL tear in one of his knees.[2] Compl. at 2. Plaintiff underwent surgery to repair the injury.[3] *Id.* at 3.

[2]    Although plaintiff's complaint alleges that plaintiff tore his MCL, Compl. at 2, a medical record attached to the complaint suggests that plaintiff tore his left ACL. *Id.* at 16.

[3]    The complaint does not allege the date on which plaintiff underwent surgery.

In August of 2019, Gambino arrived in DOCCS's custody and, in October of 2019, was transferred to Franklin C.F. *See* Compl. at 3-4. Plaintiff "was granted a bottom bunk pass" on October 8, 2019. *Id.* at 3-4, 14.

On November, 22, 2019, Gambino was transferred to the D2 dorm. *Id.* Upon arrival, plaintiff realized he had lost his bottom bunk pass and asked defendant Franklin C.F. Correctional Officer Carey for permission to go to the infirmary and pick up another pass. Compl. at 3. Plaintiff also informed defendant Carey at that time that he was unable to climb to the top bunk because of his previous knee injury. *Id.* Defendant Carey responded by yelling at plaintiff to "get to his cube and climb on the top bunk" and directed plaintiff to request sick-call to obtain a new bottom bunk pass. *Id.* When plaintiff told defendant Carey again that he could not climb to the top bunk, defendant Carey threw plaintiff's property bags across the room (hitting plaintiff with one of them), and then grabbed plaintiff and pinned him up against the wall. *Id.* at 3-4. Defendant Carey threatened plaintiff with confinement in the special housing unit if he continued to disobey orders. *Id.*

at 4. Plaintiff thereafter attempted to comply with defendant Carey's order to climb to the top bunk but fell and landed on his knee. *Id.*

After the fall, Gambino was transferred to the infirmary on a stretcher. Compl. at 4. At some time thereafter, plaintiff was "taken to an outside hospital for an MRI and to have his knee popped back in." *Id.* Plaintiff was given both "medication and shots" to manage the pain he suffered from the fall. *Id.* When plaintiff was released from the infirmary, plaintiff was given a copy of his bottom bunk pass. Compl. at 4.

Gambino names as defendants (1) Darwin LaClair, Franklin C.F. Superintendent; (2) Correctional Officer Carey; and (3) DOCCS. *See* Compl. at 2. Liberally construed, plaintiff's complaint asserts the following causes of action against the defendants: (1) negligence against defendants LaClair and Carey, (2) Eighth Amendment excessive force against defendants LaClair and Carey, (3) Eighth Amendment conditions of confinement claims against defendants LaClair and Carey, and (4) violation of the ADA and Section 504 of the Rehabilitation Act against defendants LaClair, Carey, and DOCCS. For a complete statement of plaintiff's claims, reference is made to plaintiff's complaint.

### C. Analysis

#### 1. Section 1983 Claims Asserted Against Defendant LaClair

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

**\*3** To the extent that any individuals like defendant LaClair are named as defendants in light of their capacities as supervisors, "vicarious liability is inapplicable to ... [Section] 1983 suits." *Iqbal* 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be

Gambino v. LaClair, Not Reported in Fed. Supp. (2020)

2020 WL 13801079

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 65 of 96

considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [4]

[4] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). Absent any authority to the contrary, the Court has assumed that *Colon* still applies.

In this case, there are no allegations that defendant LaClair was directly involved in the incident on November 22, 2019, that gave rise to this action. For example, plaintiff does not allege that defendant LaClair witnessed defendant Carey order plaintiff to get on the top bunk or plaintiff's request to obtain a new bottom bunk pass from the infirmary. For that reason, any claim asserted against defendant LaClair based on his direct participation (the first prong set forth in *Colon*) fails. In addition, there are no allegations implicating defendant LaClair at all in plaintiff's complaint.

Defendant LaClair is listed as a defendant in the complaint, *see* Compl. at 2, and then is not mentioned again anywhere in the complaint except where plaintiff conclusorily (and not entirely accurately) sets forth the elements of each claim asserted against defendant LaClair. *See, e.g., id.* at 11 ("Defendant No. 2 - Darwin LaClair - has discriminated

against petitioner in violation of his rights under the ADA and RA and shown deliberate indifference to his serious needs by denying his reasonable accommodations which subjected him to substantial risk of harm to his health and safety and the unnecessary and unwanton [sic] infliction of pain in Violation of his Rights under the Eighth Amendment of the U.S. Constitution.").

Accordingly, because Gambino's complaint fails to allege the requisite personal involvement of defendant LaClair in any Section 1983 claim, all Section 1983 claims asserted against defendant LaClair are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

## 2. Negligence Asserted Against Defendants LaClair and Carey

Liberally construed, Gambino's complaint asserts negligence based on allegations that defendant Carey ordered plaintiff to climb onto the top bunk in the D2 dorm on November 22, 2019. *See* Compl. at 3-5.

It is well settled, however, that negligence is not cognizable as a federal claim under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (concluding that negligent acts causing unintended loss of or injury to life, liberty, or property do not rise to the level of constitutional violations); *see also Munlyn v. Pietrie*, No. 13-CV-617, 2014 WL 3695488, at *6 (W.D.N.Y. July 24, 2014) (dismissing the plaintiff's claim where the defendant-correctional officers allegedly "neglected their responsibilities," allowing the plaintiff "to proceed unescorted down the stairs" while improperly shackled and resulting in injuries to plaintiff's neck, back and wrist because "the Complaint, at most, alleges no more than a simple claim of negligence, which under well settled law does not give rise to a cause of action under [Section] 1983, even if corrections staff had actual or constructive knowledge of the danger").

 *4 Accordingly, Gambino's negligence claims asserted against defendants LaClair and Carey are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).

## 3. Eighth Amendment Claims Asserted Against Defendant Carey

However, mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed,

Gambino v. LaClair, Not Reported in Fed. Supp. (2020)

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 66 of 96

2020 WL 13801079

*see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to plaintiff's Eighth Amendment excessive force and conditions of confinement claims asserted against defendant Carey. In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

### 4. ADA and Rehabilitation Act Claims Asserted Against Carey and DOCCS

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

Because the elements of plaintiff's ADA and Section 504 claims for disability discrimination are the same, the Court considers these claims together and applies a single analysis to both. *See, e.g., Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

To state a claim under those provisions, a plaintiff must allege "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Phelan v. Thomas*, 439 F. App'x 48, 50 (2d Cir. 2011) (citing *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). Both Title II of the ADA and Section 504 apply to state prisons and their prisoners. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

In this case, mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require a response to plaintiff's ADA and Section 504 claims asserted against defendant DOCCS. In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

The Court reaches a different conclusion, however, with respect to plaintiff's ADA and Section 504 claims asserted against defendants LaClair and Carey. Although plaintiff's complaint does not allege whether defendants LaClair and Care are sued in their individual or official capacities, to the extent that they are sued in their individual capacities, the claims are subject to dismissal because defendants cannot be sued under the ADA and Section 504 in their individual capacities. *Garcia v. S.U.N.Y. Health Sciences. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

**\*5** In addition, it is not necessary to allow an official-capacity claim against a state official when the agency for which the official is employed is already a named defendant. *See Kearney v. N.Y.S. D.O.C.S.*, No. 11-CV-1281, 2013 WL 5437372, at \*5 (N.D.N.Y. Sept. 27, 2013) ("Where, as here, a plaintiff may proceed on his ADA [and Rehabilitation Act] claims against the State entity directly, it is appropriate for the court to 'dismiss the official capacity claims because they are redundant of the claims against the government entity.'" (internal quotation marks and alterations omitted)); *Alster v. Goord*, 745 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) ("Where, as here, a plaintiff may proceed on his ADA claims against the State entity directly, courts in this Circuit dismiss the official capacity claims because they are redundant of the claims against the government entity." (internal quotation marks and alteration omitted)).

Accordingly, because DOCCS is named as a defendant, plaintiff's ADA and Section 504 claims asserted against defendants LaClair and Carey are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(B)(1).

### III. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's complaint (Dkt. No. 1) is **ACCEPTED for filing** only to the extent that it asserts (1) Eighth Amendment excessive force and conditions of confinement claims against defendant Carey, and (2) ADA and Section 504 claims against defendant DOCCS;

2. Except as to the foregoing, the claims asserted in plaintiff's complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim

Gambino v. LaClair, Not Reported in Fed. Supp. (2020)

2020 WL 13801079

upon which relief may be granted, [5] and the Clerk shall **TERMINATE** defendant LaClair from the docket;

[5]      Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

3. The Clerk of the Court shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Carey and DOCCS. The Clerk shall forward a copy of the summonses and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

4. A response to the complaint shall be filed by defendants Carey and DOCCS, or their counsel, as provided for in the Federal Rules of Civil Procedure;

5. All pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

6. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action;

7. All parties must comply with Rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

8. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and

 **\*6**  9. The Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 13801079

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 12156681

2021 WL 12156681
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOHNSON, Plaintiff,

v.

Anthony J. ANNUCCI, Acting
Commissioner of DOCCS, et al., Defendants.

9:21-CV-0335 (TJM/CFH)
|
Signed May 20, 2021

**Attorneys and Law Firms**

MICHAEL JOHNSON, 03-A-0667, Plaintiff, pro se,
Otisville Correctional Facility, Box 8, Otisville, NY 10963.

**DECISION AND ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1**  The Clerk has sent to the Court for review a pro se
civil rights Complaint filed by plaintiff Michael Johnson
("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983").
Dkt. No. 1 ("Compl."). Plaintiff, who is currently confined at
Otisville Correctional Facility ("Otisville C.F."), has not paid
the statutory filing fee and seeks leave to proceed in forma
pauperis. [1] Dkt. No. 6 ("IFP Application"). Plaintiff also filed
a motion for the appointment of counsel. Dkt. No. 4.

[1]       On March 29, 2021, the Court issued an
          order closing the action because Plaintiff had
          not complied with this District's filing fee
          requirements. Dkt. No. 5. On April 22, 2021, the
          Court receive Plaintiff's second IFP application
          (Dkt. No. 6) and inmate authorization form (Dkt.
          No. 7) and reopened the action (Dkt. No. 9).

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged." Cash v. Bernstein,
No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct.
26, 2010). [2] "Although an indigent, incarcerated individual
need not prepay the filing fee at the time of filing, he must

subsequently pay the fee, to the extent he is able to do so,
through periodic withdrawals from his inmate accounts." Id.
(citing 28 U.S.C. § 1915(b) and Harris v. City of New York,
607 F.3d 18, 21 (2d Cir. 2010)).

[2]       Section 1915(g) prohibits a prisoner from
          proceeding in forma pauperis where, absent a
          showing of "imminent danger of serious physical
          injury," a prisoner has filed three or more actions
          that were subsequently dismissed as frivolous,
          malicious, or failing to state a claim upon which
          relief may be granted. See 28 U.S.C. § 1915(g).
          The Court has reviewed Plaintiff's litigation history
          on the Federal Judiciary's Public Access to Court
          Electronic Records ("PACER") Service. See http://
          pacer.uspci.uscourts.gov. It does not appear from
          that review that Plaintiff had accumulated three
          strikes for purposes of 28 U.S.C. § 1915(g) as of
          the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds
that he has demonstrated sufficient economic need. See
28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate
authorization form required in this District. See Dkt. No. 7.
Accordingly, the Court grants Plaintiff's IFP Application.

**III. SUFFICIENCY OF THE COMPLAINT**

   **A. Standard of Review**
Having found that Plaintiff meets the financial criteria for
commencing this action in forma pauperis, and because
Plaintiff seeks relief from an officer or employee of a
governmental entity, the Court must consider the sufficiency
of the allegations set forth in the Complaint in light of 28
U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of
the United States Code directs that, when a plaintiff seeks to
proceed in forma pauperis, "the court shall dismiss the case at
any time if the court determines that – ... (B) the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [3]

[3]       To determine whether an action is frivolous, a court
          must look to see whether the complaint "lacks an
          arguable basis either in law or in fact." Neitzke v.
          Williams, 490 U.S. 319, 325 (1989).

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 69 of 96

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B. Summary of the Complaint**

The following facts are set forth as alleged by Plaintiff in his Complaint.

On April 30, 2018, defendants Correctional/Transportation Officer Lee ("Lee") and Correctional Officer Smith ("Smith") were transporting Plaintiff and other inmates from Eastern Correctional Facility ("Eastern C.F.") to Coxsackie Correctional Facility ("Coxsackie C.F."). Compl. at 2, 4. At the relevant time, Lee and Smith were employed at Downstate Correctional Facility ("Downstate C.F."). *Id.* at 2. Lee placed handcuffs around Plaintiff's wrists, a chain belt around his waist, and shackled his ankle to another inmate. *Id.* at 4. Lee walked the inmates to a van, where Smith was waiting in the driver's seat. *Id.* Plaintiff claims that the van "lack[ed] seat belts for the [ ] passengers." Compl at 4. Plaintiff sat in an aisle seat while still shackled to an inmate who sat in the window seat. *Id.*

Plaintiff, who suffers from motion sickness, felt ill within sixty minutes. Compl. at 4. Plaintiff attempted to alleviate his symptoms by sleeping, but awoke when Smith "slammed on the brakes causing plaintiff to bump his head hard on to the seat ahead of him." *Id.* Smith accelerated and pressed the brakes a second time, causing Plaintiff, and other inmates, to fall over each other and out of their seats. *Id.* at 4, 8. Plaintiff alleges that, as a result of "reckless" driving, another inmate sustained an injury resulting in "blood being spattered." *Id.* at 8. Plaintiff and the other inmates "asked to see medical," and Smith and Lee yelled at the inmates to be quiet. Compl. at 4-5.

**\*3** The van stopped at Shawangunk Correctional Facility ("Shawangunk C.F.") before continuing to the final destination. Compl. at 5. While at Shawangunk C.F., Plaintiff asked "to be seen by medical," but his request was denied. *Id.* During the trip to Coxsackie C.F., Plaintiff vomited several times. *Id.* Plaintiff also suffered "excruciating pain" in his lower back and neck. *Id.* When the van arrived at Coxsackie C.F., Plaintiff was seen by medical staff and reported his injuries, "to no avail." Compl. at 5.

On May 24, 2018, Plaintiff filed a grievance (No. CX-20222-18) related to the incidents that occurred during the transport. Compl. at 5. Defendant Inmate Grievance Program Supervisor T. Suprenant ("Suprenant") "mishandled" the grievance. *Id.* Plaintiff appealed the grievance to defendant Superintendent Raymond Shanley ("Shanley"). *Id.*

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 70 of 96

2021 WL 12156681

Construed liberally, [4] the Complaint contains the following: (1) Eighth Amendment condition-of-confinement claims against Lee, Smith, and defendant Acting Commissioner of DOCCS Anthony J. Annucci ("Annucci"); (2) retaliation claim against Suprenant; and (3) constitutional claims against Shanley and defendant Superintendent Robert Norton Jr. ("Norton") [5] for failing to properly investigate Plaintiff's grievances. *See generally* Compl. Plaintiff seeks monetary damages. *See id.* at 7. For a more complete statement of Plaintiff's claims, reference is made to the Complaint.

[4]     The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[5]     At the relevant time, Norton was the Superintendent at Downstate C.F. Compl. at 2.

**C. Nature of Action**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**IV. ANALYSIS**

**A. Preliminary Matters**

**1. Venue**

Before discussing the viability of Plaintiff's claims, the Court addresses the issue of venue, as it relates to Plaintiff's claims against Lee and Smith.

***4** The propriety of venue is governed by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately. Fed. R. Civ. P. 21. In deciding whether to sever a claim, a court should consider the following:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3)

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 12156681

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 71 of 96

whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against other defendants." *Cain v. New York State Bd. of Elections*, 630 F.Supp. 221, 225-26 (E.D.N.Y. 1986). "A decision to sever lies within the discretion of the Court." *Id.* at 225. The plaintiff's choice of forum however, is accorded substantial weight. *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir. 1996).

Here, while the claims related to alleged wrongdoing that occurred while Plaintiff was transported between Eastern C.F. and Coxsackie C.F. involve defendants who were employed at Downstate C.F., [6] the factors weigh in favor of the Northern District retaining jurisdiction over these claims. This action involves claims related to deliberate indifference and retaliation, with different defendants, but all claims arise out of the same incidents and complaints. Because the claims are "interrelated," the parties would be prejudiced if the case is litigated in different forums. *See Randle v. Alexander*, 960 F.Supp.2d 457, 486 (S.D.N.Y. 2013) (denying motion to transfer venue of interrelated medical care claims); *see also Mandala v. Coughlin*, 920 F.Supp. 342, 356 (E.D.N.Y. 1996) ("Given the related nature of the plaintiff's complaints against both sets of defendants, the Court sees no reason to waste judicial resources by trying two similar cases separately, before two courts."). At this juncture, the interests of justice and efficiency are served best by this Court retaining jurisdiction over all claims.

[6] Downstate C.F. is located in Dutchess County, which is located in the Southern District of New York. *See* 28 U.S.C. § 112(b).

### 2. Claims Against "Staff" at Shawangunk C.F.

**\*5** In the Complaint, Plaintiff alleges that "staff" denied his request for medical treatment upon his arrival at Shawangunk C.F. Compl. at 5. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983; *see Wyatt v. Cole*, 504 U.S. 158, 161 (1992); *Myers v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights" (citation omitted)). The "Staff" are not "persons" within the meaning of § 1983 actions. *See Martin v. UConn Health Care*, 3:99-CV-2158, 2000 WL 303262, at *1-2 (D. Conn. Feb. 9, 2000) (citing *inter alia, Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759, at *1 (S.D.N.Y. 1991) (Otisville Correctional Facility medical staff not a person under § 1983)). Accordingly, any claims against the Shawangunk C.F. staff are dismissed for failure to state a claim upon which relief may be granted.

### B. Eighth Amendment

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id.* (citation omitted). Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 72 of 96

2021 WL 12156681

with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125.

"[M]otor-vehicle accidents, by themselves, do not implicate the Constitution's protections, and 'allegations of a public official driving too fast for the road conditions are grounded in negligence' and are therefore not actionable under Section 1983." *Cuffee v. City of New York*, No. 15-CV-8916, 2017 WL 1232737, at *7 (S.D.N.Y. Mar. 3, 2017). Moreover, "the failure to provide a seatbelt is not, in itself, 'sufficiently serious' to constitute an Eighth Amendment violation." *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012). "[A]n in-custody plaintiff injured during transport may, however, state a deliberate-indifference claim if he or she alleges facts in addition to the absence of seatbelts and reckless driving, that, taken as a whole, suggest that the plaintiff was exposed to conditions posing an unreasonable risk of serious harm, and that the defendants were aware of those conditions." *Cuffee*, 2017 WL 1232737, at *7.

Here, the Complaint contains facts plausibly suggesting that Lee and Smith were deliberately indifferent to an excessive risk to Plaintiff's safety. *See Torres v. Amato*, 22 F.Supp.3d 166, 174 (N.D.N.Y. 2014) ("[E]vidence of the defendant's refusal to secure the plaintiff's seatbelt, combined with the defendant's reckless driving [may be] sufficient for a jury to 'conclude that there was a substantial risk of harm to the plaintiff and that the defendant knew of and disregarded the substantial risk of harm.' ") (citing *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013)); *see also Cuffee*, 2017 WL 1232737, at *8 (denying motion to dismiss where the plaintiff plead that the officer drove recklessly, at an excessive speed, with knowledge that the plaintiff was not wearing a seatbelt).

**\*6** Thus, the Court finds that Plaintiff's Eighth Amendment deliberate indifference claims against Lee and Smith, related to Plaintiff's safety, survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. [7]

[7]    To the extent that Plaintiff attempts to assert a constitutional claim against Lee and Smith for violations of the New York State Vehicle and Traffic Law, *see* Compl. at 8, that claim is dismissed.

A different conclusion is reached however, with regard to Plaintiff's deliberate indifference claim against Annucci. Plaintiff claims that Annucci failed to hire and train staff members. Compl. at 6. "To hold an individual defendant liable under § 1983, the plaintiff must show that the defendant was personally involved in the challenged conduct." *Rys v. Grimm*, No. 6:19-CV-1251 (FJS/ATB), 2021 WL 827671, at *8 (N.D.N.Y. Mar. 4, 2021) (citing *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003)). Prior to *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). "[T]he Second Circuit recently held that the *Colon* test was abrogated by the Supreme Court's decision in *Ashcroft v. Iqbal*[.]" *Jeanty v. City of Utica*, No. 6:16-CV-00966 (BKS/TWD), 2021 WL 149051, at *33 (N.D.N.Y. Jan. 14, 2021) (citing *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)). In *Tangreti*, the Second Circuit "clarified that 'there is no special rule for supervisory liability' and explained that 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Doe v. Zucker*, No. 1:20-CV-840 (BKS/CFH), 2021 WL 619465, at *28 (N.D.N.Y. Feb. 17, 2021) (quoting *Tangreti*, 983 F.3d at 612, *in turn quoting Iqbal*, 556 U.S. at 676). Direct participation requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Zehner v. Jordan-Elbridge Bd. of Educ.*, No. 5:11-CV-1202 (NAM/ML), 2019 WL 4083040, *7 (N.D.N.Y. Aug. 29, 2019) (quoting *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)) (internal quotation marks omitted). Here, there is no allegation of Annucci's direct participation or involvement in the transport decision. Consistent with *Tangreti*, Plaintiff cannot base his claims against Annucci on his "mere supervision" of staff members. *See Lopez v. Chappius*, No. 6:17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021).

Accordingly, Plaintiff's claims against Annucci are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and

2021 WL 12156681

28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### C. Retaliation

**\*7** Plaintiff alleges that Suprenant retaliated against him for filing a grievance and attempted to "cover up" his complaints. *See* Compl. at 6.

To state a plausible First Amendment retaliation claim, a plaintiff must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Here, while Plaintiff engaged in protected conduct when he filed his grievance against Lee and Smith, *see Baskerville v. Blot*, 224 F.Supp.2d 723, 731 (S.D.N.Y. 2002) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment and retaliation in response to such a grievance is an actionable claim.") (citations omitted), the Complaint lacks facts suggesting that he suffered from any adverse action. Moreover, even assuming he suffered an adverse action, Plaintiff has not plead a causal connection between the filing of the grievance and any adverse action. *See Hare v. Hayden*, 2011 WL 1453789, at \*4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."); *see also Roseboro v. Gillespie*, 791 F.Supp.2d 353, 369 (S.D.N.Y. 2011) (collecting cases).

Accordingly, Plaintiff's retaliation claim against Suprenant is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted.

### D. Failure to Investigate

Plaintiff alleges that Norton and Shanley failed to properly investigate his complaints. Compl. at 6. "[T]he Due Process Clause generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at \*9 (N.D.N.Y. Feb. 4, 2011) ("... the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein*, 591 F.Supp.2d at 460). Accordingly, Plaintiff's claim that Defendants did not properly investigate his complaints is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [8]

[8]    Plaintiff's claim against Norton is also subject to dismissal for failure to allege facts suggesting that Zucker was personally involved in any constitutional deprivation. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007) (citation omitted). While Plaintiff named Norton in the caption and identified him as a defendant, he is not referenced anywhere within the body of the complaint and plaintiff does not assert any specific allegations of wrongdoing against Norton. In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him. *See Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at \*6 (E.D.N.Y. Oct. 23, 2014) (finding that since the defendant was not mentioned or referenced in the body of the amended complaint, the plaintiff had not adequately pled personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### V. MOTION FOR COUNSEL

**\*8** Plaintiff also moves for the appointment of counsel, claiming that his case is "very complicated." Dkt. No. 4 at 1.

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)
Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 74 of 96

2021 WL 12156681

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel."). [9] Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).

[9]   Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." [10] *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

[10]   The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

At this preliminary stage, the Court is unable to determine whether Plaintiff meets the threshold requirement that at least some aspects of his claim are "likely to be of substance." *Hodge*, 802 F.2d at 61. Plaintiff has not submitted any evidence supporting his claims. *See Terminate Control Corp.*, 28 F.3d at 1341; *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989). Even if the Court were to assume, for purposes of this motion, that Plaintiff's position seems likely to be of substance, the relevant factors weigh decidedly against granting plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; and (3) if this case survives any dispositive motions filed by Defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference.

**\*9**  Further, the Court is not aware of any special reason why appointment of counsel in this case is warranted at this time and is mindful, as the Second Circuit has admonished that it must be, of the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (noting that "[v]olunteer lawyer time is a precious commodity.").

As discussed *supra*, Plaintiff provided a Complaint with facts sufficient to survive this Court's sua sponte review. Thus, Plaintiff's motion for the appointment of counsel is denied without prejudice. After Defendants have responded to the allegations in the Complaint, and the parties have undertaken discovery, Plaintiff may seek appointment of counsel and the Court may be better able to determine whether such appointment is warranted.

## VI. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 6) is **GRANTED**; [11] and it is further

Johnson v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 12156681

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims again Annucci; (2) retaliation claims against Suprenant; and (3) claims against Norton and Shanley; [12] and it is further

[12]    Should Plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that the Eighth Amendment claims against Lee and Smith survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response; and it is further

**ORDERED** that Annucci, Shanley, Norton, and Suprenant are **DISMISSED** as a defendants herein; and it is further

**ORDERED** that the Clerk shall issue summonses and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summonses and Complaint to the Office of the Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the Complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

 **\*10** **ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 12156681

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Guzman v. McCarthy, Not Reported in Fed. Supp. (2022)

2022 WL 630873

2022 WL 630873
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Luis GUZMAN, Plaintiff,

v.

Timothy MCCARTHY and John Doe, Defendants.

Civil Action No. 9:21-CV-1192 (MAD/ATB)

|

Signed 03/04/2022

**Attorneys and Law Firms**

LUIS GUZMAN, 16-A-5199, Plaintiff, pro se, Clinton
Correctional Facility, P.O. Box 2000, Dannemora, NY 12929.

**DECISION AND ORDER**

MAE A. D'AGOSTINO, United States District Judge

**I. INTRODUCTION**

*1  On or about November 1, 2021, pro se plaintiff Luis
Guzman, an inmate in the custody of the New York State
Department of Corrections and Community Supervision
("DOCCS"), commenced this action pursuant to 42 U.S.C.
§ 1983 ("Section 1983") by filing a complaint, accompanied
by an application to proceed in forma pauperis ("IFP").
Dkt. Nos. 1-2. On December 17, 2021, the Court issued a
Decision and Order granting plaintiff's IFP application and
conditionally dismissing the complaint pursuant to 28 U.S.C.
§ 1915 ("Section 1915") and 28 U.S.C. § 1915A ("Section
1915A") unless plaintiff filed an amended complaint that
corrected the complaint's pleading defects. *See generally*
Dkt. No. 4 ("December Order"). Plaintiff availed himself of
the opportunity amend, and the Court received an amended
complaint on January 18, 2022. Dkt. No. 6. Before the Court
could review that pleading, however, plaintiff filed another
copy of his amended complaint, which the Court received on
February 28, 2022. Dkt. No. 7 ("Am. Compl."). [1] The Clerk
has now forwarded the amended complaint to the Court for
review pursuant to Sections 1915 and 1915A.

---

[1]  The two amended pleadings (Dkt. Nos. 6, 7)
contain identical allegations. *Compare* Dkt. No. 6
*with* Am. Compl. The only differences between
the two are the dates plaintiff signed them and

that plaintiff included a verification and affidavit
of service with his more recent filing. *Id.* The
Court has reviewed the more recent filing in this
Decision and Order because it superseded the
earlier pleading in all respects. *See Hancock v.
Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018)
("[I]t is well settled that an amended pleading
ordinarily supersedes the original and renders it of
no legal effect.").

**II. DISCUSSION**

**A. Governing Legal Standard**
The legal standard governing the Court's review of a pleading
pursuant to Sections 1915 and 1915A was discussed at length
in the December Order and will not be restated in this
Decision and Order. *See* December Order at 2-4.

**B. Summary of the Amended Complaint**
At all times relevant to the claims in this action, plaintiff was
confined in Auburn Correctional Facility ("Auburn C.F."), a
prison operated by DOCCS. Am. Compl. at 1. The following
facts are as alleged in the amended complaint.

On or about May 5, 2019, at approximately 3:00PM, an
inmate approached plaintiff and threatened to hurt him unless
he paid the inmate for use of the telephones and television.
Am. Compl. at 2-3. Plaintiff reported the threat to defendant
Auburn C.F. Correction Officer John Doe, "who posted at
the phone area." *Id.* at 3. Defendant Doe laughed at plaintiff
and dismissed him from the area. *Id.* The inmate thereafter
threatened plaintiff again and loudly called him a "snitch,"
which caused defendant Doe and others to "take notice."
*Id.* Although plaintiff again approached defendant Doe to
report his belief that he would be injured by the inmate,
defendant Doe angrily dismissed plaintiff from his booth.
*Id.* Plaintiff complied with the order and walked away. *Id.*
Plaintiff had stationed himself "in view of [defendant] Doe"
when the inmate came up to plaintiff from behind and cut
him in the face. *Id.* at 3-4. "Plaintiff looked in the direction
of [defendant] Doe, who was looking directly at the Plaintiff
with a smirk on his face, and who saw the entire incident
and ignored calling in a level, or at least, [sic] tried to stop the
attack." *Id.* at 4.

*2  In addition to defendant Doe, the amended complaint
names Auburn C.F. Superintendent Timothy McCarthy as
a defendant. Am. Compl. at 2, 4-5. Plaintiff alleges that
defendant McCarthy was aware that Auburn C.F. is a

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 77 of 96

Guzman v. McCarthy, Not Reported in Fed. Supp. (2022)

2022 WL 630873

dangerous place and failed to properly train correctional officers to protect inmates from harm. *Id.* at 4-5.

Liberally construed, the amended complaint asserts an Eighth Amendment failure to intervene claim against defendants Doe and an Eighth Amendment failure to protect claim against defendant McCarthy. [2] Am. Compl. at 5. As relief, plaintiff seeks monetary damages. *Id.* at 6. For a complete statement of plaintiff's claims, reference is made to the amended complaint.

[2]   Plaintiff's amended complaint also claims "negligence" on the part of the defendants. Am. Compl. at 5. Because the Court is obligated to interpret a pro se litigant's pleadings to raise the strongest arguments possible, and because negligence is not cognizable under Section 1983, the Court has construed the amended pleading to assert only Eighth Amendment claims against defendants Doe and McCarthy. *See Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (concluding that negligent acts causing unintended loss of or injury to life, liberty, or property do not rise to the level of constitutional violations).

**C. Analysis**

**1. Defendant Doe**

Mindful of the Court's obligation to liberally construe a pro se litigant's pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will accept the amended complaint for filing purposes insofar as it asserts an Eighth Amendment failure to intervene claim against defendant Doe. In so ruling, the Court expresses no opinion as to whether the amended complaint can withstand a properly filed dispositive motion.

Because plaintiff's failure to intervene claim is asserted against a corrections officer whose name is not known to plaintiff, service of process cannot be effected on him unless and until that individual has been identified by name. If plaintiff wishes to pursue his claim against defendant Doe, he must take reasonable steps through discovery to ascertain the identity of that individual. [3] Upon learning the identity of the unnamed defendant, plaintiff must amend the operative complaint to properly name that individual as a party. If plaintiff fails to ascertain the identity of the John Doe

defendant so as to permit timely service of process, all claims against that individual will be dismissed. [4]

[3]   Under normal circumstances, when a pro se plaintiff includes Doe defendants together with named defendants, the complaint is served upon the named defendants, and then the plaintiff pursues discovery to identify the Doe defendants. Here, the only named defendant is defendant McCarthy. As discussed below in Part II.C.2 of this Decision and Order, however, plaintiff's amended complaint fails to assert a cognizable claim against defendant McCarthy. Accordingly, without defendant McCarthy as an active party, there are no individuals who can be served and through whom discovery can be pursued. Plaintiff faces the additional impediment that he is no longer incarcerated in Auburn C.F., where the events giving rise to this action occurred and where, presumably, defendant Doe still is employed. This circumstance will likely make it even more difficult for plaintiff to obtain the name of defendant Doe. For these reasons, with due deference to plaintiff's pro se status, solely for the purpose of assisting plaintiff in identifying defendant Doe through discovery, the Court will direct that defendant McCarthy remain a party in the action so service may proceed and issue joined. Once issue is joined, plaintiff may seek, through discovery, the identity of defendant Doe. Because the New York State Attorney General will likely represent defendant McCarthy, the Clerk will be directed to forward a copy of the summons, amended complaint, and a copy of this Decision and Order on that office.

[4]   Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

**2. Defendant McCarthy**

**\*3** The amended complaint alleges that defendant McCarthy knew Auburn C.F. is a "dangerous facility" and that the area where plaintiff was assaulted was known to defendant

McCarthy as a place "where assaults occur[.]" Am. Compl. at 4-5. Plaintiff also alleges that defendant McCarthy failed to train his correctional officers to protect inmates and failed to "place officers in th[e area where plaintiff was assaulted] to monitor the yard and to protect inmates." *Id.* at 5.

As explained in the December Order, "[t]he Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.' " *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "That extends to protecting prisoners from violence at the hands of other prisoners." *Morgan*, 956 F.3d at 89 (internal quotation marks and alteration omitted); *see also Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836.

With respect to plaintiff's allegation that defendant McCarthy failed to assign correctional officers to monitor the location where plaintiff was assaulted, that allegation is belied by the fact that, according to plaintiff, he was assaulted within defendant Doe's sightline and that defendant Doe witnessed the assault. Accordingly, any allegation that defendant McCarthy did not post security officials in a location where assaults occur is not plausible.

With respect to the allegation that defendant McCarthy failed to train his officers to protect inmates from harm, that is not enough to plausibly allege the personal involvement of defendant McCarthy. As also explained in the December Order, "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."[5] *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). The amended complaint does not allege that defendant McCarthy knew of the assault ahead of time such that he could take any specific action (training subordinates or otherwise) to protect plaintiff from harm. As described in the amended complaint, plaintiff was

first threatened by the other inmate in or about 3:00PM on the day of the attack, and plaintiff was assaulted shortly thereafter that first threat. There are no allegations that defendant McCarthy became aware or was informed of the threats made against plaintiff or that he had any opportunity to take any action to protect plaintiff. Instead, the attack on plaintiff amounted to a surprise attack from defendant McCarthy's perspective because he had no reason to know or believe that plaintiff would be attacked by the inmate at that time. *See, e.g., Zimmerman v. Macomber*, No. 95-CV-0882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001) ("Courts routinely deny deliberate indifference claims based upon surprise attacks.").

[5]   Plaintiff seeks only monetary relief. *See* Am. Compl. at 6.

**\*4** For the foregoing reasons, the amended complaint fails to plausibly allege that defendant McCarthy acted with deliberate indifference to plaintiff's safety. Accordingly, plaintiff's failure to protect claim asserted against him is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b) (1).[6]

[6]   As noted above, notwithstanding the Court's dismissal of the claim asserted against defendant McCarthy, he will remain an active party in this action solely for purposes of service and discovery to assist plaintiff in attempting to ascertain the name of the John Doe defendant.

### III. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 7) is **ACCEPTED for filing** only with respect to plaintiff's Eighth Amendment failure to intervene claim asserted against defendant John Doe and the amended complaint is now the operative pleading in the action; and it is further

**ORDERED** that the Eighth Amendment failure to protect claim asserted against defendant Timothy McCarthy is **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that, solely for purposes of assisting plaintiff with ascertaining the identity of defendant John Doe through

discovery, defendant McCarthy shall remain active as a party in the action and the Clerk is respectfully directed to modify the docket to reflect that defendants McCarthy and John Doe are the only two active defendants; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the amended complaint, to the United States Marshal Service for service of process on defendant McCarthy. The Clerk shall also mail a copy of the summons, amended complaint, and a copy of this Decision and Order to the Office of the New York State Attorney General; and it is further

**ORDERED** that a defendant shall respond to the amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff shall take reasonable steps through discovery to ascertain the identity of defendant John Doe, against whom his Eighth Amendment failure to intervene claim is asserted. Upon learning the name of the unidentified defendant, plaintiff shall file a motion to amend the operative pleading seeking permission to add that individual, by name, as a defendant to this lawsuit. **Plaintiff's failure to timely serve that defendant will result in dismissal** of the claim asserted against him and termination of that defendant from the action; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions. Motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

 **\*5 ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice for this Court.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 630873

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

2020 WL 5891888
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrea LAPIETRA, Individually and as Power
of Attorney, and Deashon Tarver, Plaintiffs,

v.

CITY OF ALBANY POLICE
DEPARTMENT, et al., Defendants.

9:19-CV-1527 (TJM/TWD)
|
Signed 10/05/2020

**Attorneys and Law Firms**

ANDREA LaPIETRA, Plaintiff, pro se, 1030 Washington
Ave. #2, Albany, NY 12203.

DEASHON TARVER, Plaintiff, pro se, Monte Mario Motel,
Room 21, 947 New Loudon Road, Latham, NY 12110.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**I. INTRODUCTION**

**\*1** This action was commenced by two *pro se* plaintiffs,
Deashon Tarver ("Tarver") and Andrea LaPietra ("LaPietra"),
individually and "as Power of Attorney" for Tarver, pursuant
to 42 U.S.C. § 1983 ("Section 1983"). (Dkt. No. 1.) A
complete history of this action to date can be found in the
prior Decisions and Orders of this Court filed on January 15,
2020, February 26, 2020, and April 6, 2020. (*See* Dkt. Nos.
4, 11, 13.) The Court previously granted LaPietra's motion
to proceed *in forma pauperis* and dismissed any claims that
LaPietra asserted on behalf of Tarver. (Dkt. No. 4 at 4-5.)
The Court also directed Tarver to comply with the filing fee
requirements. *Id.*

On May 22, 2020, Tarver complied with the Court's directives
and submitted a motion to proceed *in forma pauperis*
("IFP Application"). (Dkt. No. 20.) Upon review of Tarver's
IFP application, the Court finds that he has demonstrated
sufficient economic need. *See* 28 U.S.C. § 1915(a)(2).
Accordingly, the Court grants Tarver's IFP Application.

The Court shall now consider the sufficiency of the
allegations set forth in the Complaint in light of 28 U.S.C. §
1915(e) and 28 U.S.C. § 1915A. (Dkt. No. 1.) The Court will
also address Tarver's motion to appoint counsel (Dkt. No. 21)
and LaPietra's motion to appoint counsel (Dkt. No. 6), which
was previously held in abeyance. (*See* Dkt. No. 11.)

**II. SUFFICIENCY OF THE COMPLAINT**

**A. Standard of Review**

Having found that Plaintiffs meet the financial criteria for
commencing this action *in forma pauperis*, and because
Plaintiffs seek relief from an officer or employee of a
governmental entity, the Court must consider the sufficiency
of the allegations set forth in the Complaint in light of 28
U.S.C. §§ 1915(e) and 1915A. [1] Section 1915(e) of Title 28
of the United States Code directs that, when a plaintiff seeks
to proceed in forma pauperis, "the court shall dismiss the case
at any time if the court determines that – ... (B) the action ...
(i) is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B). [2]

[1]   Tarver was incarcerated at Mid-State Correctional
      Facility at the time the action was commenced.
      *See* http://nysdoccslookup.doccs.ny.gov (DIN
      18A1582) (last visited Sept. 27, 2020). Therefore,
      28 U.S.C. § 1915A is applicable. *See Rogers v.
      New York City Police Dep't*, No. 12 CV 3042,
      2012 WL 4863161, at *1 n.3 (E.D.N.Y. Oct. 12,
      2012) (a plaintiff who has been released from
      incarceration is still considered a prisoner under §
      1915A if he was imprisoned at the time the action
      was commenced); *see also Brown v. Jacobson*, No.
      98 Civ. 0565, 1999 WL 1125122, at *5 (S.D.N.Y.
      Dec. 8, 1999) (prisoner's complaint subject to
      heightened scrutiny under the Prison Litigation
      Reform Act of 1999 even after release from custody
      because it concerns prison officials' misconduct).

[2]   To determine whether an action is frivolous, a court
      must look to see whether the complaint "lacks an
      arguable basis either in law or in fact." *Neitzke v.
      Williams*, 490 U.S. 319, 325 (1989).

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review
any "complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a

2020 WL 5891888

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure ("Federal Rules"). Rule 8 of the Federal Rules provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." Hudson v. Artuz, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

"[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing Twombly, 550 U.S. at 555). Rule 8 of the Federal Rules "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

**B. Summary of the Complaint**

 **\*3** The incidents that form the foundation for the Complaint occurred on December 14, 2016, and while Tarver was confined at Albany County Correctional Facility ("Albany County C.F."). The Complaint totals 259 pages and is a rambling, disjointed mix of conclusory allegations, that is, in large part, comprised of excerpts that appear to have been cut and pasted throughout the document from legal articles, statutes, and cases. (Dkt. No. 1.[3]) Named as defendants are: City of Albany Police Department, Officer Jan Mika, Officer Adam Iannacito, Albany County C.F., CO Burns, Sgt. Remillard, Unknown Officers, Unknown Parole Officers, Unknown Plain Clothes Officer, Unknown Sgt., Unknown Correctional Officers, and Unknown Medical and Dental Workers. The following facts are set forth as alleged by Plaintiffs.

[3]     The Complaint includes exhibits. (*See* Dkt. No. 1-1 through Dkt. No. 1-6.) To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached. *See*

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 82 of 96

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

On December 14, 2016, Plaintiffs were at LaPietra's second-floor apartment located at 1030 Washington Avenue, #2, in Albany, New York. (Dkt. No. 1-1 at 5. [4]) Tarver, identified as LaPietra's "loved one" and boyfriend, was on parole supervision. *Id.* LaPietra left "to pick something up" and Tarver stayed at the apartment. *Id.* She left her apartment keys with Tarver. *Id.* On the way back to the apartment, LaPietra received a telephone call from her "case coordinator" informing her that Albany police officers were outside her apartment. *Id.*

[4]    LaPietra is "part of an independent living program for a health-related reason." (Dkt. No. 1-1 at 5.) Her apartment is on the second floor.

When she returned to the apartment, Tarver "was sitting and being detained, handcuffed in the back seat of a police vehicle that was parked in front of the apartment." *Id.* [5] Tarver was "under arrest" but the police officers did not tell Tarver "what he was under arrest for" and did not read him his "Miranda" rights. *Id.* "They threatened that they were going to taser him[.]" *Id.*

[5]    According to Tarver, he was "coming down the stairs, and had the door to stairwell open a crack, and he and the officer saw each other through the glass cutout window in the door to the house/ vestibule. The officer pushed in on the door to the house and entered into the vestibule while [Tarver] was still in the stairwell. At some point, he asked [Tarver] what he was doing there and he said he lived there; He cuffed him, sat him down on the outside stoop, asked what was in his pocket, and he told them the keys and his wallet and they took the keys and wallet out of his pocket and immediately went in the other 2 doors without even checking on who he was, that he had a parole condition, or where he lived, which could have been easily ascertained."

LaPietra states her "apartment was open and the police" had been through the apartment and her personal belongings including "paperwork pertaining to [her] health, government paperwork, [her] garbage, and everything." *Id.* at 5, 6.

LaPietra was also questioned by police officers and a sergeant. *Id.* at 6. She stated Tarver did not live with her but admitted he sometimes stayed overnight "with the permission of his PO." *Id.* LaPietra was also asked other personal questions, including "confidential" conditions of her residence program. *Id.* at 6. "They" also questioned LaPietra about "some items that were in the corner of the dining room" because "they suspected that those items were stolen." *Id.* at 7. Officer Jan Mika said to LaPietra, "oh by the way some parole officers were here earlier." *Id.* at 8-9. She thought that was a "strange comment to make at the time because it did not fit into the context of what [they] were speaking about." *Id.* at 9. [6]

[6]    LaPietra continues: "If there were parole officers there they were not there when I got there and they were not the ones who originally went into the apartment or conducted a search. They city officer who entered did not have a warrant to enter, but they had a witness [Tarver's] counsel later told me. If there was a witness I saw no signs of them. (Dkt. No. 1-1 at 9.) "It would have been more than reasonable to doubt anything [Tarver] said and because the officer had access to [Tarver's] wallet and had him handcuffed it would have been reasonable enough to ascertain whose residence it was, and that [Tarver] had a parole condition, to contact his parole officer, or to obtain a warrant. None of this was done." *Id.* at 9-10.

**\*4** LaPietra "was outside with the officers they asked [her] to go sit in [her] car then another officer said no stand over here to the side of the driveway." *Id.* at 7. LaPietra states she was "detained" and "questioned" for more than twenty-minutes and her apartment was searched without a warrant. *Id.* at 7, 15-6.

During the course of Tarver's arrest, he was "pushed up against a police vehicle, his earring was ripping out of his ear ... the police then threatened to use a Taser on him ... and then put him on the ground." *Id.* at 101. Tarver was arrested without a warrant and charged with petty larceny. *Id.* at 7. Tarver was "arraigned judicially for a misdemeanor" and "maliciously prosecuted for a felony." *Id.* at 11. Tarver ultimately "took a plea deal." *Id.* at 13.

The Complaint states that defendant "law enforcement officers observed the illegal nature of the search and seizure of the residence and willfully ignored it and participated." *Id.* at 10. Plaintiffs claim that "fellow officers had an opportunity

to intervene to prevent further harm and to report the misconduct. Yet they failed to act or intervene." *Id.* The Complaint further claims the Sergeant of the Albany Police Department "participated" in Tarver's arrest, was responsible for the supervision of the defendant police officers, failed to intervene and prevent the ongoing misconduct of the officers, "which resulted in the arrest and prosecution" of Tarver. *Id.* at 10-11. [7]

[7]   The complaint further states that "They also called and invited parole officers to the scene to illegally search the residence as well. Someone is responsible for the arrival of officers in plain clothes and parole officers who also illegally searched the residence." (Dkt. No. 1-1 at 11.)

Later that night, "they" took Tarver from the police station to the emergency room at Albany Medical Center "because he tried to hurt himself." *Id.* at 92. Tarver's hands and feet were shackled. *Id.* at 92-93. At the emergency room, Tarver was denied his right civil rights to use the bathroom and was subjected to excessive force. *Id.* Although Tarver was permitted to use the bathroom at least once while at the emergency room, which "went well," when it "came time for him to go to the bathroom again ... the police said no." *Id.* Tarver became "emotionally upset and swore" and "stood up." *Id.* "They tackled him to try and force him to lay down onto the hospital bed." *Id.* "Then they shot him with Benadryl." *Id.* "An officer in the process of tackling him fractured his pinky finger. Then they turned around and charged [Tarver] with Felony Assault on an Officer." *Id.* But Tarver had "no intention to either interfere with or assault an officer nor did he assault the officer." *Id.* The use of force aggravated Tarver's preexisting "AC separation." (Dkt. No. 1-1 at 5.)

Tarver was confined at Albany County C.F. from December 2016 until April 2018. During his confinement, Tarver did not receive proper medical care for "an AC separation." (Dkt. No. 1-1 at 3-4, 85, 89.) Although x-rays were taken of Tarver's shoulder, he was told by "a doctor" that, "[w]e don't do surgery here." *Id.* at 85, 126; Dkt. No. 1-6 at 27. Tarver received no other treatment or care for his shoulder complaints and his requests for an MRI and a visit with his personal physician were denied. (Dkt. No. 1-1 at 136; Dkt. No. 1-6 at 27.)

**\*5** During his confinement at Albany County C.F., Tarver, who suffers from "Schizo Affective Disorder," depression,

and PTSD, received seven different types of psychiatric medicine that were not administered "as scheduled." (Dkt. No. 1-1 at 3, 124; Dkt. No. 1-6 at 73.) Tarver was not provided with trauma therapy or a social worker. (Dkt. No. 1-1 at 136.)

From October 2017 until April 2018, Tarver was denied adequate dental care for "extreme pain" that impacted his daily activities. (Dkt. No. 1-1 at 4, 124.) Tarver submitted numerous medical call slips and waited "months" to see a dentist. (Dkt. No. 1-1 at 124; Dkt. No. 1-6 at 22, 24.) When he finally saw a nurse in late October 2017, the nurse informed him that he would "see the dentist in five days" and gave him Motrin for his pain. (Dkt. No. 1-1 at 126; Dkt. No. 1-6 at 22-23.) When Tarver saw the dentist, he was told that there was an "issue with his wisdom teeth and a filling in another tooth" but the dentist "did nothing." (Dkt. No. 1-1 at 126.) In November 2017, Tarver was given Amoxycillin, however, the facility records do not indicate that he suffered from decay or infection. *Id.* Tarver continued to suffer from pain and was told, "we don't do root canals here." *Id.* at 24; Dkt. No. 1-1 at 126. As a result, Tarver had a "tooth fall straight out of his mouth" while at Albany County C.F. (Dkt. No. 1-1 at 126; Dkt. No. 1-6 at 6, 23.)

Tarver also claims that his weight, blood sugar, and sleep apnea were not properly monitored at the facility. (Dkt. No. 1-1 at 129; Dkt. No. 1-6 at 7, 27.)

On October 23, 2017, LaPietra wrote to Melanie Trimble ("Trimble") at the Capital Region ACLU, to complain about Tarver's medical and dental care. (Dkt. No. 1-1 at 125.) Trimble relayed LaPietra's concerns to Michael Lyons ("Lyons"), who was surprised that there was a dentist at Albany County C.F. *Id.* LaPietra also called the Sheriff's Office and spoke to Mr. Newman ("Newman"). *Id.* Newman told LaPietra to speak with a sergeant or superintendent during a visit with Tarver, but that the sergeant "can't do anything." *Id.* In December 2017, LaPietra wrote to the Commission of Correction and Inspector General's office to complain about Tarver's medical and dental care. *Id.* at 119-20. The Commission responded to Tarver and instructed him to file a grievance. *Id.* at 126-27.

On March 9, 2018, Tarver received a letter from Prisoner Legal Services "about his rights." (Dkt. No. 1-1 at 4; Dkt. No. 1-6 at 1, 25.) On March 13, 2018, one day after LaPietra filed "papers for this case in the Supreme Court Clerk's office," Tarver was assaulted by defendant C.O. Burns. *Id.* The assault occurred while another officer was performing

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

"a squat and cough" of Tarver in his cell. *Id.* Burns willfully entered Tarver's cell "for the purposes of assault[.]" (Dkt. No. 1-1 at 148-52; Dkt. No. 1-6 at 25-26.) Burns told Tarver that he was not "coughing properly," pushed him onto the bed, punched him in the face, and sprayed him with mace. *Id.* At the time of the assault, Tarver was naked and in a squat position, with his back facing the officers. *Id.* Defendant Sgt. Remillard was present during the assault and did not intervene on Tarver's behalf. *Id.* Tarver was taken to the nurse so that his eyes could be flushed. (Dkt. No. 1-1 at 148-152; Dkt. No. 1-6 at 25-26.) As a result of being sprayed with mace, his face was swollen and his eyes were "red and bloodshot." (Dkt. No. 1-6 at 25-26.)

**\*6** After the incident, Tarver was placed in "lockdown" without any writing utensils, legal materials, or mail. (Dkt. No. 1-1 at 129, 143; Dkt. No. 1-6 at 26-27.) The "charges" surrounding his lockdown were not properly or timely presented to him, he was not provided with an assistant related to the disciplinary charges, and he was terminated from his job. (Dkt. No. 1-1 at 164-66; Dkt. No. 1-6 at 26-27.) Tarver's property, including letters and books, were confiscated. (Dkt. No. 1-1 at 174, 178.) Tarver was also denied any outdoor or recreational time. *Id.* at 168.

In March 2018, LaPietra visited Tarver. (Dkt. No. 1-1 at 156.) At that time, Burns was "laughing" about the assault and told LaPietra that Tarver was a "bad boy," who hadn't coughed for him. *Id.* LaPietra telephoned the Commission of Corrections to report the assault and mailed a letter on April 2, 2018, to officially complain about the assault, Tarver's inability to file grievances, and mail tampering. *Id.* at 162.

On May 3, 2018, LaPietra called the Commission of Corrections, spoke to Debbie Clark ("Clark") and reported the March 2018 assault. *Id.* at 179. Clark would not share any information with LaPietra. *Id.*

During his confinement at Albany County C.F., Tarver was "blocked from and denied grievance[s]" related to medical and dental care and "solitary confinement in relation to his assault." (Dkt. No. 1 at 2; Dkt. No. 1-1 at 127-128, 141 150; Dkt. No. 1-6 at 27.) The facility also "interfered" with his legal mail. (Dkt. No. 1-1 at 123-24, 144.) For example, Tarver sent a letter to "Judge Keefe," a "consultant" with the Center for Law and Justice. *Id.* Tarver marked the envelope "Attorney Mail" and placed an address on it. *Id.* at 122-23. The mail did not reach the intended recipient and "may have affected his rights to bring a claim against the municipality

in a timely manner." *Id.* at 123-24. Tarver was released from "solitary" in April 2018 and transferred to Downstate Correctional Facility, shortly thereafter. *Id.* at 129.

LaPietra alleges that Albany County C.F. would not allow her to wear "a Native American necklace into the facility" in violation of her First Amendment rights. (Dkt. No. 1-1 at 190-193.)

Construing the Complaint liberally, Tarver asserts the following: (1) Fourth Amendment claims for unreasonable search and seizure, false arrest, excessive force, and malicious prosecution; (2) Fourteenth Amendment claims for excessive force, failure-to-protect, and conditions of confinement; (3) First Amendment retaliation claims; (5) Fourteenth Amendment claims related to his medical and dental care; (6) Fourteenth Amendment due process claims; (7) First Amendment access to court and mail interference claims; (8) constitutional claims related to the grievance process; (9) Fourteenth Amendment equal protection claims; (10) Sixth Amendment claims related to the right to counsel; (11) state law claims; and (12) claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (*See* Dkt. No. 1-1 at 5, 10, 11, 17, 88, 96, 97, 102, 105, 113, 127, 128, 146, 152; 164, 172, 182; Dkt. No. 1-6 at 21-27.) LaPietra asserts the following: (1) Fourth Amendment claims for unreasonable search and seizure and false arrest; (2) state law claims; and (3) First Amendment freedom of religion claim. (*See* Dkt. No. 1-1 at 5, 10, 11, 17, 88, 190-193.)

Plaintiffs seek unspecified injunctive relief, monetary damages, and an order allowing them to file a late notice of claim in state court. (Dkt. No. 1 at 6; Dkt. No. 1-1 at 3, 184-85, 1-6 at 1-2. [8] ) For a more complete statement of Plaintiffs' claims, reference is made to the Complaint.

[8]     While not entirely clear, it appears Plaintiffs filed a "late notice of claim in regard to the Albany Police and Albany County Correctional Facility violating [their] civil rights," as alleged in Complaint but State Court Judge Hon. Kimberly A. O'Conner "denied" that request. (Dkt. No. 1-6 at 1.) The Court notes, however, "New York's General Municipal Law has only vested the power to grant notice of claim extensions to the New York State supreme courts and county courts." *Farquharson v. Lafayette,* No. 19-cv-3446 (NSR), 2020 WL 1699985, at \*13 (S.D.N.Y. Apr. 7, 2020) (citing N.Y. Gen. Mun. Law § 50-e(7)). Thus, "[f]ederal

Case 5:24-cv-00721-BKS-TWD Document 4 Filed 07/08/24 Page 85 of 96

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

courts are not authorized to grant such extensions." *Id.* (citing *Davis v. City of New York*, No. 12 Civ. 3297 (PGG), 2018 WL 10070540, at *13 (S.D.N.Y. Mar. 30, 2018) ("New York has given the power to extend deadlines for serving [a] notice of claim to state supreme courts and county courts, and federal courts are not authorized to grant such extensions."); *Dayton v. City of Middletown*, 786 F. Supp. 2d 809, 824-25 (S.D.N.Y. 2011) ("[T]his Court lacks jurisdiction, pursuant to § 50-e(7), to deem Plaintiffs' 5/30/09 Amended Notice of Claim for their state law claims against Orange County timely filed, or to grant an extension of time to file a late notice of claim."). The Court further notes that to the extent Plaintiffs seek to collaterally attack a state court's judgment rendered before filing this action in federal court, such claims may be barred under *Rooker-Feldman* doctrine, which divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *See generally District of Colombia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

### C. Nature of Action

**\*7** Plaintiffs seek relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Thus, to state a cognizable claim under Section 1983, a complaint must allege "(1) 'that some person has deprived [the plaintiff] of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) (alteration omitted).

The Court will construe the allegations in the Complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

## III. ANALYSIS

### A. City of Albany Police Department

The caption of the Complaint lists the City of Albany Police Department as a defendant. (Dkt. No. 1 at 1.) "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing § 1983 claim brought against the Lynbrook Police Department); *see also La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

However, in deference to Plaintiffs' *pro se* status, the Court will construe Plaintiffs' claims as if they had been brought against the City of Albany, the real party in interest. *See Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest).

Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).

**\*8** Here, Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of the City of Albany authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including unreasonable search and seizure, false arrest, and excessive force incidents or any affirmative link between such a policy and defendants' alleged actions with regard to Plaintiffs. (*See* generally Dkt. No. 1.) Furthermore, Plaintiffs' conclusory allegations that the City of Albany failed to train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell* claim against the City of Albany that is plausible on its face. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation.").

Based upon the foregoing, the Court recommends that Plaintiffs' claims under 42 U.S.C. § 1983 against City of Albany Police Department be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

Moreover, notwithstanding a very liberal interpretation of the Complaint, to the extent that Plaintiffs' claims could be construed to be asserted against the City of Albany, as the real party in interest, it is recommended that the claims be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**B. Officer Jan Mika**

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the

acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

Here, the Complaint states that Officer Jan Mika asked LaPietra questions on December 14, 2016, such as her "name, address, date of birth, etc." and also told her, "Oh by the way parole officers were here earlier." (Dkt. No. 1-1 at 10, 46.) However, Plaintiffs do not plead any facts sufficient to plausibly suggest that this defendant was personally involved in any conduct that violated either of Plaintiffs' constitutional rights and, therefore, the Complaint fails to state a cognizable claim against this defendant. *See Cipriani v. Buffardi*, No. 06-CV-0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted).

Accordingly, it is recommended that Plaintiffs' claims against Officer Jan Mika be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**C. Unknown Officers, Unknown Parole Officers, Unknown Plain Clothes Officer, Unknown Sgt.**

Separate from the substantive personal involvement requirement, discussed above, is a pleading requirement that, to adequately state a claim, a plaintiff's complaint must "differentiate which defendant[s] w[ere] involved in [what] unlawful conduct." *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at \*6 (E.D.N.Y. Mar. 31, 2017); *see also Wright v. Orleans Cty.*, No. 14-CV-622, 2015 WL 5316410, at \*13 (W.D.N.Y. Sept. 10, 2015) (noting in a § 1983 case that "[g]roup pleading is insufficient for purposes of Rule 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and quotation marks omitted)); *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at \*7, \*22 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

**\*9** To satisfy the personal involvement requirement and the rule against group pleading, it is not necessary for a plaintiff to know the name of the defendant. Where a plaintiff does not know the name of a defendant, the plaintiff may

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 87 of 96

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

identify the defendant in the pleading as John or Jane Doe. However, the pleading must still satisfy the rules governing personal involvement and group pleading as to the John or Jane Doe defendant. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the 'Special Search Team' and 'ESU Officers' " and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should [he] chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL 13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where plaintiff's claims provided information about the alleged constitutional deprivations, but were brought against "the 120 Precinct and District 9, a police precinct and district of the New York City Police Department").

Here, Plaintiffs simply list different groups of unidentified defendants in the caption of the Complaint and generally allege that on December 16, 2014, their Fourth Amendment constitutional rights were violated. The use of the terms "they," or "the police" or "officer" as a name for alleged defendants is not adequate to state a claim against a "person" as required in § 1983 actions. *See Williams*, 2011 WL 13128209, at *1 (dismissing complaint with leave to amend where the "[p]laintiff alleges that unnamed undercover police officers used excessive force against him and caused him to sustain injuries on August 26, 2008 but does not identify any particular defendants."). [9]

[9]     *See Williams*, 2011 WL 13128209, at *1 (giving the plaintiff leave to file an amended complaint to name the individuals responsible for the alleged deprivation of his rights and noting if "if plaintiff cannot identify the individual defendant(s) within the time allowed in this order or because they were undercover, he may designate the individual as John (or Jane) Doe #1, and so on.").

Moreover, if the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory officials may be considered "personally involved" if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Based on the foregoing, the Court finds Plaintiffs have failed to adequately plead that any individual defendant was personally involved in any alleged wrongdoing on December 14, 2016, and has contravened the rule against group pleading. Therefore, the Court recommends dismissing Plaintiffs' claims against these "Unknown" defendants without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [10]

[10]     Inasmuch as the Court is recommending dismissal of Plaintiffs' Fourth Amendment claims without prejudice, the Court does not address the merits, timeliness, and/or whether any such claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

### D. Officer Adam Iannacito

 **\*10**  Tarver claims Iannacito used "excessive force on" him on December 14, 2016, in the Emergency Room by, *inter alia*, by "tackling" Tarver while he was restrained in shackles and prevented him from using the bathroom in violation of his constitutional rights, "which worsened [Tarver's] injury from a prior workplace assault, which was an AC separation." (Dkt. No. 1-1 at 96-113, Dkt. No. 1-6 at 5-6, 20-21.) It appears that during the assault, Iannacito fractured a finger and thereafter "maliciously prosecuted [Tarver] with felony assault on an officer." *Id.*

To the extent Tarver asserts these claims under Section 1983, such claims are time-barred. Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

appears on the face of the complaint). The applicable statute of limitations for a Section 1983 action is governed by "the law of the state in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York, the general statute of limitations for personal injury claims is three years. *See* N.Y. C.P.L.R. § 214(5).

Here, Tarver executed the Complaint on February 6, 2020. (*See* Dkt. No. 7.) The alleged assault and deprivations by Iannacito at the Emergency Room occurred on December 16, 2016. Accordingly, Tarver's Section 1983 claims against Iannacito are barred by the applicable statute of limitations.

To the extent these claims are asserted under New York law, claims for intentional torts, such as assault and battery, and intentional infliction of emotional distress, are governed by a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery ... must be brought within one year from the date the claim accrued."); *see also Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F. Supp. 450, 455 (S.D.N.Y. 1997) ("It is well established under New York law that a claim of intentional infliction of emotional distress has a one–year statute of limitations."). Accordingly, Tarver's claims against Iannacito, asserted under state law, are also barred by the applicable statute of limitations.

Therefore, the Court recommends dismissing Tarver's claims against Officer Adam Iannacito without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). Because a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered, if Tarver files an amended pleading with claims asserted against this defendant arising from the alleged December 14, 2016, incidents, he should address the issue of timeliness. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

### E. Albany County C.F.

The caption of the Complaint lists Albany County C.F. as a defendant. (Dkt. No. 1.) However, as set forth above, because the Albany County C.F. is an administrative arm of Albany County, without a legal identity separate and apart from the County, it lacks the capacity to be sued. *See* Part III.A., *supra.*; *see also Lukes v. Nassau Cty. Jail*, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012) (dismissing

claims against defendant Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County"); *see Solis v. Cty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10,1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest);

**\*11** Based upon the foregoing, the Court recommends that Plaintiffs' claims under 42 U.S.C. § 1983 against Albany County C.F. be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

Nevertheless, in deference to Plaintiffs' *pro se* status, the Court will construe Plaintiffs' claims as if they had been brought against Albany County, the real party in interest. *See Shabazz v. Johnson City Police Dep't*, No. 3:18-CV-0570 (MAD/DEP), 2018 WL 5660406, at * (June 21, 2018) (reviewing complaint against the real party in interest).

As discussed above, municipal liability is limited under Section 1983 by *Monell*. *See* Part III.A., *supra.*

Here, with one minor exception discussed below, Plaintiffs have failed to identify or allege any facts plausibly showing the existence of a municipal policy or custom of Albany County authorizing, permitting, allowing, or tolerating "abuses in violation of the Constitution" including deliberate medical indifference and excessive force incidents or any affirmative link between such a policy and any defendants' alleged actions with regard to Tarver. *See* Dkt. No. 1-1 at 146-147. *See Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (*Monell* claim requires "factual allegations that would support a plausible inference that the County[ ]'s 'policies' or 'customs' caused ... violations ... of rights."). Furthermore, Plaintiffs' conclusory allegations that Albany County failed to train and supervise defendants, *see id.*, without supporting factual allegations, fails to state a *Monell* claim against Albany County that is plausible on its face. *See Tuttle*, 471 U.S. at 824 n.8.

The Complaint states that "[t]he Albany County [C.F.] refused to allow [LaPietra] to wear a Native American necklace into the facility at a visitation stating that it is not a religion recognized by the United States government and that it had to be a religion like Christianity or the Muslim religion. This is a First Amendment rights violation. It is also inherently false that it is not a form of religion recognized by the United States government because the United States recognizes Natives

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

through the American Indian Religious Freedom Act." (Dkt. No. 1-1 at 190.) Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), LaPietra has sufficiently plead, albeit thinly, a cognizable claim regarding the aforementioned policy at Albany County C.F.

Accordingly, based upon a very liberal interpretation of the Complaint, to the extent that Plaintiffs' claims could be construed to be asserted against Albany County as the real party in interest, it is recommended that only LaPietra's First Amendment *Monell* claim survives initial review and requires a response and that all other claims be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. The Court expresses no opinion as to whether LaPietra's First Amendment *Monell* claim can withstand a properly filed motion to dismiss or for summary judgment.

### F. Fourteenth Amendment Excessive Force and Failure-to-Protect Claims Against Burns and Remillard

**\*12**  Tarver contends Burns assaulted him and that Remillard failed to intervene to protect him from harm at Albany County C.F. in March 2018. *See generally* Dkt. No. 1-1. In the context of excessive force and failure-to-protect claims asserted by pretrial detainees, the Supreme Court distinguished between Eighth and Fourteenth Amendment claims in holding that a pretrial detainee alleging that an officer used excessive force against him in violation of the Fourteenth Amendment need not demonstrate that such officer was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *see also Francis v. City of New York*, No. 17-CIV-1453, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018) (applying *Kingsley* to failure-to-protect claim). [11] "[A] pretrial detainee must only show that the force purposely or knowingly used against him was objectively unreasonable to prevail on an excessive force claim." *Kingsley*, 576 U.S. at 397. "[I]f the use of force is deliberate – i.e., purposeful and knowing – the pretrial detainee's claim may proceed." *Id.* Courts consider a number of factors when determining objective reasonableness, including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

[11]  It is unclear whether Tarver was a pretrial detainee or was serving a sentence at the time of the events complained of in the complaint. For purposes of this initial review, the Court assumes that Tarver was a pretrial detainee when his claims arose.

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff*, 537 F.3d at 191, Tarver has sufficiently plead Fourteenth Amendment excessive force and failure-to-protect claims against Burns and Remillard.

Therefore, the Court recommends that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against Burns and Remillard survive *sua sponte* review and require a response. The Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### G. Assault and Battery Claims Against Burns

Tarver also asserts assault and battery claims against Burns. To the extent that Tarver asserts these claims under Section 1983, it is duplicative of his excessive force claim and must be dismissed for failure to state a claim upon which relief may be granted. *See Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001). To the extent these claims are asserted under New York law, as discussed above, claims for intentional torts are governed by a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery ... must be brought within one year from the date the claim accrued."). As discussed above, although the statute of limitations is an affirmative defense, where it

is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review. *See Pino*, 49 F.3d at 53.

Here, Tarver executed the Complaint on February 6, 2020. (*See* Dkt. No. 7.) The alleged assault by Burns occurred in March 2018. Accordingly, Tarver's assault and battery claims, asserted under state law, are barred by the applicable statute of limitations.

Therefore, the Court recommends dismissing Tarver's assault and battery claims with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). Because a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered, if Tarver files an amended pleading with a claim for assault and battery, he should address the issue of timeliness. *See Abbas*, 480 F.3d at 640.

### H. First Amendment Retaliation Claims Against Burns and Remillard

**\*13**  Tarver claims that Burns and Remillard acted with retaliatory intent when they assaulted him because he received legal mail and filed a state court lawsuit. (*See generally* Dkt. No. 1-1.) Retaliation claims find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). In a prison setting, prison officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Id.* at 381-83. However, as the Second Circuit has repeatedly cautioned, such claims are easily incanted and prone to abuse, as inmates often attribute adverse actions to retaliatory animus. *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Courts must therefore approach retaliation claims with "skepticism and particular care." *Id.* Accordingly, claims of retaliation must be supported by specific facts; conclusory statements are not sufficient. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds by Swierkiewicz*, 534 U.S. at 506.

To establish a *prima facie* First Amendment retaliation claim, the plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection

between the protected speech and the adverse action." *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).

The filing of lawsuits and grievances is protected conduct for purposes of First Amendment retaliation claims. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Therefore, the allegations in the Complaint plausibly suggest that Tarver was engaged in protected conduct. Moreover, the alleged assault constituted an "adverse action" against Tarver that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Rivera v. Goord*, 119 F. Supp. 2d 327, 339-340 (S.D.N.Y. 2000).

An inmate bears the burden of showing "the protected conduct was a substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Graham*, 89 F.3d at 79. In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* A showing of temporal proximity, without more, has generally been found insufficient to survive summary judgment. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citations omitted).

Here, Tarver has not adequately stated a claim for retaliation against Burns and Remillard because he has not alleged facts to suggest that they were aware Tarver received a letter from Prisoner Legal Services or that LaPietra filed a lawsuit in state court. Moreover, there is no allegation that Burns or Remillard were defendants in that lawsuit. As a result, Tarver has failed to allege plausibly that the lawsuit was causally connected to Burns' or Remillard's allegedly adverse actions. *See Wilson v. Kelly*, No. 9:11-CV-00030 (MAD/RFT), 2012 WL 3704996, at \*9 (N.D.N.Y. Aug. 27, 2012) (claim dismissed due to failure by plaintiff to allege plausibly that protected activity was causally connected to any alleged adverse action taken by the defendant where plaintiff failed to allege that the defendant was aware of the protected activity).

2020 WL 5891888

**\*14** Therefore, the Court recommends that Tarver's retaliation claims against Burns and Remillard be dismissed with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

### I. ADA Claims [12]

[12] Tarver does not specify what portions of the ADA are triggered. Reading the complaint liberally, it appears that he brings this action under Title II.

Tarver claims that, as a prisoner with a mental illness, he was entitled to modifications of his conditions of confinement in the SHU. (Dkt. No. 1-1 at 170.) Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA is applicable to inmates in state correctional facilities. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). "Under Title II of the ADA ... prison officials may not discriminate against inmates on the basis of disability in administering work programs." *Harrington v. Vadlamudi*, No. 9:13-CV-795 (BKS/RFT), 2015 WL 4460994, at \*3 (N.D.N.Y. July 21, 2015) (citations omitted). To successfully plead a Title II claim, "[t]he inmate must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity." *Allah v. Goord*, 405 F.Supp.2d 265, 274 (S.D.N.Y. 2005).

Here, the Complaint does not clearly indicate who Tarver is suing for violations of his rights under the ADA and what relief, if any, he seeks with respect to that claim. Assuming Tarver asserts this claim against individual officers, he has not indicated whether those officers are sued in their individual capacity, official capacity, or both. (*See generally* Dkt. No. 1.) To the extent that Tarver seeks monetary damages against any defendant, in his or her individual capacity, the Second Circuit has held Title II of the ADA does not provide for individual capacity suits for monetary damages. *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). While individuals may be sued under the ADA in their official capacities, a plaintiff must plead that the defendant "was motivated by discriminatory animus or ill-will based on the plaintiff's disability." *See Keitt v. New York City*, 882 F. Supp. 2d 412, 455-57 (S.D.N.Y. 2011) (holding that under

*Garcia*, claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability) (citing *Garcia*, 280 F.3d at 112).

Even assuming Tarver was disabled under the ADA, the Complaint fails to state a viable cause of action against any individual defendant because Tarver does not allege facts to plausibly suggest that any defendant discriminated against him. *See Wenger v. New York State Dep't of Health*, No. 5:14-CV-885 (DNH/TWD), 2015 WL 3397958, at \*5 (N.D.N.Y. May 26, 2015) (dismissing the discrimination claim under ADA where the complaint "provide[d] few specifics regarding [the plaintiff's] care, the services of which he was allegedly deprived, or programs in which he was allegedly not allowed to participate, or any reasons therefor articulated by [the defendants]").

**\*15** Although "Title II [...] suits for prospective injunctive relief may ... proceed against individual officers in their official capacity," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), an inmate's request for injunctive relief becomes moot when the inmate is released from custody. *See Roque v. Armstrong*, 392 F. Supp. 2d 382, 386-87 (D. Conn. 2005) (finding that the plaintiff's request for injunctive relief under the ADA for the provision of medical care became moot when he was discharged from prison) (citations omitted); *see also McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (noting that an inmate's claim for prospective injunctive relief regarding conditions of confinement is rendered moot upon his release from confinement). In April 2020, Tarver notified the Court that he was no longer incarcerated. (*See* Dkt. No. 15.)

Accordingly, the Court recommends dismissing Tarver's ADA claims for monetary damages and injunctive relief for failure to state a claim upon which relief may be granted.

### J. Remaining Claims

The remaining constitutional and state law claims are asserted by Tarver against "Unknown Corrections Officers," and "Unknown Medical and Dental Workers." (*See* Dkt. No. 1 at 1; Dkt. No. 1-1 at 1.)

The Complaint fails to identify any corrections officers or medical personnel involved in Tarver's medical treatment, dental treatment, the decision to confine Tarver to keeplock, decisions related to Tarver's mail or property, decisions

Case 5:24-cv-00721-BKS-TWD   Document 4   Filed 07/08/24   Page 92 of 96

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

related to grievances or visitors at the facility, or any of other remaining alleged constitutional violations. As previously discussed, the use of the terms, "they," "corrections officers," "medical and dental workers," or "all facility employees" as a name for alleged defendants is not adequate to state a claim against a "person" as required in Section 1983 actions. *See* Part.III.C., *supra.*; *see also Ferguson*, 1991 WL 115759, at \*1 ("The allegations plaintiff makes against the Otisville Correctional Facility Medical Staff are not sufficient to state a cause of action."). Moreover, the Court notes that while the Complaint includes a plethora of constitutional claims arising from Tarver's confinement at Albany County C.F., the pleading lacks any specificity related to those claims including dates, times, and locations of the alleged violations.

Because the Complaint fail to identify any individuals personally involved in the remaining alleged constitutional violations and state law claims, the Court recommends dismissing the remaining claims without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Martin v. UConn Health Care*, No. 3:99-CV-2158, 2000 WL 303262, at \*1 (D. Conn. Feb. 9, 2000) (giving the plaintiff leave to file an amended complaint "provided he can identify at least one physician or other health care provider who has been deliberately indifferent to his medical needs") (citing *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34 (2d Cir. 1996) (permitting plaintiff to file amended complaint where inmate named only correctional facility and was not aware of the requirement that he name individuals)). [13]

[13]    Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at \*2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims"). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at \*1 (W.D.N.Y. Aug. 15, 2007); *see also Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at \*1 n.1 (D. Conn. Mar. 17, 2006) ("The plaintiff refers to

John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint. Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them."). In this instance, while LaPietra claims that she notified certain individuals about "the issues" at Albany County C.F., including Newman, Lyons, and Trimble, *see* Dkt. No. 1-1 at 136, 139; Dkt. No. 1-6 at 22, the aforementioned individuals are not identified as defendants in the caption of the complaint or the list of parties. Thus, the Court will not construe the complaint to include any claims or causes of action against these individuals. For the same reason, the Court will not construe the complaint to include any claims or cause of actions against other private individuals referenced in the body of the complaint, including attorneys and grocery store employees, as they are not identified as defendants in the caption of the complaint or list of parties.

## IV. MOTIONS TO APPOINT COUNSEL

**\*16**  It is well-settled that there is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

Case 5:24-cv-00721-BKS-TWD Document 4 Filed 07/08/24 Page 93 of 96

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 5891888

[t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id.*

Here, the main facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of Plaintiffs' Complaint wherein they state the facts surrounding their claims. Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his or her claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of *pro bono* counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Furthermore, even if the Court were to assume that this case may be of substance, these claims do not present overly complex issues. In addition, the record currently before the Court indicates that Plaintiffs have an ability to investigate pertinent facts and present the case. While it is possible, should this case proceed to a trial, that there will be conflicting evidence implicating the need for cross-examination, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Further, if this case proceeds to trial, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

For all of these reasons, the Court finds that appointment of counsel is unwarranted and Plaintiffs' motions are denied without prejudice. (Dkt. Nos. 6, 21.) Plaintiffs may file another motion for appointment of counsel in the event that they can demonstrate that, in light of specific changed circumstances, consideration of the above factors warrants granting the application.

**\*17 WHEREFORE**, it is hereby

**ORDERED** that Tarver's IFP Application (Dkt. No. 20) is **GRANTED**;[14] and it is further

[14]  Tarver should note that, although the Court has granted his IFP Application, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiffs' claims against City of Albany Police Department and Albany County Corrections Facility be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Clerk be directed to revise the docket sheet to **ADD** Albany County as a defendant in this action; and it is further

**RECOMMENDED** that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against C.O. Burns and Sgt. Remillard **SURVIVE** initial review and require a response; and it is further

**RECOMMENDED** that LaPietra's First Amendment *Monell* claim against Albany County **SURVIVES** initial review and requires a response; and it is further

**RECOMMENDED** that the remaining claims be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**[15] pursuant to 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

[15]  If the District Court approves this Report-Recommendation, and if Plaintiffs choose to file an amended complaint, any amended complaint must comply with Rules 8 and 10 of the Federal Rules. Any such amended complaint must be signed by both Plaintiffs and clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading

Case 5:24-cv-00721-BKS-TWD    Document 4    Filed 07/08/24    Page 94 of 96
LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)
2020 WL 5891888

should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass*, 790 F.2d at 263. Any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiffs are also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his or her address; their failure to do so may result in the dismissal of the action**; and it is further

 **\*18 ORDERED** that Plaintiffs' motions for counsel (Dkt. Nos. 6, 21) are **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Plaintiffs, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5891888

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

LaPietra v. City of Albany Police Department, Not Reported in Fed. Supp. (2020)

2020 WL 7021589

2020 WL 7021589
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrea LAPIETRA, Individually and as Power
of Attorney, and Deashon Tarver, Plaintiffs,

v.

CITY OF ALBANY POLICE
DEPARTMENT, et al., Defendants.

9:19-CV-1527
|
Signed 11/30/2020

**Attorneys and Law Firms**

Andrea LaPietra, Albany, NY, pro se.

Deashon Tarver, Albany, NY, pro se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1**  This *pro se* action was referred to the Hon. Thérèse W. Dancks, United States Magistrate Judge, to review Tarver's *in forma pauperis* application [1] and for an initial review of the Complaint pursuant to 28 U.S.C. § 1915(e). Judge Dancks issued a Report-Recommendation and Order on October 5, 2020. Dkt. No. 24. On October 16, 2020, plaintiffs requested an extension of time to file objections, citing a delay in receipt of the Report-Recommendation and Order, limited resources due to the coronavirus pandemic, the restriction on library access because of the coronavirus pandemic, a death in the family of one of the plaintiffs, and because the plaintiffs were intending to seek the help of an attorney regarding their objections. This application was granted by Judge Dancks on October 19, 2020, and plaintiffs were given until November 19 2020 to file their objections. On November 19, 2020, plaintiffs filed a letter with the Court requesting an additional 2-3 week extension to file objections, citing that they were intending to consult with a specified attorney and because they intended to obtain information from Tarver's doctor that they wanted to incorporate in their objections. Plaintiffs' request for an additional extension of time to file objections is denied. They have failed to demonstrate good cause for an additional extension of time. Further,

Plaintiffs will suffer no prejudice by the denial of this request because Judge Dancks recommends that certain claims be allowed to proceed, that others be dismissed without prejudice and with leave to replead, and that plaintiffs' motion for appointment of counsel (which may now be moot) be denied with leave to renew. While Judge Dancks recommends that claims against the Albany Police Department and the Albany County Corrections Facility be dismissed with prejudice, she also recommends that these claims be allowed to proceed against the real parties in interest, the City of Albany and Albany County, respectively. In this regard, Judge Dancks recommends that the claims against the Albany Police Department be allowed to be repled against the City of Albany, and that the County of Albany be added to the docket as the real party in interest in the claims against the Albany County Corrections Facility.

[1]     The Court previously granted LaPietra's motion to proceed *in forma pauperis* and dismissed any claims that LaPietra asserted on behalf of Tarver. (Dkt. No. 4 at 4-5.)

Because plaintiffs expressed an intention to file objections but waited until the last day to request an extension, the Court will deem them to have filed a general objection and will review Judge Dancks's recommendations accordingly.

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

**III. DISCUSSION**

 **\*2**  After conducting a *de novo* review of the issues addressed by Judge Dancks in her Report-Recommendation and Order, the Court adopts the recommendations for the reasons stated in Judge Dancks's thorough report.

**IV. CONCLUSION**

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

For the reasons discussed above, plaintiffs' letter motion for an extension of time to file objections to the Report-Recommendation and Order (Dkt. No. 31) is **DENIED**. Further, the Court **ACCEPTS** and **ADOPTS** Judge Dancks's recommendations in the Report-Recommendation and Order (Dkt No. 24). Therefore, it is hereby

**ORDERED** that plaintiffs' claims against City of Albany Police Department and Albany County Corrections Facility are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk is directed to revise the docket sheet to **ADD** Albany County as a defendant in this action; and it is further

**ORDERED** that Tarver's Fourteenth Amendment excessive force and failure-to-protect claims against C.O. Burns and Sgt. Remillard **SURVIVE** initial review and require a response; and it is further

**ORDERED** that LaPietra's First Amendment *Monell* claim against Albany County **SURVIVES** initial review and requires a response; and it is further

**ORDERED** that the remaining claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

If plaintiffs choose to file an amended complaint, any amended complaint must comply with Rules 8 and 10 of the Federal Rules. Any such amended complaint must be signed by both plaintiffs and clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. Any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.

If plaintiffs intend to file an amended complaint they must do so within thirty (30) days of the date of this Decision and Order. If they fail to timely do so, the case will proceed on the remaining claims in the Complaint.

The Clerk can terminate all defendants EXCEPT Albany County, C.O. Burns, and Sgt. Remillard.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 7021589

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.